**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> v. <br><br> **LARRY BROCK,** <br>        **Defendant.** | Criminal Action No. 21-140 (JDB) |

**ORDER**

      Before the Court is defendant Larry Brock's motion for release pending appeal. Following a three-day bench trial, Brock was convicted of one felony and five misdemeanors related to his participation in the breach of the United States Capitol on January 6, 2021. He was sentenced to concurrent terms of 24 months' imprisonment on the felony charge, 12 months' imprisonment for two of the misdemeanors, and six months' imprisonment for each of the remaining three misdemeanors. He then filed a notice of appeal and the instant motion. For the reasons explained below, the Court will deny the motion.

**Background**

      Brock was charged via indictment with six counts related to his participation in the January 6, 2021 riot at the U.S. Capitol: obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1751(a)(1) (Count Two); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1751(a)(2) (Count Three); entering and remaining on the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four); disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six). See Indictment [ECF No. 24]. Relevant here, in advance of trial,

1

Brock moved to dismiss Count One, arguing that 18 U.S.C. § 1512(c) does not cover his charged conduct because "the statute only applie[s] to obstruction with regard to documents, records, and other objections," and the government did not allege that Brock engaged in that specific type of obstructive conduct.  See Mot. to Dismiss Count I or in the Alternative for a Bill of Particulars [ECF No. 46] at 3.  The Court denied the motion.  See United States v. Brock, Crim. A. No. 21-140 (JDB), 2022 WL 3910549, at *2–4 (D.D.C. Aug. 31, 2022).

Brock was convicted of all six counts on November 16, 2022 after a three-day bench trial. Nov. 16, 2022 Min. Entry.  On March 17, 2023, the Court sentenced Brock to 24 months' imprisonment on Count One, 12 months' imprisonment on each of Counts Two and Three, and 6 months' imprisonment on each of Counts Four, Five, and Six, all to run concurrently.  Mar. 17, 2023 Min. Entry.  In reaching this sentence, the Court determined that the applicable U.S. Sentencing Guidelines ("USSG") range for Count One was 24 to 30 months' imprisonment based on a criminal history category of I, a base offense level of 14, and a 3-level enhancement for substantial interference with the administration of justice per USSG § 2J1.2(b)(2).[1]  See Statement of Reasons [ECF No. 99] at 1; PSR at ¶ 48.  The Court permitted Brock to remain released on bond and to voluntarily surrender to the Bureau of Prisons at a later date determined by the United States Probation Office.  Brock's reporting date is now April 25, 2023.  Mot. to Treat Request for Release Pending App. as Uncontested & Suppl. to Original Mot. [ECF No. 104] ("Mot. Suppl.") at 2.

---

[1] The guidelines only applied to Counts One, Two, and Three.  Presentence Investigation Report [ECF No. 84] ("PSR") ¶¶ 46–48.  Those counts were grouped for guidelines calculation purposes "because they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan" per USSG § 3D1.2(b)  Id. ¶ 49.  Thus, the "prevailing guideline" is that of Count One because it produces the highest offense level in the group per USSG § 3D1.3(a).  Id.  However, "[p]ursuant to USSG §5G1.1(a), where the statutorily authorized maximum sentence is less than the minimum of the applicable guidelines range," as is the case for Counts Two and Three, "the statutorily authorized maximum sentence shall be the guidelines [range].  Therefore, for Counts 2 and 3, the guideline range [wa]s 12 months." Id. ¶ 118.

Brock filed a notice of appeal and the instant motion on March 28, 2023.  See Notice of App. [ECF No. 100]; Mot. for Release Pending App. [ECF No. 101] ("Mot. for Release").  Brock represents that he intends to appeal the Court's denial of his motion to dismiss Count One, the definition of "corruptly" the Court applied at his bench trial, and the Court's application of the 3-level enhancement for substantial interference with the administration of justice at his sentencing.  See Mot. for Release at 3–4.  Brock filed a supplement to his initial motion on April 13, 2023, see Mot. Suppl., the government filed a response in opposition the same day, see United States' Opp'n to Mot. for Release [ECF No. 105] ("Gov't Opp'n"), and Brock filed a reply on April 17, 2023, see Reply to Gov't Opp'n [ECF No. 106] ("Reply").  The motion is now ripe for decision.

## Analysis

A court "shall order" that a defendant

> who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> >
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> >
> > > (i)   reversal,
> > >
> > > (ii)  an order for a new trial,
> > >
> > > (iii) a sentence that does not include a term of imprisonment, or
> > >
> > > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).  "If the judicial officer makes such findings, such judicial officer shall order the release of the person . . . ."  Id.  When a defendant is not a flight risk or a danger to the

3

community, courts use a two step-inquiry to determine whether to release that defendant pending appeal under § 3143(b)(1): "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal [or one of the other options enumerated in § 3143(b)(1)(B)(ii)–(iv)]?" United States v. Perholtz, 836 F.2d 554, 555 (D.C. Cir. 1987). "[A] substantial question is a close question or one that very well could be decided the other way." Id. (internal quotation marks omitted). "[A] presumption of valid conviction" governs this inquiry, id. at 556, and "the defendant bears the burden of rebutting this presumption and 'demonstrat[ing] that he has a substantial question to present [upon appeal] before he may be [released pending appeal],'" United States v. Libby, 498 F. Supp. 2d 1, 3 (D.D.C. 2007) (quoting United States v. Shoffner, 791 F.2d 586, 589 (7th Cir. 1986)).

The parties appear to agree that Brock is not a flight risk or a danger to the community, see Mot. for Release at 2; Gov't Opp'n (omitting any discussion of this prong in its filing), and thus the issue here is whether Brock's appeal "raises a substantial question of law or fact likely to result in . . . reversal . . . or a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B). Brock argues that release is warranted because his appeal raises two substantial questions of law—the § 1512 issue and the substantial interference with the administration of justice enhancement issue—about which "the judges of this Court are themselves in disagreement," Mot. for Release at 2, and that success on one or both of these issues would result either in reversal of his § 1512 conviction or a "reduced sentence . . . to a term of imprisonment less than the total time already served plus the expected duration of the appeal process," Reply at 4 (internal quotation marks omitted).

4

**I.   § 1512(c) Conviction**

Brock first argues that his § 1512(c) issue is "a substantial question of law" likely to result in reversal on Count One, which he contends would lead to resentencing of his misdemeanor sentences of incarceration, ultimately resulting in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." See Mot. for Release at 3; Reply.  Although the original motion is unclear about the exact questions Brock plans to raise on appeal, he has clarified that there are two dimensions to the § 1512(c) issue: (1) whether the text of § 1512(c) covers Brock's charged conduct (the "actus reus issue"), and (2) whether the definition of "corruptly" the Court applied at the bench trial is correct and, accordingly, whether the evidence supports Brock's conviction under his preferred definition (the "mens rea issue").  See Reply at 1–3; Mot. for Release at 3.

**A.  Actus Reus Issue**

In his initial motion, Brock pointed the Court to a series of events relevant to his motion: in March 2022, one judge in this District disagreed with this Court's reading of the scope of § 1512's proscription and granted the defendant's motion to dismiss, see United States v. Miller, 589 F. Supp. 3d 60 (D.D.C Mar. 7, 2022), "[t]he government appealed the ruling and it went for oral argument in December [2022]," and "[t]he oral argument suggested to many observers that at least some members of the panel are sympathetic to [that judge's] view and/or other legal arguments against the government[']s interpretation of Obstruction of an Official Proceeding." Mot. for Release at 3.  However, 10 days after Brock filed his motion, those events became much less relevant: the D.C. Circuit decided the appeal, reversing the Miller court's dismissal of the § 1512(c) charge and remanding to the district court for further proceedings.  United States v.

5

Fischer, No. 22-3038, 2023 WL 2817988, at *16 (D.C. Cir. Apr. 7, 2023).  In his supplement to his initial motion (filed after, and in response to, the Fischer decision), Brock contends that

> [a]lthough the panel reversed th[at] Court's dismissal of the § 1512 count, . . . . [t]he case is most likely headed for en banc review.  The fractured Fischer decision emphasizes that the continuing validity of [his] § 1512(c) conviction remains open to debate.  It adds additional support to [his] request for relief pending appeal.

Mot. Suppl. at 2.  The government responds that because the D.C. Circuit reversed the district court that agreed with Brock's interpretation of § 1512(c), that appeal is no longer a basis for release pending appeal.  See Gov't Opp'n at 4.  It also points out that every single judge in this District other than the judge in Miller agrees with this Court's interpretation of the statute.  See id. at 4–5 (collecting cases).

The Court agrees with the government that Brock's § 1512(c) actus reus issue—whether § 1512(c) applies to his charged conduct—is no longer a "substantial question of law" likely to result in reversal because the D.C. Circuit already issued a binding ruling on this issue and decided against Brock's position, holding that "1512(c)(2) prohibits all acts that obstruct, influence, or impede any official proceeding or attempt to do so, beyond the document or object-related acts that are already covered by § 1512(c)(1)."  Fischer, 2023 WL 2817988, at *11 (emphasis added).

Accordingly, Brock's citations to two other January 6 cases in this District in which the judge granted a similar motion based on the pending § 1512(c) issue, see Mem. Order, United States v. Rahm, Crim. A. No. 21-150 (RJL) (D.D.C. Feb. 21, 2023), ECF No. 80; Order, United States v. Seefried, Crim. A. No. 21-287 (TNM) (D.D.C. Mar. 21, 2023), ECF No. 151, are of little use now that the pending appeal has been decided and the D.C. Circuit decided against Brock's position on this issue.  Moreover, Brock's statement that "the case is most likely headed for en banc review," Mot. Suppl. at 2, is pure speculation—this Court cannot look into a crystal ball and determine whether the D.C. Circuit will in fact review the Fischer decision en banc.  At this time,

6

nothing to that effect has been sought or announced, and the Court declines Brock's invitation to assume that it will be. In any event, that an unfavorable appellate decision is subject to en banc (or Supreme Court) review or that it featured a dissenting opinion does not necessarily render it "a substantial question of law" for purposes of this analysis. Such further review is a theoretical possibility for nearly all appeals, and panel opinions frequently result in dissents without mandating widespread release of criminal defendants. For now, Fischer is binding precedent that settles Brock's actus reus issue on appeal, and thus it does not constitute a substantial issue of law under § 3143(b)(1).

### B. Mens Rea Issue

In addition to the actus reus issue, Brock appears poised to appeal the definition of "corruptly"—the mens rea of § 1512(c)—that this Court applied at his bench trial, and he argues that this is a substantial issue that is likely to lead to reversal. See Mot. Suppl. at 2; Reply at 2. Brock notes that the two judges in the Fischer majority disagreed about the definition of "corruptly," which "raise[s] serious doubts about the legal bases of [] Brock's § 1512 conviction," Reply at 2, meaning his conviction "remains open to debate," Mot. Suppl. at 2.

Given that the Fischer court left "the exact contours of 'corrupt' intent for another day" because "the sufficiency of the indictments in [that] case d[id] not turn on the precise definition of 'corruptly,'" Fischer, 2023 WL 2817988, at *9 (Pan, J.), Brock's suggestion that this is a live, substantial issue of law is not an entirely frivolous one. In fact, on April 12, 2023, the panel in United States v. Robertson, No. 22-3062 (D.C. Circuit), ordered supplemental briefing on "Fischer's precedential effect, if any, on the interpretation of 'corruptly' in 18 U.S.C. § 1512(c)(2)." Per Curiam Order, Robertson, No. 22-3062 (D.C. Cir. Apr. 12, 2023).

7

But even if the Court were to accept that the issue of the definition of "corruptly" was a substantial one, Brock does not even address, let alone carry his burden on, why the resolution of that issue in his favor would make reversal of his § 1512 conviction "likely." Indeed, he does no work to even explain what the rift is between the majority and concurring opinions in Fischer, nor does he explain the contours of his preferred definition and why it would result in reversal under the specific facts of his case. In fact, Judge Pan's discussion of corrupt intent suggests that the mens rea of January 6 defendants whose "behavior clearly meets the test of independently unlawful conduct" would satisfy even the most stringent definition of "corruptly" because their "alleged intentions of helping their preferred candidate overturn the election results would suffice to establish a 'hope or expectation of either . . . benefit to oneself or a benefit of another person.'" Fischer, 2023 WL 2817988, at *7 (Pan, J.). Therefore, it seems to this Court that even if Brock were to succeed and the D.C. Circuit adopted his preferred definition of "corruptly"—whatever that may be—his conviction likely would nevertheless be upheld under a more demanding definition of the term given the circumstances of his conduct. But any further venture into this area is merely speculation and conjecture as to what Brock might argue because he has defaulted on his burden to show that "the resolution of that question in [his] favor [would] be likely to lead to reversal." Perholtz, 836 F.2d at 555.

\*     \*     \*

The Court will accordingly reject Brock's § 1512 issue as a ground to release him pending the disposition of his appeal.

## II.     Sentencing Enhancement

Brock next argues that the applicability of the 3-level enhancement for substantial interference with the administration of justice per USSG § 2J1.2(b)(2) is also a "substantial issue

8

of law" that is likely to result in a reduction of his sentence of imprisonment on the § 1512(c) conviction. See Mot. for Release at 3–4. At sentencing, Brock objected to the application of that enhancement because, he argued, "the enhancement only applie[s] to conduct that interfered with [] 'the administration of justice'" and "'administration of justice' [i]s limited to judicial proceedings and d[oes] not cover the electoral count." Id. at 3. In its opposition, the government notes that nearly every judge in this District has rejected Brock's argument in other January 6 cases. Gov't Opp'n at 5 (collecting nine cases). In contrast, Brock cites only two cases that have adopted his view, and only one is from this District. See Mot. for Release at 3–4 (citing Tr. of Sentencing Hr'g, United States v. Hale-Cusanelli, Crim. A. No. 21-37 (TNM) (D.D.C. Sept. 22, 2022), ECF No. 120, and United States v. Richardson, 676 F.3d 491 (5th Cir. 2021)).

To begin, the Fifth Circuit case is distinguishable in numerous ways. First, the court was not interpreting the language of the USSG when it held that "administration of justice" referred to "judicial procedure"—it was interpreting the statutory language of 18 U.S.C. § 1503 in assessing the sufficiency of the evidence supporting the defendant's conviction under that statute. See Richardson, 676 F.3d at 501–03. Second, in the court's entirely separate discussion of the substantial interference with the administration of justice sentencing enhancement, it did not grapple with the meaning of "administration of justice" as used in the USSG (the defendant was not challenging the application of the enhancement on that specific ground) and ultimately held that any potential error the district court committed in applying the enhancement was harmless. See id. at 508–12. Even setting those differences aside, the Court agrees with the government that Brock has failed to show that this is a sufficiently "close question" given that nearly every judge in this District agrees that this enhancement can apply in the January 6 context.

9

Moreover, while it did not address this specific point, Fischer's holding that "official proceeding" as used in § 1512(c) encompasses a "proceeding before the Congress," 2023 WL 2817988, at *9, casts some doubt on Brock's argument that "administration of justice" only refers to judicial proceedings. Fischer held that the electoral certification was an "official proceeding" because Congress follows several

> statutory directives to complete the certification of the Electoral College vote, including: (1) convening a joint session at 1:00 PM on January 6 in the year following the presidential election; (2) appointing four tellers to read and list the votes; (3) announcement of the voting results by the President of the Senate; and (4) allowing written objections from members of Congress, subject to a procedure for submitting and resolving such objections.

Id. In a different case, in deciding that the substantial interference enhancement applies in the January 6 context, Judge Howell noted that the certification process

> [r]equires the Congress formally to convene to conduct official business, to consider objections, and to render a final decision at a specific time, hour and place" with the Vice President as the presiding officer. It also sets a process for opening, presenting, and acting upon the certificates of the electoral votes, and provides rules for propounding or resolving objections, with each House withdrawing to its own chamber to debate the objection and render a decision. Furthermore, the certificates and papers purporting to be certificates of the electoral votes are akin to records or documents that are produced during judicial proceedings, and any objections to these certificates can be analogized to evidentiary objections. All of these features of the congressional proceeding to count Electoral College votes fall easily within the contours covered by the phrase "administration of justice."

Tr. of Sentencing Hr'g 66:4–22, United States v. Rubenacker, 21-cr-193 (BAH) (D.D.C. May 26, 2022), ECF No. 70 (internal quotation marks omitted). Thus, many of the same features of the electoral certification that the Fischer court relied on to conclude that it is an "official proceeding" also support that it constitutes the "administration of justice" as well. Judge Howell further explained that

> Congress's tasks on January 6, 2021, fit easily into the definition courts have given to the phrase "administration of justice." When Congress convened to count the Electoral votes, by "performing acts or duties required by law," Congress was

10

>   maintaining "the right within a political community," as Black's Law Dictionary states, to have votes counted in a particular manner, using "the physical force of the state" in the form of law enforcement officers located in and around the Capitol to secure the proceedings; though that security was severely tested and breached by the actions of the defendant and others who illegally entered the Capitol that day. The constitutionally mandated procedure falls within the meaning of the phrase "administration of justice."

Id. 75:11–25. The Court's view is thus joined by Judge Howell and at least seven other judges in the District, and Brock's citation to one judge in this District who disagrees is not sufficient to create a "substantial issue of law."

Even if the Court accepted that there was a substantial issue as to whether the enhancement applies in the context of January 6, Brock does not explain how success on this issue would make it "likely" that he would receive a "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," 18 U.S.C. § 3143(b)(1)(B)(iv). Brock only observes that "[i]f the 3-level enhancement for substantial interference had not been assessed, [his] guidelines would have been 15-21 [months]" and "[i]f [his] appeal extends even a short time beyond the average (as seems likely) resolution of the guideline issue alone is likely to result in a sentence that expires before his appeals are exhausted." Mot. for Release at 5. While it is possible that—if Brock is successful on this issue—the duration of the appeals process may be longer than the ultimate sentence of incarceration that he would receive if the enhancement were not assessed, that is an unlikely possibility given that the median time for the disposition of an appeal in the D.C. Circuit is 11.3 months, id. at 4, and Brock would face a range of 15 to 21 months' imprisonment with the Court having discretion to vary upwards. Brock therefore has not nudged the needle from "possible" to "likely." And, if it is the case that the duration of his appeal approaches the median duration, causing worry about potential over-

11

incarceration, he may raise that issue with the Court of Appeals and request an expedited decision at the appropriate time.

The Court will accordingly reject Brock's sentencing enhancement issue as a basis to release him pending the resolution of his appeal because he has failed to meet his burden of showing that his appeal on this issue presents a "substantial question" of law that would "likely" lead to "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."[2]

\*   \*   \*

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [101] Brock's motion for release pending appeal is **DENIED**.

**SO ORDERED.**

---

[2] There is quite a bit of discussion in the briefs about the impact on this motion of Brock's concurrent sentences of incarceration on his five misdemeanor convictions. See Mot. for Release at 4–5; Gov't Opp'n at 7; Reply at 3–5. The government contends that "where, as here, a defendant has been sentenced to prison terms on different counts of conviction he 'cannot be released unless the appeal raises a substantial question likely to result in reversal on all counts on which imprisonment is imposed.'" Gov't Opp'n at 6 (quoting Perholtz, 836 F.2d at 557). Thus, "[w]here a defendant is convicted of more than one count, the substantial question must have a bearing on the other count or counts of conviction in order to be eligible for release," which is not the case here. See id. at 6–7. Brock responds that "18 U.S.C. § 3143(b) allows for release pending appeal . . . where a substantial question of law is likely to result in . . . 'a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of appeal.'" Reply at 4. Brock seemingly argues that his appeal does bear on his misdemeanor convictions because appellate success on the § 1512 issue would lead to resentencing on the misdemeanor counts and that he would be likely to receive "little or no incarceration." See id. at 4–5. He adds that his "appeal will probably take longer [than the median] because . . . . the case is likely to be the subject of a petition for rehearing en banc followed by certiorari petition. Once the Miller case is final, the Circuit Court may well ask for further briefing in the cases that are trailing it." Mot. for Release at 4.

The Court need not address these arguments since it will deny the motion on independent grounds. But the Court is sensitive to the possibility that the time between Brock's self-surrender date and the disposition of his appeal may be longer than the duration of his next-highest concurrent sentences of imprisonment of 12 months on Counts Two and Three, and also that the 12-month sentence may be reduced upon resentencing if his conviction on Count One was to be vacated. In light of those considerations, if the duration of Brock's appeal begins to approach to the duration of his lowest concurrent sentences of incarceration (6 months) on the three Class B misdemeanors, Brock is encouraged to express his concerns to the D.C. Circuit and request an expedited decision on that basis to mitigate the risk of over-incarceration.

/s/
JOHN D. BATES
United States District Judge

Dated: April 20, 2023

13