**SCHEDULED FOR ORAL ARGUMENT ON SEPTEMBER 27, 2023**

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 23-3045

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY RENDALL BROCK,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:21-cr-00140-JDB-1, John D. Bates, U.S. Senior District Judge*

## REPLY BRIEF FOR DEFENDANT-APPELLANT

CHARLES BURNHAM
BURNHAM & GOROKHOV, PLLC
1750 K Street NW, Suite 300
Washington, DC 20006
(202) 386-6920
charles@burnhamgorokhov.com

*Counsel for Defendant-Appellant*

August 23, 2023


COUNSEL PRESS, LLC  (202) 783-7288  *  (888) 277-3259

# TABLE OF CONTENTS

                                                           **Page**

TABLE OF AUTHORITIES .................................................................................... ii

SUMMARY OF THE ARGUMENT ........................................................................1

ARGUMENT .............................................................................................................1

      I.     Mr. Brock's Conduct Would not Satisfy the § 1512(c)(2) Actus Reus Under the *Fischer* Dissent's Definition ............................1

      II.    The Government's Waiver Arguments are Misplaced ........................3

      III.   Evidence Insufficient to Satisfy Broad Definition of Corruptly ..............................................................................................4

      IV.   Evidence Insufficient to Satisfy the Narrow Definition of Corruptly ..............................................................................................5

      V.    The Government's Sentencing Guideline Arguments are Unconvincing .......................................................................................6

CONCLUSION ........................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Rosner v. United States*,
    10 F.2d 675 (2d Cir. 1926) ...................................................................................6

*United States v. Amer*,
    110 F.3d 873 (2d Cir. 1997) ............................................................................ 9, 10

*United States v. Castleman*,
    572 U.S. 157 (2014) ...............................................................................................7

*United States v. Long*,
    997 F.3d 342 (D.C. Cir. 2021) ...............................................................................4

*United States v. Partin*,
    552 F.2d 621 (5th Cir. 1977) ............................................................................. 6, 7

*United States v. Seefried*,
    21-CR-287, 2022 WL 16528415 (D.D.C. Oct. 29, 2022) ...................................10

**Statutes & Other Authorities:**

18 U.S.C. § 1033 ..........................................................................................................8

18 U.S.C. § 1516 ..........................................................................................................8

U.S.S.G. § 2J1.2 ........................................................................................ 6, 7, 8, 10

U.S.S.G. § 2J1.2(a) ......................................................................................................8

U.S.S.G. § 2J1.2(b)(2) .................................................................................................9

# SUMMARY OF THE ARGUMENT

As expected, the government argues in its response that Mr. Brock's § 1512 conviction should be sustained under the *United States v. Fischer* reasoning. The government goes on to argue that Mr. Brock's conviction should also be sustained under any competing § 1512 interpretation this Court or the Supreme Court might someday adopt. The government's argument is incorrect at every turn and Mr. Brock's felony conviction should be reversed.

The government's arguments on sentencing guidelines are also unpersuasive. In the government's view, § 2J1.2's enhancement for substantial interference with the "administration of justice" should apply to virtually all of the various obstruction statutes that come under that guideline. Mr. Brock's more reasoned view is that the enhancement applies only where a judicial or quasi-judicial proceeding is obstructed. The Court should adopt this reading as the law of the Circuit and remand this case for a resentencing hearing.

# ARGUMENT

## I.   Mr. Brock's Conduct Would not Satisfy the § 1512(c)(2) Actus Reus Under the *Fischer* Dissent's Definition

In his opening brief, Mr. Brock preserved the argument that the *Fischer* dissenting opinion compels reversal of his § 1512 conviction in the event it should ever be adopted by a higher authority. In response, the government argues

1

(naturally) that dissent is not binding. However, it goes on to argue that Mr. Brock's conviction would remain valid under the dissenting opinion because:

> Brock's conduct in participating in the January 6 riot and appearing on the Senate Floor necessarily obstructed the handling, submission, processing, and congressional consideration of the evidence of each State's electoral votes. It did so just as much as if Brock had grabbed a pile of state certificates and run away with them.

Resp. at 25 (internal citations and quotations omitted)(quoting this Court's May 25, 2023 order).

However, such a broad interpretation of "evidence impairment" is not consistent with the terms of the *Fischer* dissent itself when considered in light of the facts of those consolidated cases. The *Fischer* Appellees also, in a certain sense, obstructed congressional consideration of state certificates. For example, Appellees Fischer and Lang assaulted Capitol police (64 F.4th at 332-33) and Appellee Miller "was part of the mob that forced its way into the Capitol and stopped Congress's certification process" (*Id*. at 333). These acts in some sense interfered with Congress's ability to count the certificates (assuming they constitute "evidence" for these purposes) but the *Fischer* dissent nevertheless concluded that "the conduct here violates many criminal statutes, but section 1512(c) is not among them." *Id*. at 383. Contrary to the government's arguments therefore, the *Fischer* dissent would clearly compel reversal of Mr. Brock's felony conviction.

2

## II. The Government's Waiver Arguments are Misplaced

The government seeks to avoid appellate review of the lower court's ruling on corrupt intent by raising a series of arguments in support of waiver. None of these arguments applies here.

The government first argues that Mr. Brock has not adequately raised the issue in his opening brief. Resp. at 25. In his brief, Mr. Brock cited to the *Fischer* concurrence (the leading case on the subject), and quoted the relevant portions. Op. Br. at 14. The brief then cites the standard of review and makes an argument of why the record does not support a finding of corruptness under the *Fischer* concurrence *mens rea* definition. *Id*. at 14-16. The government does not explain what more Mr. Brock should have done to raise the issue.

Second, the government argues that Mr. Brock waived the corruptly issue by violating this Court's May 25, 2023 per curiam order stating that "[t]he court ordinarily will not consider issues and arguments raised for the first time in the reply brief." *Id*. at 25. However, Mr. Brock raised this issue in his opening brief so, contrary to the government's argument, he did not violate the May 25 order.

Third, the government argues that Mr. Brock waived the issue by failing to object to the government's "proposed jury instructions and trial brief." *Id*. at 26. However, Mr. Brock ultimately opted for a bench trial, leaving no need to litigate

3

jury instructions. JA12. The government cites no authority in support of the novel suggestion that parties are responsible for lodging objections to a trial brief.

Fourth, the government argues that Mr. Brock waived the corruptly appellate issue by focusing his trial closing arguments on a definition of corruptly adopted by several district judges. Resp. at 27. Relying on *United States v. Long*, the government argues that this constituted "invited error." 997 F.3d 342, 353-54 (D.C. Cir. 2021). The *Long* panel stated that invited error "involves intentional strategic gambit designed to induce the trial court to take the desired action." *Id*. at 354. Mr. Brock's closing argument was not a "strategic gambit" but rather a reasonable decision to focus closing arguments on the "corruptly" definition which was at that time in vogue amount he January 6th district judges, erroneous as it may have been.In sum, none of the government's many arguments in favor of waiver are availing.

### III.   Evidence Insufficient to Satisfy Broad Definition of Corruptly

The government contends that even under the district court's broad definition of corruptly, the evidence is sufficient to support Mr. Brock's conviction. Resp. 31. The government (as it has throughout this case) relies heavily on Mr. Brock's social media record. *Id*. However, the government ignores the district judge's uncontested finding that Mr. Brock's social media statements were not to be taken literally. JA 463. Contrary to the government's arguments,

Mr. Brock's military record, genuine concern for the election, and peaceful behavior while on the premises compel the conclusion that he did not knowingly act wrongfully.

## IV. Evidence Insufficient to Satisfy the Narrow Definition of Corruptly

Mr. Brock argued in his opening brief that under the Judge Walker concurrence definition of corruptly (which the government refers to as the "narrow" definition), the evidence would be insufficient to support his conviction. Op Br. at 15. He argued that securing the reelection of Donald Trump did not count as a unlawful benefit for this purpose because, as Judge Katsas pointed out, including such intangibles in the definition of "unlawful benefit" has no limiting principle. *Id*. at 15-16. Such a finding would necessarily mean that "anyone acting to achieve a specific purpose would satisfy the requirement." *Id*. at 16.

Notably, the government does not respond to this argument by proposing a material benefit Mr. Brock stood to gain other than the reelection of Donald Trump. The government's sole response to this argument is that Mr. Brock acted to "help then-President Trump retain the presidency." Resp. at 37. However, what the government fails to do is propose any limiting principle whereby the narrow definition of corruptly would not collapse on itself under this reading due to the fact that every human act is done for some benefit or another. This Court should therefore hold that there is insufficient evidence of corrupt intent under the narrow

5

definition because Mr. Brock did not act to secure a benefit and the reelection of Donald Trump does not count.

V. **The Government's Sentencing Guideline Arguments are Unconvincing**

As Mr. Brock argued in his opening brief, the district court incorrectly held that U.S.S.G. § 2J1.2 applied to the congressional certification of the electoral vote because the certification does not constitute "administration of justice." In response, the government concedes that "administration of justice" is "more commonly used in a narrower sense to refer to interference with the pendency of some sort of judicial proceeding." Resp. at 43 (collecting authorities) (internal quotations omitted). However, the government nonetheless contests Mr. Brock's argument on a variety of grounds.

The government first argues, relying on *Rosner v. United States*, that the performance of a duty required by law constitutes the "administration of justice." Resp. at 43 (10 F.2d 675, 676 (2d Cir. 1926). However, *Rosner* involved a lawyer who advised a client not to appear in court for a plea hearing. *Id.* at 675. A court hearing is the paradigmatic example of "administration of justice" so this case actually supports Mr. Brock's position.

The government next cites *United States v. Partin* for the proposition that administration of justice means "the performance of acts required by law in the discharge of duties." 552 F.2d 621, 641 (5th Cir. 621, 641 (5th Cir. 1977).

6

However, the government really ought to have included the entire quotation which is as follows: "[t]he administration of justice it should be pointed out means the performance of acts required by law in the discharge of duties *such as appearing as a witness and giving truthful testimony when subpoenaed*." *Id* (italics added). Testifying in response to a subpoena is another classic example of the definition of "administration of justice" that Mr. Brock is arguing for. This case therefore also supports his position.

    The government next argues that § 2J1.2 applies to many statutes not all of which involve the administration of justice under Mr. Brock's definition. Resp. at 44. But the fact that the administration of justice enhancement applies in certain circumstances and not others is nothing to wonder at. It makes perfect sense that the enhancement only applies in certain cases because the sentencing commission could have rationally concluded that interfering with judicial proceedings (as opposed to other types of obstruction) was an aggravating factor. The government's passing reference to *United States v. Castleman* does not help its argument because there the Supreme Court rejected as implausible an interpretation that would have rendered an entire federal statute (possessing a firearm after conviction for crime of domestic violence) inoperative at the time of its adoption. 572 U.S. 157, 167 (2014). This is different from Mr. Brock's

7

commonsense interpretation of §2J1.2 that an aggravating guideline factor only applies where there are aggravating facts to support it.

The government next argues, relying on a transcript excerpt from another January 6 district court case, that it does not make sense for the sentencing commission to have intended the "administration of justice" enhancement to have applied to "only some of the statutes referenced in this guideline." Resp. at 47 (*citing United States v. Rubenacker*, 21-cr-193, ECF 70 at 69.). However, if the sentencing commission had meant the 3-level administration of justice enhancement to apply to all of the statutes covered by the guideline (as the government and *Rubenacker* contend), it would simply have made the base offense level for the guideline 17 instead of 14. *See*, § 2J1.2(a). The fact that the base offense level is 14 with a separate 3 level enhancement for substantial interference with the administration of justice shows that the 3-level enhancement is not intended to apply in every case. And the reasoning for such a distinction is not hard to discern – obstructing a judicial or quasi-judicial proceeding is more aggravated than other types of obstruction covered by the guideline such as making false statements on insurance appraisals (18 U.S.C. § 1033) or obstructing a federal audit (18 U.S.C. § 1516).

The government next cites comment 1 of the guideline which, in addition to saying "administration of justice" applies to a variety of core judicial functions, has

8

a reference to "governmental" resources. However, this term is best interpreted to refer to quasi-judicial proceedings that occur outside of courts (*e.g.* an impeachment trial in the senate). Reading the reference to "governmental" as meaning to apply the "administration of justice" enhancement to all government functions is nonsensical for several reasons. First, had that been the intent, the sentencing commission could have said so explicitly. Secondly, if administration of justice was meant to apply to all government functions it would have been natural to include it as part of the base offense level because all "obstruction of justice" implicates the government in some way.

Moreover, *United States v. Amer*, relied on for this argument by the government, actually supports Mr. Brock's position. Resp. at 48 (110 F.3d 873, 885 (2d Cir. 1997)). That case involved a father who was convicted of parental kidnapping after transporting his children abroad to avoid custody proceedings in America. *Id*. at 876-77. The court upheld an enhancement under § 2J1.2(b)(2) for substantial interference with the administration of justice specifically because the conduct related to court proceedings. The court quoted the district judge approvingly as follows:

> [The defendant's] conduct was, by analogy more egregious than that referred to in Application Note 1, because rather than terminating a *judicial proceeding* by his actions, he made certain that the action was one that would never be commenced. It is a situation in which he *deemed himself the judge,* and then he made decision. The defendant

9

> *wholly ignored the lawful process*, and acting in the form of a vigilante, if you will, took matters into his own hands.

*Id*. at 885 (internal brackets and ellipses omitted and italics added).

In the next section, the government spends approximately eight pages attacking the reasoning of the excellent analysis of § 2J1.2 from *United States v. Seefried*, 21-CR-287, 2022 WL 16528415 (D.D.C. Oct. 29, 2022) relied on by Mr. Brock. The arguments against *Seefried* are largely repetitive of the government's untenable argument that "administration of justice" applies wherever there is some kind of governmental function.

In sum, the government's arguments for expanding the "administration of justice" enhancement to cover basically all cases under the § 2J1.2 is contrary to the manifest intent of the guideline. *Seefried* is the most thorough and defensible treatment of this issue to date and this Court should adopt it as the law of the circuit.

## CONCLUSION

For the foregoing reasons, Mr. Brock requests that the Court grant the relief requested in his opening brief.

Respectfully submitted,

*/s/ Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1750 K Street, NW, Suite 300
Washington DC 20006
(202) 386-6920
charles@burnhamgorokhov.com

## CERTIFICATE OF LENGTH

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). According to Microsoft Word it has approximately 2266 words.

                                        Respectfully submitted,

                                        /s/ *Charles Burnham*
                                        Charles Burnham
                                        DC Bar No. 1003464
                                        Burnham and Gorokhov, PLLC
                                        1750 K Street, NW, Suite 300
                                        Washington DC 20006
                                        (202) 386-6920
                                        charles@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I certify that on August 23, 2023, I served a copy of this brief on the government through ECF.

                                        Respectfully submitted,

                                        /s/ *Charles Burnham*
                                        Charles Burnham
                                        DC Bar No. 1003464
                                        Burnham and Gorokhov, PLLC
                                        1750 K Street, NW, Suite 300
                                        Washington DC 20006
                                        (202) 386-6920
                                        charles@burnhamgorokhov.com