UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALEXANDER SHEPPARD,<br>Defendant. | Criminal Action No. 21-203 (JDB) |

## MEMORANDUM OPINION

Following the Supreme Court's grant of certiorari in <u>Fischer v. United States</u>, defendant Alexander Sheppard filed a renewed motion for release pending appeal. Sheppard argues that this grant of certiorari evidences a "substantial question of law" about the validity of his sole felony conviction. He claims that question will not be decided until after he has served more time in prison than is warranted by his misdemeanor convictions. Accordingly, he asks the Court to release him from prison at the end of his likely misdemeanor sentence. The Court will grant the motion.

## Background

Sheppard was convicted by a jury on five counts arising from his participation in the January 6, 2021, riot at the U.S. Capitol. The jury found him guilty of one felony offense, obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); and four misdemeanor offenses, entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); disorderly and disruptive conduct in a restricted building or ground, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six). Judgment [ECF No. 108] at 1–2. He was acquitted of entering and

1

remaining on the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four). See id. at 1. This Court sentenced Sheppard to 19 months' imprisonment on Count One, twelve months' imprisonment on each of Counts Two and Three, and six months' imprisonment on Counts Five and Six, all to run concurrently. Id. at 3.

Before reporting to federal prison, Sheppard filed a motion for release from custody pending appeal. Mot. for Release Pending Appeal [ECF No. 116]. He argued that the D.C. Circuit's recent decisions in United States v. Fischer, 64 F.4th 329 (D.C. Cir. 2023), and United States v. Robertson, 86 F.4th 355 (D.C. Cir. 2023), raised "substantial questions of law" about his felony conviction under 18 U.S.C. § 1512(c)—specifically, whether the evidence sufficed to show corrupt intent under the standard articulated in those decisions. Mot. for Release Pending Appeal at 8–12. The Court concluded that neither decision raised a substantial question about the validity of Sheppard's conviction and ordered him to self-report as directed on November 2, 2023. Order [ECF No. 118]; see United States v. Sheppard, Crim. A. No. 21-203 (JDB), 2023 WL 7279263, at *7 (D.D.C. Nov. 3, 2023) (memorandum opinion). Sheppard has been in the custody of the Bureau of Prisons since November 2.

On December 13, 2023, the Supreme Court granted a writ of certiorari in Fischer. Fischer v. United States, No. 23-5572, 2023 WL 8605748 (S. Ct. Dec. 13, 2023). Sheppard then filed the instant motion for release pending appeal, arguing that he should be released from prison while the Supreme Court decides Fischer. Def.'s Second Mot. for Release Pending Appeal ("Mot.") [ECF No. 133]. The government opposed, Gov't's Opp'n to Mot. ("Opp'n") [ECF No. 134], and Sheppard filed a reply, Reply in Supp. of Mot. ("Reply") [ECF No. 137]. Yesterday, Sheppard also filed a notice of supplemental authority in support of his motion. Notice of Suppl. Auth. [ECF No. 140] (directing the Court to Mem. Op., United States v. Adams, Crim. A. No. 21-354 (APM) (D.D.C. Jan. 10, 2024), ECF No. 85 ("Adams Op.")). The motion is now ripe for decision.

2

## Legal Standard

A court "shall order" that a defendant

who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
>> (i) reversal,
>>
>> (ii) an order for a new trial,
>>
>> (iii) a sentence that does not include a term of imprisonment, or
>>
>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). "If the judicial officer makes such findings, such judicial officer shall order the release of the person . . . except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." Id.

## Analysis

### I. Flight Risk or Danger to the Community

This Court has previously concluded that Sheppard is not a flight risk or danger to the community. Sheppard, 2023 WL 7279263 at *2. As the Court explained just two months ago:

> [Sheppard's] general compliance with his conditions, his maintenance of a job, and his close connections with his family suggest he is unlikely to flee or reoffend while waiting on the outcome of his appeal. This is the same judgment the Court has repeatedly made by allowing Sheppard to remain on release before trial, sentencing, and reporting to prison.

Id.

The government urges the Court to change its mind because "the incentive to flee or engage in dangerous conduct has grown" since Sheppard began serving his sentence. Opp'n at 4. The Court disagrees. Unlike the defendants in the cases cited by the government, Sheppard is not facing a lengthy sentence from which he might be highly motivated to flee. See Reply at 2; United States v. Slatten, 286 F. Supp. 3d 61, 69 (D.D.C. 2018) (defendant facing mandatory life sentence); United States v. Hite, 76 F. Supp. 3d 33, 41 (D.D.C. 2014) (defendant facing sentence that could "conceivably run the course of [his] natural life"). Further, now that Sheppard has served about ten weeks in federal prison, he actually may be more likely to comply with conditions on release. The Court therefore reaffirms its conclusion that Sheppard has demonstrated by clear and convincing evidence that he is neither a danger nor a flight risk.[1]

## II. Substantial Question of Law

Courts use a two-step inquiry to determine whether the requirements of § 3143(b)(1)(B) are satisfied: "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal [or one of the other outcomes enumerated in § 3143(b)(1)(B)(ii)–(iv)]?" United States v. Perholtz, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam). The D.C. Circuit has held that "a substantial question is a close question or one that very well could be decided the other way." Id. (internal quotation marks omitted). It is not enough for a defendant to raise a question that is merely nonfrivolous or "fairly debatable." Id. In conducting this inquiry, the Court presumes the defendant was validly convicted. Id. at 556. "[T]he defendant bears the burden of rebutting this presumption and 'demonstrat[ing] that he has a substantial question to present [upon appeal].'" United States v. Libby, 498 F. Supp. 2d 1, 3

---

[1] The Court likewise finds that Sheppard's appeal is "not for the purpose of delay." 18 U.S.C. § 3143(b)(1)(B).

(D.D.C. 2007) (alterations in original) (quoting United States v. Shoffner, 791 F.2d 586, 589 (7th Cir. 1986)).

Sheppard argues that the Supreme Court's grant of certiorari in Fischer creates a "substantial question" on appeal. The government does not argue otherwise. See Opp'n at 4, 6. The question presented in Fischer is whether the D.C. Circuit "err[ed] in construing 18 U.S.C. § 1512(c) ('Witness, Victim, or Informant Tampering'), which prohibits obstruction of congressional inquiries and investigations, to include acts unrelated to investigations and evidence." Pet. for Writ of Certiorari at i, Fischer v. United States, No. 23-5572 (S. Ct. Sept. 11, 2023). The Court agrees with Sheppard's contention that the Supreme Court's grant of the cert petition raises a "substantial question" as to the validity of his § 1512(c)(2) conviction.

Sheppard was convicted after trial based on evidence that he obstructed Congress's electoral vote certification by rioting in the U.S. Capitol. Accordingly, the question raised by the Fischer case cuts to the core of his conviction—whether his conduct in the Capitol is prohibited by § 1512(c)(2). If the Supreme Court decides as Judge Nichols did in the Fischer trial court decision, or as Judge Katsas opined in his dissent in Fischer, Sheppard's conduct would likely not come within the scope of the statute, and the § 1512(c)(2) conviction would be reversed. Indeed, Sheppard raised this argument in a motion to dismiss before trial. Def.'s Mot. to Dismiss Counts One, Two, Three, and Six of the Indictment [ECF No. 37] at 18–21. This Court rejected his argument, relying on its prior construction of § 1512(c)(2) as a broad prohibition on all forms of obstruction. United States v. Sheppard, Crim. A. No. 21-203 (JDB), 2022 WL 17978837, at *4 (D.D.C. Dec. 28, 2022) (citing United States v. McHugh, Crim. A. No. 21-453, 2022 WL 1302880, at *2–12 (JDB) (D.D.C. May 2, 2022)). While this Court's conclusion was subsequently endorsed by the D.C. Circuit in Fischer, 64 F.4th at 338 (citing McHugh, 2022 WL 1302880, with approval), the Supreme Court's grant of certiorari suggests the question whether § 1512(c)(2) covers rioting

5

in the Capitol is now a "close question or one that very well could be decided the other way." Perholtz, 836 F.2d at 556; cf. id. at 560–61 (indicating that Supreme Court review of a question core to the defendant's conviction is substantial).[2]  As Judge Mehta recently noted in reaching this same conclusion, "it takes four justices to grant certiorari and, although this court will not attempt to read tea leaves, the Supreme Court's decision to review Fischer means, at a minimum, that this case poses a 'close question.'"  Adams Op. at 3; accord Min. Order, United States v. Clark, Crim. A. No. 21-538 (DLF) (D.D.C. Dec. 21, 2023).[3]

### III. Likely Reduced Sentence

The substantial question as to Sheppard's § 1512(c)(2) conviction does not automatically entitle him to immediate release.  Because Sheppard was also convicted of four misdemeanor offenses, he must show that reversal of the § 1512(c)(2) conviction is likely to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1)(B)(iv).  Should the Court make such a finding, "detention [is] terminated at the expiration of the likely reduced sentence."  Id. § 3143(b)(1). Accordingly, the Court must embark on the unusual task of predicting the sentence it would "likely" impose if Sheppard's § 1512(c)(2) conviction were reversed.

---

[2] Sheppard also argues that the grant of certiorari in Fischer may raise a "substantial question of law" about the mens rea element of § 1512(c)(2) since certain judges on the D.C. Circuit contend that a narrower definition of "corruptly" is needed to cabin the scope of § 1512(c)(2)'s broad actus reus element. Mot. at 7 n.2. As this Court concluded previously, Sheppard has not raised a substantial question whether the evidence was sufficient to satisfy his preferred definition of "corruptly."  Sheppard, 2023 WL 7279263 at *7.  The grant of certiorari in Fischer does not affect this analysis.

[3] Other judges in this District appear to have implicitly recognized the same by postponing sentencing for defendants convicted under § 1512(c)(2).  See Min. Order, United States v. Jones, Crim. A. No. 21-213 (RJL) (D.D.C. Jan. 2, 2024); Min. Order, United States v. Zink, Crim. A. No. 21-191 (JEB) (D.D.C. Dec. 28, 2023); see also Min. Order, United States v. Gunby, Crim. A. No. 21-626 (PLF) (D.D.C. Dec. 22, 2023) (seeking parties' positions on continuing sentencing in view of certiorari in Fischer). But see United States v. Carnell, Crim. A. No. 23-139 (BAH) (D.D.C. Jan. 4, 2024), ECF No. 75 at 4–5 (refusing to stay defendant's trial on § 1512(c)(2) charge because the Supreme Court's grant of certiorari in Fischer did not suffice to show a likelihood of success on the merits of defendant's challenge to the statute's scope).

At Sheppard's sentencing, the Court calculated his guideline range, which was driven by the §1512(c)(2) conviction, at 30 to 37 months. Sheppard Sent'g Tr. [ECF No. 125] at 24:24–25:1. That range resulted from an offense level of 17 and a criminal history category of I. Id. at 24:15–24. After balancing the 18 U.S.C. § 3553(a) sentencing factors, the Court determined an appropriate sentence was 19 months. Id. at 63:2–6. In crafting the sentence, the Court took account of Sheppard's extremely serious conduct.

> He was among the first of the rioters to enter the Capitol, and he joined others in overrunning police lines. He recorded a video of himself proudly proclaiming, "I'm here with some goddamn heroes, and we just shut down Congress. Let's fucking go," it ends.
>
> He videotaped fleeing members of Congress and staff, and looked on as other rioters violently punched out the windows of doors mere inches from officers' heads. Serious, serious conduct. And he posted some threatening statements on social media, including threats directed towards Vice President Pence, and frustration with Republican senators who certified the electoral vote. And he has continued to post prolifically on a variety of social media platforms to this day.
>
> . . .
>
> He watched members of Congress and staff evacuating the House chamber, and he videotaped their flight, although he has contended that he didn't know who was evacuating or who was moving in the video that he recorded. He screamed and shouted at the officers who were there as he watched other rioters shatter windows close to the heads of the officers, and that was taking place right in front of him.

Id. at 56:8–20, 58:14–20. The Court weighed this conduct against Sheppard's "[young] age and [lack of] maturity, his lack of criminal history, the absence of any violent or destructive conduct, his history with his family and the community, and some truthful, candid testimony that he offered at trial." Id. at 61:1–4.

If Sheppard were resentenced, his likely guideline range would be much lower. Adopting the analysis that the Court has used in other cases involving the same misdemeanor convictions, the Court would group the § 1752(a) counts and apply U.S. Sentencing Guideline § 2A2.4 (Obstructing or Impeding Officers) with a base offense level of 10. See, e.g., United States v.

7

Lesperance, Crim. A. No. 21-575 (JDB); United States v. Nassif, Crim. A. No. 21-421 (JDB). Sheppard would still be subject to a two-level enhancement for obstruction of justice on account of the false statements he made at trial. See Sheppard Sent'g Tr. at 22:19–23:18 (applying USSG § 3C1.1). However, at a resentencing, Sheppard would likely be entitled to a two-level reduction under the Sentencing Commission's recently adopted adjustment for zero-point offenders. USSG § 4C1.1.[4] Taken together, an offense level of 10 with a criminal history category of I would result in a guideline range of 6 to 12 months.

Sheppard argues that he should be released immediately because he has already served longer than other misdemeanor defendants sentenced by this Court for their conduct at the Capitol riot. Mot. at 9–10 & n.3. The government responds that—even without the § 1512(c)(2) conviction—Sheppard's conduct "amply justifies at least 19 months of incarceration." Opp'n at 6–7; see Dean v. United States, 581 U.S. 62, 68 (2017) (noting that district judges "may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence"); United States v. Lassiter, 1 F.4th 25, 30–31 (D.C. Cir. 2021) (discussing the sentencing-package doctrine in the D.C. Circuit). The government, therefore, submits that Sheppard should remain in prison pending appeal because any reversal of the § 1512(c)(2) conviction should not affect his sentence at all, and the appeal will be complete before his term expires. See Opp'n at 8.

Absent the § 1512(c)(2) conviction, however, the Court would likely sentence Sheppard to less than 19 months in prison. Indeed, as his guideline range would likely be 6 to 12 months, the Court could only vary upward on the basis of a "specific reason why the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines

---

[4] Defendant's notice of supplemental authority acknowledges the traffic offense he incurred during the pendency of this case might affect his eligibility for the reduction. Notice of Suppl. Auth. at 4 n.2.

range." United States v. Murray, 897 F.3d 298, 308–09 (D.C. Cir. 2018); see Adams Op. at 5.[5] Since the Court previously varied downward based on several mitigating factors, the Court would be unlikely to resentence Sheppard above the guidelines.

At the same time, Sheppard's serious conduct warrants a longer term of imprisonment than the Court imposed on the misdemeanants cited in Sheppard's motion. Sheppard is similar in some ways to Nassif, whom the Court sentenced to seven months after finding him guilty at a bench trial of the same four misdemeanors as Sheppard. See Sent'g Tr., Nassif, ECF No. 95 at 78:4–10. Nassif was an "active particip[ant]" in the riot, "including leading chants, encouraging other rioters to keep fighting and waving people in." Id. at 76:4–6. As in Sheppard's case, the Court found that Nassif testified falsely at trial and failed to accept responsibility for his actions. Id. at 41:9–20, 63:14–17. But Sheppard's conduct was in some ways even more serious than Nassif's because of the threatening social media posts that accompanied it, as well as his verbal assault on law enforcement at the Capitol.

The Court concludes that Sheppard's likely sentence without the § 1512(c)(2) conviction would be in the range of six to nine months. The Supreme Court is likely to decide Fischer by the end of its term in June 2024, when Sheppard will have served eight or nine months. By the time the Supreme Court would issue a mandate, and the D.C. Circuit would evaluate the application to Sheppard's case and remand for resentencing, Sheppard could serve a longer term of imprisonment than would be warranted by his remaining convictions.

Accordingly, the Court will order Sheppard released after he has served six months in prison—on May 2, 2024. The parties shall contact the Court within three days of the Supreme

---

[5] In order to reach a 19-month term, the Court would also need to run Sheppard's misdemeanor sentences consecutively, which would be inappropriate here.

9

Court issuing its decision in <u>Fischer</u> with their positions as to what if any further proceedings are necessary.

      The Court reminds the parties that this opinion does not constitute a resentencing. The Court has calculated its likely sentence if Sheppard's § 1512(c)(2) sentence is vacated, but it has not finally decided what sentence it would impose. Six months is the minimum of the likely range, but the Court may ultimately conclude that a further period of incarceration is warranted upon a potential remand after a decision in <u>Fischer</u> that favors Sheppard. And if the Supreme Court affirms in <u>Fischer</u>, Sheppard will have the remainder of his 19-month sentence yet to serve.

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: <u>January 11, 2024</u>