# United States Court of Appeals
# for the District of Columbia Circuit

## No. 23-3045

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY RENDALL BROCK,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:21-cr-00140-JDB-1, John D. Bates, U.S. Senior District Judge*

## JOINT APPENDIX
## SUPPLEMENT – UNDER SEAL
## VOLUME II OF II, Pages A608-A739

CHRISELLEN REBECCA KOLB
U.S. ATTORNEY'S OFFICE
601 D Street NW, Room 8104
Washington, DC 20530
(202) 252-6829
chrisellen.r.kolb@usdoj.gov

*Counsel for Plaintiff-Appellee*

July 10, 2023

CHARLES BURNHAM
BURNHAM & GOROKHOV, PLLC
1750 K Street NW, Suite 300
Washington, DC 20006
(202) 386-6920
charles@burnhamgorokhov.com

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

**VOLUME I:**

Docket Entries ........................................................................ A1

Indictment, filed June 23, 2021 ........................................ A18

Motion to Dismiss Count 1 or in the Alternative for a Bill of
    Particulars, filed July 1, 2022.................................... A21

Opposition to Defendant's Motion to Dismiss Count 1: Obstruction
    of an Official Proceeding, filed July 22, 2021........................... A27

Memorandum Opinion, filed August 31, 2022 ................................. A38

Transcript of Bench Trial Day 1, filed December 6, 2022 ................. A63

Transcript of Bench Trial Day 2, filed December 6, 2022 ................. A284

Transcript of Bench Trial Day 3, filed December 6, 2022 ................. A450

Government's Sentencing Memorandum, filed March 10, 2023 ....... A482

    Exhibit 1: Cases in Which the Government Recommended a
    Probation Sentence without Home Detention ......................... A520

Sentencing Memorandum, filed March 16, 2023 .............................. A564

    Exhibit 1: Letter dated January 4, 2023 to Judge John D.
    Bates ...................................................................... A584

    Exhibit 2: Portland Federal Courthouse Protest Cases ........... A586

Judgment in a Criminal Case, filed March 20, 2023........................ A598

Notice of Appeal, filed March 28, 2023............................................. A606


**VOLUME II: FILED UNDER SEAL:**

Presentence Investigation Report, filed February 6, 2023................. A608

Transcript of Sentencing Hearing, dated March 17, 2023 ................ A641

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
 *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 21-140
vs.                                )
                                   )
LARRY RENDALL BROCK,               )  March 17, 2023
                                   )  11:03 a.m.
              Defendant.           )  Washington, D.C.
 *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF SENTENCING HEARING**
**BEFORE THE HONORABLE JOHN D. BATES,**
**UNITED STATES DISTRICT COURT SENIOR JUDGE**

**APPEARANCES:**

FOR THE UNITED STATES:
                    APRIL HOLLY AYERS-PEREZ
                    DOJ-ATR, Southern District of Texas
                    450 5th Street NW
                    Room 11412
                    Washington, DC 22035
                    (202) 894-4237
                    Email: april.ayersperez@usdoj.gov

                    BARRY KENT DISNEY, I
                    DOJ-CRM
                    1331 F Street NW
                    Washington, DC 20005
                    (202) 305-4367
                    Email: barry.disney@usdoj.gov

FOR THE DEFENDANT:
                    CHARLES BURNHAM
                    BURNHAM & GOROKHOV PLLC
                    1424 K St. NW, Suite 500
                    Washington, DC 20005
                    (202) 386-6920
                    Email: charles@burnhamgorokhov.com

ALSO PRESENT:       KELLI WILLETT, U.S. Probation

Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1         THE COURTROOM DEPUTY:  Your Honor, we have

Criminal Action 21-140, United States of America versus

Larry Brock.

         We have Ms. April Ayers-Perez and Mr. Douglas

Meisel representing the government.  We have Mr. Charles

Burnham representing Mr. Brock, who is here in person.  We

also have Ms. Kelli Willett representing probation.

         THE COURT:  All right.  We're here for a

sentencing in this matter following a bench trial.

         Let me first ask you, Mr. Burnham, on behalf of

yourself and Mr. Brock, whether you have received the

presentence report and had a chance to review it?

         And other than the three issues relating to the

guideline calculation, are there any other remaining issues

in dispute?

         MR. BURNHAM:  The answer is, yes, we have received

the presentence report.  Yes, we've had a chance to review.

And, no, no objections other than as noted in the report.

         THE COURT:  All right.  And the same series of

questions for the government; received, reviewed?

         And other than the three issues with respect to

the guideline calculation -- that I will address and have

you address in a moment -- are there any other issues

remaining in dispute?

1          MS. AYERS-PEREZ:  I have received it.  I have

2     reviewed it.  I have no other issues, Your Honor.

3          THE COURT:  All right.  And thank you both.

4          Under Federal Rule of Criminal Procedure

5     32(i)(3)(A), I will accept the presentence report as

6     findings of fact on issues that are not in dispute.

7          The case does fall under the sentencing format of

8     1984, at least for some of the counts, under which Congress

9     created the U.S. Sentencing Commission, and that Commission

10    has issued detailed guidelines for judges to consider in

11    determining the sentence in criminal cases like this.

12          There are sentencing ranges that have been set for

13    specific offenses, they are all contained in the guidelines

14    manual.  But in light of Supreme Court and other decisions,

15    those guidelines are not mandatory, they're advisory; and

16    they must be consulted by the Court and considered by the

17    Court in determining the appropriate sentence in a case but

18    they are simply advisory, not mandatory.

19          I will in this case assess and determine the

20    proper sentence by referring to and considering the

21    sentencing guidelines in the first instance, but they will

22    be treated as advisory, not mandatory; and there is no

23    presumption that a guideline sentence is the correct

24    sentence.  The guidelines will simply be considered along

25    with all other relevant factors.

1     So we are here because the defendant was found

2 guilty following a bench trial of six offenses.  Let me just

3 review those quickly:

4     Count 1, obstruction of an official proceeding and

5 aiding and abetting in violation of Title 18 of the U.S.

6 Code, Sections 1512(c)(2) and Section 2;

7     Count 2, entering and remaining in a restricted

8 building and grounds in violation of Title 18 of the

9 U.S. Code Section 1752(a)(1);

10     Count 3, disorderly and disruptive conduct in a

11 restricted building or grounds in violation of Title 18 of

12 the U.S. Code, Section 1752(a)(2);

13     Count 4, entering and remaining on the floor of

14 Congress in violation of 40 U.S.C. Section 5104(e)(2)(A);

15     Count 5, disorderly conduct in a Capitol Building

16 in violation of Title 40 of the U.S. Code

17 Section 5104(e)(2)(D);

18     And finally, Count 6, parading, demonstrating, or

19 picketing in a Capitol Building in violation of 40 U.S.C.

20 Section 5104(e)(2)(G).

21     So the maximum term of imprisonment on the felony

22 charge, which is Count 1, is 20 years.  Counts 2 and 3 are

23 both misdemeanors, Class A misdemeanors; and they carry a

24 maximum term of imprisonment of 1 year.  And the other three

25 counts, 4, 5, and 6, are Class B misdemeanors carrying a

1    maximum term of imprisonment of 6 months.

2            Probation -- my first obligation is to do a

3    guidelines calculation.  Probation has done an initial

4    calculation and recommended an offense level of 25 based on

5    the base-offense level and certain additions to that

6    base-offense level and place Mr. Brock in criminal history

7    Category 1, the lowest criminal history, resulting in a 57-

8    to 71-month guideline range.

9            The government has agreed with that, and the

10   defense has not.  And its calculation, not giving the

11   enhancements but giving an acceptance of responsibility

12   reduction -- they wind up with a 10- to 16-month guideline

13   range.  Quite a difference between the two sides, if you

14   will.

15           As I said earlier, there are three issues under

16   the guidelines that really drive that calculation.  There is

17   the question whether the defendant is entitled to a

18   two-level reduction for acceptance of responsibility, even

19   though he went to trial in this case.  Secondly, whether a

20   three-level enhancement for substantial interference with

21   the administration of justice should apply.  Finally,

22   whether an eight-level enhancement for causing or

23   threatening to cause physical injury or property damage

24   should apply.

25           So I want to address all three of those.  But in

1    doing so, first, I want to give each side an opportunity to

2    say anything that they would like to say further on those.

3         I think, as I usually do in criminal cases, I

4    should start with the government.  If you have anything you

5    want to say in support -- I would take it -- of the

6    probation office's calculation, which did not apply the

7    two-level reduction for acceptance of responsibility and did

8    apply the two enhancements.  Then let me hear from you at

9    this time, Ms. Ayers-Perez.

10        MS. AYERS-PEREZ:  Thank you, Your Honor.

11        I do agree -- or we do agree with the

12   government [sic] -- I'm sorry -- with the government -- yes,

13   we agree with the government -- with probation on the

14   additional enhancement, the eight-level enhancement for the

15   causing or threatening to cause physical injury or property

16   damage, or aiding and abetting in that, and the substantial

17   interference with the administration of justice; that's the

18   three-level enhancement.  We also agree that the defendant

19   is not entitled to an acceptance of responsibility decrease.

20        And starting with the acceptance of responsibility

21   argument, Your Honor, the defendant went to trial.  He did

22   stipulate to some matters during trial, but he still

23   contested his guilt on all six counts during the course of

24   that trial.  He still pled not guilty.

25        We still put on evidence.  We brought in five

1   different witnesses.  We put on a number of exhibits in the

2   process of proving the defendant's guilt on all six counts.

3   And as part of that process, you know, he hasn't accepted

4   responsibility because he did go to trial and he did plead

5   not guilty.  He did say he was not guilty; and he did argue

6   that he was not guilty of all six counts.

7            Even as we sit here today, in his interview with

8   probation, he said -- and let me make sure I get the exact

9   language, Your Honor -- but he said something along the

10  lines of he still believed it was a peaceful protest, other

11  than those two acts that he saw.  For those reasons, he

12  hasn't accepted responsibility and he should not get the

13  benefit of accepting responsibility after going through a

14  trial.

15           Moving on from there to the enhancements,

16  Your Honor.  The three-level enhancement for the substantial

17  interference with the administration of justice -- both of

18  these enhancements and as to their applicability and the

19  wording of "administration of justice," which is, I believe,

20  one part of what the defendant's argument was, have been

21  dealt with with other judges here in the D.C. District.

22           We agree with a number of judges, Judge Friedrich,

23  Judge Lamberth, Chief Judge Howell, Judge Kelly, Judge Moss,

24  and Judge Cooper, that the administration of justice

25  enhancements in cases arising from the Capitol breach on

1    January 6th -- that the "administration of justice"

2    definition applies to the conduct that we saw on January 6th

3    from the rioters as a whole, and that the delay -- that the

4    substantial interference with administration of justice --

5    that what was happening in Congress at that time on the

6    House floor and then on the Senate floor as well, and the

7    counting of the Electoral College votes does qualify under

8    "administration of justice," and the definition that we see

9    there in the guidelines and, as such, the three-level

10   enhancement should apply in this case.

11            Brock was a part of a larger mob that stopped the

12   proceedings from taking place -- not just the initial stop

13   of the proceedings, but the fact that they had to stop for a

14   number of hours as people, including the defendant, were

15   inside the Capitol Building and they were continuing to stop

16   the proceeding by just being there.  Brock, in addition to

17   that, was on the Senate Floor where the -- where they were

18   supposed to be debating Arizona at that very moment.

19            THE COURT:  The only judge -- the only judge in

20   this court that has not applied that three-level enhancement

21   did so because he determined that "administration of

22   justice" is a term that refers exclusively to judicial

23   proceedings.

24            MS. AYERS-PEREZ:  Yes, Your Honor.  That was

25   Judge McFadden.  Yes, he did make that determination.

1          We disagree with that determination, Your Honor.

2          We believe that the intent of the guidelines and

3     the Commission, in making that enhancement, was to apply not

4     just to judicial proceedings but to governmental proceedings

5     as well, and proceedings in Congress as well.

6          In looking at the commentaries -- this is under

7     2J1.2 of the sentencing guidelines.  Looking at the

8     commentary, they give a broad definition of "substantial

9     interference with the administration of justice."  It

10    includes:  A premature or improper termination of a felony

11    investigation; an indictment, verdict, or any judicial

12    determination based upon perjury, false testimony, or other

13    false --

14          THE REPORTER:  Slow down, please.

15          THE COURT:  You are going way too fast for the

16    court reporter.

17          MS. AYERS-PEREZ:  My apologies.

18          -- based on perjury, false testimony, or other

19    false evidence -- and this is the really important part,

20    Your Honor:  Or the unnecessary expenditure of substantial

21    governmental or court resources.

22          If this -- if this enhancement was only to apply

23    to judicial proceedings, that would have just been "or court

24    resources."  They included --

25          THE COURT:  Well, I don't think that's quite right

1    because "governmental" is you, quite frankly, in a court

2    proceeding.  So I don't think that "court resources" is an

3    indication that it is solely judicial proceedings.

4               MS. AYERS-PEREZ:  Yes, Your Honor.

5               But also if we look at the enhancements as a

6    whole -- both of the enhancements we're looking at -- this

7    is the plus three and the plus eight -- are the biggest

8    enhancements under 2J1.2, which encompasses a number of

9    obstruction statutes, not just the 1512(c)(2) that we are

10   here on.

11              Most of those statutes do not cover judicial

12   proceedings as a whole, they cover a more broad

13   understanding of administration of justice.  And so the

14   determination of the Commission to include those two big

15   enhancements -- it would not make sense for them to do that

16   and only have it apply to a vast minority of what 2J1.2

17   covers.

18              Chief Judge Howell covered this in the *Rubenacker*

19   case.  She said:  There is simply no indication in guideline

20   Section 2J1.2 that the specific offense characteristics

21   containing the phrase 'administration of justice' were meant

22   to apply to only some of the statutes represented to this

23   guideline and not apply to all of the cases involving

24   obstruction of proceedings taking place outside of courts or

25   grand juries.  That simply doesn't make sense.

 1              And I would agree with that, Your Honor.  It would

 2      not make sense for the guidelines to only have that apply to

 3      a few of the obstruction statutes that we find under 2J1.2;

 4      that it is a more broad definition of "administration of

 5      justice" that would include Congressional proceedings like

 6      we saw on January 6th and that the defendant and others who

 7      were there on January 6th had a substantial interference

 8      with, and that would apply to the administration of justice

 9      definition under plus -- the plus three enhancement and the

10      plus eight enhancement, which is the causing or threatening

11      to cause physical injury or property damage.

12              Your Honor, would you -- do you want me to just go

13      over the "administration of justice" or do you want me to go

14      over the actual specific facts with both enhancements as to

15      the --

16              THE COURT:  Whatever argument you think you'll

17      make to me is up to you.  You know that I have read the

18      materials and thought about it, so it's not something that

19      you are speaking to a blank wall on.

20              MS. AYERS-PEREZ:  Yes, Your Honor.

21              When it comes to the plus eight enhancement for

22      the threatening to cause physical injury or property damage,

23      we look to the defendant's words and conduct in the days and

24      weeks and months leading up to January 6th.

25              THE COURT:  Yeah.  There is the difference between

1  the words, and they -- we will be talking about those words

2  at length today.  But there is a difference between the

3  words and his conduct because his conduct does not fit --

4  this is the eight-level enhancement we're talking about now.

5          His conduct does not fit within the language

6  causing or threatening to cause physical injury to a person

7  or property damage on January 6th at the Capitol.  His

8  conduct just doesn't fit within that.

9          What you would do is look back to his words,

10  stretching back to November, and say that those words caused

11  or threatened to cause -- they didn't cause, I don't think.

12  But you would say they threatened to cause physical injury

13  to a person or property?

14          MS. AYERS-PEREZ:  Yes, Your Honor.

15          His words were violent in nature.  They were

16  talking about a specific event, a specific proceeding, and a

17  specific date, on January 6th.

18          And they weren't just words in the sense that he

19  said those things, he vented, he got it out, and then he was

20  done.  He said those things and, then, he bought body armor

21  in December, the month before.  And then, he, on

22  January 5th, got on a plane and flew to Washington, D.C.

23  with that body armor.

24          THE COURT:  Well, I know.  But his flight to

25  Washington, D.C. and his purchase of body armor may be

1    important in some ways in the sentencing, but they don't

2    really reflect causing injury to a person or property

3    damage.

4           The problem I see with the government's

5    argument -- maybe this is an extreme case in terms of the

6    words.  But the government's argument would capture a lot of

7    cases for January 6 defendants where the defendants did not

8    engage in any conduct that caused or threatened to cause

9    physical injury or property damage on January 6th, but that

10   they said something earlier on which involved a threat to

11   property damage or physical injury, and you are going to

12   capture a lot of January 6th defendants.

13          I am not sure that this enhancement of eight

14   levels -- I mean, it's an enhancement that basically more

15   than doubles what the exposure is under the guidelines.  I

16   am not sure that this enhancement is meant to capture all of

17   that.  It seems to me that it's meant for the specific

18   special circumstance of where someone actually engages in or

19   is on the scene threatening physical injury or property

20   damage.

21          MS. AYERS-PEREZ:  And I would agree with

22   Your Honor that it absolutely encompasses that.  The case

23   with this defendant is that his conduct was so egregious --

24          THE COURT:  You mean his words.

25          MS. AYERS-PEREZ:  -- his words were so egregious,

1    his attire that day backed up his words.

2            And although we are not aware of any violence that

3    he engaged in that day, he did end up in one of the most

4    sensitive places within the entire Capitol in body armor

5    after having these violent threats --

6            THE COURT:  I don't think -- I don't think winding

7    up in a sensitive place is relevant to this enhancement.

8    It's relevant to the sentencing in other ways, but I don't

9    see how it's relevant to this enhancement.

10           MS. AYERS-PEREZ:  Yes, Your Honor.

11           Well, moving on from that enhancement then, we're

12   still asking for the 60 months.  We're asking for three

13   years of supervised --

14           THE COURT:  I don't want you to -- we're going to

15   hear from -- all I want to hear right now is on the -- the

16   three issues with respect to the guideline calculation.

17           MS. AYERS-PEREZ:  Thank you, Your Honor.

18           THE COURT:  I will hear further from you in a few

19   minutes.

20           MS. AYERS-PEREZ:  Yes, Your Honor.

21           Well, that's what I have on those three issues.

22   Thank you.

23           THE COURT:  Mr. Burnham?

24           MR. BURNHAM:  Thank you, Your Honor.

25           Your Honor, I will start with the acceptance

 1    reduction.  As we put out in our papers, the guideline

 2    provides for a narrow subset of cases where acceptance might

 3    apply, even in the post-trial context.  Preserving pretrial

 4    issues is the example that's given in the notes, but that's

 5    not offered exclusively.

 6          And so what do we have here --

 7          THE COURT:  Well, how could you have forfeited

 8    those pretrial issues by going to trial?  You still could

 9    appeal based on those.  I don't understand what your

10    preservation argument is.

11          MR. BURNHAM:  Well, if Mr. Brock hadn't gone to

12    trial -- if he would have pled guilty, then he would have

13    waived his -- absent --

14          THE COURT:  So you think he would have waived all

15    of those if he plead guilty?

16          MR. BURNHAM:  He would have waived, that's right.

17          So that's one part of this.  Also, another part of

18    it is a number of defendants in the Capitol --

19          THE COURT:  That means -- that means that anyone

20    who has a pretrial or even -- yeah -- let's call it a

21    pretrial issue.

22          In your view, if they then go to trial they are

23    preserving appeal on those issues and, therefore, they

24    should get the acceptance of responsibility.

25          MR. BURNHAM:  No, I wouldn't --

1     THE COURT:  I don't think -- I don't think that's

2  either what the language of the relevant provisions,

3  including application notes or how judges have viewed it --

4  it doesn't seem to me that's the approach that's been taken.

5     MR. BURNHAM:  That's the starting point.  I

6  wouldn't -- I wouldn't urge anything that absolute on the

7  Court; that's the first step.  I think -- there are two

8  things beyond that that I think are relevant here.  One is

9  the nature of the pretrial motions; at least one of them is

10  currently on appeal now to the Court of Appeals, and it was

11  pretty contested.

12     THE COURT:  You mean 1512?

13     MR. BURNHAM:  1512.  I mean, I listened to the

14  argument, perhaps Your Honor did as well.  The judges were

15  asking some questions -- it's a real issue, basically.  It's

16  different than if there was, you know, a motion to suppress

17  a statement where, you know he started to say -- asked some

18  routine questions.  It's not a routine pretrial motion,

19  that's significant.  And the same is true with some other

20  issues, venue and so forth.  I mean, these are very unusual

21  cases with very unusual legal issues.

22     Secondly, I think we'd look at the nature of the

23  trial.  Now, at one extreme, there were some defendants in

24  criminal cases that did these stipulated trials where they,

25  basically, agreed to all of the facts; and most of them, I

 1    think, did get acceptance.  We didn't quite do that.  But

 2    came pretty close, right?

 3           We agreed to everything we possibly could have.

 4    And I even recall a statement Your Honor made -- it might

 5    have been at Rule 29, perhaps it was in closing -- where

 6    Your Honor even said:  This is not really a case where there

 7    is a dispute over the facts.  This is a case where it's --

 8    you know, how the law applies to the legal issues.

 9           THE COURT:  No.  I think I said that in the

10    context of saying:  This is a case that really turns on the

11    dispute with respect to intent.

12           MR. BURNHAM:  Okay.  That's right.

13           THE COURT:  The mens rea, and that's an essential

14    part of guilt or not guilt.

15           So it seems to me that that's just like -- it's no

16    different from disputing facts because it is disputing

17    facts.  It's disputing the facts with respect to the mens rea.

18           MR. BURNHAM:  We -- that's absolutely right.

19           We did dispute the mens rea, whether the

20    government had carried the burden.  We didn't dispute what

21    happened that day, who he was, where did he go, all that

22    sort of stuff.

23           So the trial was largely uncontested, with the

24    exception of that one issue.  And there were certain things

25    about would he have seen this bike rack.  There were issues

1    here and there.  But, for the most part, we agreed to

2    everything, right?

3          So, really, where that leaves us is, I think there

4    is a case where he should get the two levels because he

5    manifested great -- a high level of acceptance of

6    responsibility, and tried -- we tried our best to limit the

7    areas of contention to just those specific areas where we

8    thought that the Court needed to hear an adversarial

9    presentation of the facts.

10          Even with regards to the intent of 1512, that's, I

11   think -- hopefully, the Court would agree -- kind of a

12   touchy, legal issue.  It's a complicated intent standard of

13   that statute; there weren't that many cases.  It's something

14   that the government is making a novel use of the statute.

15   It wasn't an instance where -- it wasn't worthwhile to have

16   the debate in order to allow Your Honor to make the best

17   decision possible.

18          And so perhaps, as a technical matter, Your Honor

19   will rule against us on that; and we would accept such a

20   ruling without grumbling.

21          But I want to sort of put a pin in this, in that

22   it -- maybe as a technical matter, if Your Honor doesn't

23   think we get the two points -- it's something that might

24   later inform a variance to reflect Mr. Brock's posture at

25   trial.

1        Now coming to the 11 levels.  Your Honor, I think,

2    framed the issues exactly right with counsel for the

3    government.  The easiest way to resolve them is the legal --

4    the legal basis, the administration of justice.

5        THE COURT:  That's the easiest way for you, you

6    mean.

7        MR. BURNHAM:  It is.  And I think it's the right

8    way.  Honestly, I do think it's the right way.

9        There is a split amongst the judges but, quite

10    simply, we think the better --

11        THE COURT:  It's another one of these splits that

12    is a lot of judges one way and another judge another way, in

13    terms of the "administration of justice" being limited to

14    judicial proceedings.  There's only one judge that has so

15    concluded.

16        MR. BURNHAM:  To my knowledge -- well, one judge

17    in this District did.

18        Notably, we did cite a case from -- it happens to

19    be from Ms. Ayers home district, the Fifth Circuit.  It's

20    the law of that whole circuit that we're right.

21        So it's really not as one sided as perhaps it

22    might look if we just looked at this courthouse.  And

23    there's no reason why the minority view shouldn't turn out

24    to be the right one, and we absolutely think it is.

25        And I don't think it is -- respectfully, I don't

1   think it's unusual at all that there would be an enhancement

2   that might only apply to some narrow subset of obstruction

3   cases.  I mean, think of all of the enhancements we see.

4   You know, if the conduct violated the 1962 Export Control

5   Act, add three point.

6           THE COURT:  But on that legal issue, wouldn't it

7   be a little odd to interpret the administration of

8   justice -- I am, basically, tracking Chief Judge Howell's

9   view.

10          Wouldn't it be a little odd to track -- to

11  interpret administrative -- "administration of justice" so

12  narrowly as to be limited to judicial proceedings when all

13  of the statutes referred to and relevant to this provision

14  of the guidelines go well beyond that?

15          You know, why would the application note and --

16  and the enhancement somehow be limited only to judicial

17  proceedings in this context?  It just would seem odd.

18          MR. BURNHAM:  Because that makes the offense more

19  aggravated, right?

20          There are all sorts of ways to obstruct justice,

21  obstruct official proceedings.  But when you are obstructing

22  the very machinery of a court in a judicial proceeding

23  that's, oftentimes, going to be a more aggravated set of

24  facts than other sorts of conduct that the guideline covers,

25  and it's only appropriate that the guidelines would reflect

1    that.

2          THE COURT:  You would think -- you would think

3    that if that's what the Sentencing Commission was driving

4    at, they would have said so.

5          MR. BURNHAM:  Well, the flip side of that is -- if

6    we take the opposite view, then the "administration of

7    justice" language becomes mere surplusage, right?  We're not

8    supposed to interpret guidelines to have language sort of

9    mean nothing.  And the government hasn't offered an

10   alternative limiting construction on administrative justice

11   that makes any sense that would substitute for the one we're

12   offering and the one that the Fifth Circuit and Judge

13   McFadden has arrived on.

14         If it doesn't mean -- "administration of justice"

15   doesn't mean in a court of law, what does it mean?  We

16   haven't seen an alternative that makes any sense.

17         THE COURT:  All right.

18         MR. BURNHAM:  So I think that's the right legal

19   answer.  The factual answer, I think Your Honor's questions

20   posed to Ms. Ayers are exactly right.  The enhancements by

21   their own --

22         THE COURT:  That's only on the eight level.

23   That's not on the three level.

24         MR. BURNHAM:  On the eight level, that's right.

25         -- by their own terms apply to the offense has to

1    involve the threats and -- and social media conversations.

2    I am sure we will talk about that.  Beforehand, they weren't

3    directed at anybody at the Capitol, they were divorced from

4    it.

5          "Substantial interference" gets a little bit more

6    of a close call, I suppose but, even then, the Electoral

7    College -- Mr. Brock was one of many, many people who were

8    there that day.  And it's common knowledge that the

9    Electoral College met a few hours later and did what they

10    had to do.

11          THE COURT:  Well, wait a minute.  Are you really

12    arguing that what occurred on the Capitol did not

13    substantially interfere with the congressional

14    responsibility of certifying the Electoral College results?

15          MR. BURNHAM:  Well, I prefaced my remarks by

16    saying it's a closer question; but I think it's relevant

17    that they accomplished their task a few hours later.

18          Mr. Brock was one of several thousand people

19    that -- that were there.

20          THE COURT:  Several thousand people is -- what is

21    the interference?  He was only one of them, I agree.

22          MR. BURNHAM:  That's right.  So that's a closer

23    question.  But legally -- if the legal question is resolved

24    in our favor, then that factual inquiry doesn't become

25    necessary.

1           Thank you, Your Honor.

2           THE COURT:  All right.  Thank you, Mr. Burnham.

3           Okay.  I am going to resolve those three issues,

4    and then I will do the guideline calculation as a result of

5    that resolution.

6           So the first issue is acceptance of

7    responsibility, and the guidelines provide that:  If the

8    defendant clearly demonstrates acceptance of responsibility

9    for his offense, the offense level should be decreased by

10   two levels, that's 3E1.1(a) of the guidelines.  And in the

11   commentary to that provision it is said that:  This

12   adjustment is not intended to apply to a defendant who puts

13   the government to its burden of proof at trial by denying

14   the essential factual elements of guilt.

15          But it's further pointed out in 3E1.1(a), the

16   application note 2 that, in rare situations -- and let me

17   underscore that:  In rare situations a defendant may clearly

18   demonstrate an acceptance of responsibility for his criminal

19   conduct, even though he exercises his constitutional right

20   to a trial.

21          So what that is saying is that:  If you exercise

22   your constitutional right to a trial, it's going to be rare

23   that you get the acceptance of responsibility adjustment.

24   The example given is that a defendant goes to trial to

25   assert and preserve issues that do not relate to factual

1    guilt; constitutional challenge, for example.  The

2    determination, according to this application note, that a

3    defendant has accepted responsibility will be based

4    primarily upon pretrial statements and conduct.

5         And as referred, Mr. Brock contends that, even

6    though he went to trial, there were few facts in dispute,

7    and the main issue was how the law applied to the facts.

8    And he proceeded to trial to preserve his right to appeal

9    and did not deny the basic facts of the case.

10         The government, as you have also heard, disagrees

11    and argues that Mr. Brock contested essential factual

12    elements of guilt at trial, such as denying that he went to

13    the Capitol to stop the certification, denying that he

14    dressed in tactical gear to support the mission to storm the

15    Capitol and stop the certification, and denying that he had

16    picked up and held on to Flex Cuffs.

17         So those were factual issues and they relate, to

18    some extent, to the question of mens rea, which is often an

19    important issue in these January 6th cases.  It's not

20    unusual that we're going to see either the facts stipulated

21    to or the facts really not being in that much dispute,

22    except facts relating to mens rea, the intent requirement,

23    the knowingly or the willfully, depending upon the provision

24    at issue, and that is an essential aspect of the

25    determination of guilt and it does depend on factual

1    assessment based on the evidence at trial.

2         I am not sure that any other January 6 defendant

3    who has gone to trial, other than perhaps with a stipulated

4    trial -- I am not even sure about those -- but I am not sure

5    that any other January 6 defendant who has gone to trial has

6    actually received an acceptance of responsibility reduction

7    at sentencing.

8         I have reviewed cases -- I've reviewed ten cases,

9    for example, from various judges, all of whom denied

10   acceptance of responsibility requests in the context of

11   defendants who went to trial.  So the overwhelming volume of

12   cases, and perhaps the exclusive volume of cases, is not to

13   award an acceptance of responsibility reduction in the

14   context where a January 6th defendant has gone to trial and,

15   particularly, in the context where there isn't a stipulation

16   of guilt as to any charge or stipulated facts and there is

17   an argument that the requisite mens rea for guilt had not

18   been proven by the government on the facts.

19        So the government was put to the proof on that

20   issue and some other factual issues respecting Mr. Brock's

21   guilt or innocence.  And as the government has said, I think

22   that amounts to disputed issues relating to his factual

23   guilt.  And even though there is a legitimate question with

24   respect to some legal issues and preservation of those

25   issues for appeal, nonetheless, I think that we are in a

1    situation where there is a real dispute as to factual guilt

2    here and an argument that there was not -- that the

3    government wouldn't be able to prove -- and they were put to

4    their proof on the requisite mens rea level -- and,

5    therefore, for that reason, I am going to deny a two-point

6    reduction for acceptance of responsibility.

7           With respect to the three-level enhancement under

8    Section 2J1.2(b)(2) of the guidelines, that applies where

9    the offense resulted in substantial interference with the

10   administration of justice and substantial interference.  In

11   the application note 1 is defined to include the unnecessary

12   expenditure of substantial government resources.

13          Both probation and the government argue that the

14   enhancement does apply because the riot resulted in

15   evacuations of Congressional members and personnel, delay of

16   the vote count, injuries to many law enforcement officers,

17   more than $2.8 million in property damage loss, and so many

18   law enforcement resources from all over the

19   D.C. metropolitan area to assist in protecting the Capitol.

20          On the other hand, Mr. Brock contends on the legal

21   issue that the phrase administration of justice refers to

22   judicial proceedings, and one judge has so concluded in this

23   District.  And I am not saying there isn't some support from

24   elsewhere on that, but the overwhelming view of the judges

25   in this court is that the three-level enhancement should be

1     applied in 1512(c) sentencings.

2          And I think the lead case is probably Chief Judge

3     Howell's decision in *United States versus Rubenacker.*  She

4     has gone through the legal question on "administration of

5     justice," and I adopt her assessment in that case.  I also

6     adopt the assessment that only a general causal tie is

7     necessary between the defendant's actions and the

8     unnecessary expenditures by the government and that the

9     government only has to show a causal line from the mob --

10    the group of participants including the defendant -- that

11    collectively resulted in a situation causing unnecessary

12    expenditure of substantial government resources.

13         I also agree with Chief Judge Howell in her

14    conclusion that this enhancement applies because -- or where

15    a defendant's conduct contributed to this unnecessary

16    expenditure of substantial government resources during and

17    after the riot and resulted in substantial interference with

18    the administration of justice.

19         As I have said, other judges have followed suit.

20    There are many judges who have agreed that the

21    "administration of justice" encompasses an official

22    proceeding of Congress and that defendants convicted under

23    1512 should receive that enhancement based on facts similar

24    to what we have here, and I so conclude.

25         I believe that the view of one judge on the legal

1    issue is not correct.  I agree with the other judges of this

2    court on that legal issue and on the application of this

3    enhancement in circumstances such as this.

4           Mr. Brock was convicted of obstructing an official

5    proceeding.  He was part of the mob that caused substantial

6    damage at the Capitol and large expenditure of government

7    resources and, therefore, I will apply that three-level

8    enhancement.

9           The eight-level enhancement, however, is a

10    different question; that is under 2J1.2(1)(B).  It applies

11    if the offense involved causing or threatening to cause

12    physical injury to a person or property damage in order to

13    obstruct the administration of justice.

14           Again, the legal issue of administration of

15    justice, as defined, I agree with Chief Judge Howell as it

16    applies to this enhancement as well.

17           The government, however, notes that Mr. Brock used

18    very dangerous and even violent rhetoric in the time --

19    days, weeks, even months -- leading up to January 6th.  And

20    even though he didn't engage in such conduct, violent or

21    inflicting property damage at the Capitol, he marched inside

22    the Capitol Building to various locations as they have said,

23    including sensitive locations, while holding Flex Cuffs,

24    dressed in a helmet, and a military-style tactical vest.

25    This is a fact-sensitive determination I believe.

1          The cases are a little bit mixed.  In cases where

2     the defendant committed physical acts of violence or took

3     actions that disrupted or destroyed property in the Capitol,

4     courts apply this enhancement, and I think properly so.  But

5     in cases that more resemble Mr. Brock's circumstances they

6     are less likely to order application of this enhancement.

7          I think that two cases that I agree with -- one is

8     that same case I believe by Judge McFadden did not apply

9     this enhancement, and I think correctly.  And in

10    *United States versus Wood*, Judge Meta concluded that there

11    was nothing in the terms of words or conduct that rises to

12    an eight-level enhancement for causing or threatening to

13    cause physical injury to a person or property damage; and I

14    think that's true here, notwithstanding the social media

15    posts.  They are a little bit removed and, hence, attenuated

16    from actual threats or causing physical damage.

17         It is rhetoric.  It is concerning rhetoric and it

18    is relevant to the sentencing here, but I do not believe

19    that that rhetoric is sufficient to apply this very

20    considerable enhancement.  To do so based solely on what

21    someone -- a January 6th defendant has said prior to the

22    date, prior to the events at the Capitol, would sweep in, I

23    fear, many January 6th defendants who have not actually

24    caused or threatened physical injury to a person or property

25    damage while they were involved in the events of January 6.

1    Yes, there is a little bit more here.  Mr. Brock

2    did carry Flex Cuffs.  I think all have now concluded that

3    he did not bring them to the Capitol; he found them there

4    and then held on to them.  And he wore tactical gear

5    including a helmet.  But I don't think that -- even though

6    that is somewhat threatening, I don't think it's enough to

7    satisfy the requirements of this enhancement of causing or

8    threatening physical injury to a person or property damage

9    in terms of the events of January 6th.  I will not apply

10   that enhancement here.

11        I will, as I said, weigh the violent and

12   threatening rhetoric and social media posts elsewhere in the

13   3553 analysis for sentencing purposes.

14        So what this means is -- as I will explain in a

15   second -- that I will deny the two-level reduction for

16   acceptance of responsibility.  I will apply the three-level

17   enhancement for substantial interference with the

18   administration of justice, but deny the eight-level

19   enhancement for causing or threatening to cause physical

20   injury to a person or property damage.  And the result will

21   be an offense level much lower, Level 17.  The guideline

22   level as well is going to be much lower, instead of 57 to

23   71 months, it's 24 to 30 months.  Let me go through that

24   calculation right now because that is my obligation under

25   the 2021 guidelines manual.

1    There are six counts.  The applicable guideline

2    for Count 1 is 2J1.2; for Count 2, it's 2B2.3, which does

3    cross reference to 2J1.2; and for Count 3, it's 2A2.4.

4    The other three counts, Counts 4, 5, and 6, do not

5    apply.  The guidelines do not apply to any count of

6    conviction that is a Class B misdemeanor and, therefore, the

7    sentencing guidelines don't apply to those counts.

8    But on these three counts, Counts 1, 2, 3, they

9    are grouped under the guideline calculation because they

10   involve the same victim and two or more acts or transactions

11   connected by a common criminal objective; and, therefore,

12   you look for the guideline that produces the highest offense

13   level within the group, and that is 2J1.2, as applied to the

14   obstruction charge, the only felony charge which is in

15   Count 1.  That section, 2J1.2, provides that:  An offense

16   involving obstruction of an official proceeding has a

17   base-offense level of 14; and that's under 2J1.2(a).

18   I am not applying the eight-level increase, but I

19   am applying the three-level increase under the special

20   offense characteristic of an offense resulting in

21   substantial interference with the administration of justice,

22   that is, the Electoral College vote by Congress; and that is

23   under guideline Section 2J1.2(b)(2).  That results in an

24   adjusted offense level of 17.

25   There is no acceptance of responsibility that I am

1   applying here, so the total offense level remains at a

2   Level 17.

3          With respect to criminal history, there are no

4   prior convictions of any relevance and no criminal history

5   points and, therefore, Mr. Brock is in the lowest criminal

6   history category, which is a Category 1.

7          For an offense Level 17 and a criminal history

8   Category 1, the guideline range, as I have said already, is

9   24 to 30 months, less than half of the 57- to 71-month level

10  that would have applied if that eight-level enhancement had

11  been applied as well.

12         So any objection to those conclusions as to

13  appropriate offense level, criminal history category and

14  advisory guideline range -- other than what has already been

15  argued today, any other objections to those conclusions from

16  the defense?

17         MR. BURNHAM:  No further objections.

18         THE COURT:  And from the government?

19         MS. AYERS-PEREZ:  No, Your Honor.

20         THE COURT:  All right.  As I have said, the

21  guidelines are advisory, they will be considered fully by

22  the Court, along with all other relevant factors, but they

23  are advisory only.

24         And now it's time for me to be quiet and to listen

25  to, first, the government, then the defense, through

1    Mr. Burnham.  And then, if Mr. Brock wishes to address the

2    Court, to listen to him as well.

3            We'll start with you, Ms. Ayers-Perez, once again.

4            MS. AYERS-PEREZ:  Thank you, Your Honor.

5            THE COURT:  I repeat.  I have read everything

6    submitted closely and, of course, I listened closely during

7    the bench trial, so I am very familiar with the evidence and

8    the arguments.

9            MS. AYERS-PEREZ:  Yes, Your Honor.

10           I do want to touch on a few key points here that

11   were really of the most concerning nature that we heard

12   during the bench trial and that has been written into the

13   government's sentencing memorandum.

14           The words and conduct, the rhetoric of the

15   defendant in the days and weeks and months leading up to

16   January 6th was of some of the worst nature that I

17   personally have heard in any of these cases.

18           The defendant talked about killing law enforcement

19   if necessary, gas assisting in this if we can get it, to

20   attempt to capture democrats with knowledge of the coup;

21   that the Supreme Court and Congress are the last two

22   peaceful options.

23           He states:  I prefer outright insurrection at this

24   point.  He says, "Do you want to see some panic?  Start

25   playing the purge of siren outside the Capitol on January 6,

1     watch Nancy flee."

2            And then he says, a few days before January 6th,

3     "Biden won't be inaugurated, we will ensure that on the

4     6th."  And again, "Necessary to restore the public -- it is

5     necessary to restore the republic through force of arms."

6            He then, in December of 2020, had -- and I am not

7     going to read this in its entirety, Your Honor.  But he had

8     what could be referred to as a manifesto of sorts, where he

9     sent a list to a fellow military member --

10           THE COURT:  Former.

11           MS. AYERS-PEREZ:  -- former.  I apologize,

12    Your Honor.  Former.

13           And he list out tasks, some of which include

14    seizing Democratic politicians and select Republicans, Biden

15    key staff.  Some rules of engagement, which is where we get

16    the:  Do not kill law enforcement officers unless necessary;

17    attempt to capture democrats, shoot and destroy enemy

18    communication notes.

19           These were horrific -- this was horrific rhetoric.

20    And it wasn't just words in the sense that he said this and

21    then stopped and did nothing.  He then bought combat gear.

22    He then went to Washington, D.C.  He wore that combat gear

23    to enter the United States Capitol Building.

24           Of note, he went to the Stop the Steal Rally prior

25    to going to the Capitol Building, and he did not wear his

1    helmet when he was at the Stop the Steal Rally.  When he was

2    marching from the rally to the Capitol Building, he still

3    did not wear his helmet.  He did not put it on -- or at

4    least the first time we see it on is when he is outside the

5    scaffolding on the west side of the Capitol Building,

6    already on property, getting ready to go up the west side

7    and eventually enter through the Senate Wing doors.

8          Brock would have seen lots of signs of the

9    violence that had been taking place at the Capitol that day.

10   He entered through a broken door, there were broken windows

11   surrounding that door, glass on the ground.

12         When he picked up the Flex Cuffs outside the

13   Rotunda -- and we do agree that he picked them up there

14   inside the Capitol Building -- it was while officers were

15   barricading the doors, the east Rotunda doors, from the

16   crowded mob outside who was trying to enter.

17         He then took those Flex Cuffs and went upstairs to

18   outside the Senate Gallery.  Interestingly enough,

19   Sergeant Timberlake testified that he never saw the

20   Flex Cuffs that Brock had when he was standing right next to

21   Brock outside the Senate Gallery.  But just a minute later,

22   Brock is on the gallery -- in the gallery area, he is

23   shouting at his fellow rioters, and he's holding the

24   Flex Cuffs at that point.

25         It is interesting and disturbing that he was

1    continuing to either put them in his jacket or take them out

2    and continuing to utilize them and not handing them to law

3    enforcement or doing anything with them that a reasonable

4    person who did not intend to use them would do in that

5    moment.

6         Once inside the Senate Gallery, he then left, went

7    downstairs and grabbed a set of keys that -- we don't know

8    from where, they were never recovered, and attempted to

9    enter a door onto the Senate floor, the same door that

10   21 minutes prior Vice President Pence had fled the Senate

11   Floor from.  He then goes around to the other --

12        THE COURT:  He didn't -- he didn't know what was

13   behind the door, did he?

14        MS. AYERS-PEREZ:  He was just up in the Senate

15   Gallery and went right downstairs, so he would know the

16   Senate was there.

17        I don't -- I don't see any evidence he knew that

18   Vice President Pence came out of there.  But it was clear

19   that he knew the Senate Floor was there because he then

20   walks around and enters the Senate Floor when the door is

21   opened.  He proceeds to riffle through paperwork that is on

22   senators' desks.  He's in combat gear on our Senate Floor on

23   January 6th shouting commands such as:  This is an IO war

24   [sic], which we heard extensively about during the bench

25   trial and Agent Moore testified to as to the definition of

1   that.

2          He was inside the Capitol for approximately

3   37 minutes, and then, within days, gave an interview to the

4   New Yorker and said:  It was a peaceful protest.

5          There was nothing peaceful from what Larry Brock

6   would have seen.  He walked through evidence of violent

7   activity that was occurring at the Capitol.  He found his

8   way into the most -- or one of the most sensitive areas of

9   the Capitol Building on January 6th, and the whole time he

10  is talking about an "IO war," which is -- which leads us

11  back to this rhetoric that he had in the days and weeks and

12  months leading up to January 6th where he's talking about an

13  "IO war."  He is talking about gathering information on

14  January 6th, and then he goes through the process of

15  actually trying to achieve that.

16         One of the questions Your Honor asked during --

17  during either the Rule 29 hearing or the closing arguments

18  at the bench trial is whether the defendant would actually

19  have achieved this; and I am referring to this manifesto

20  from December 24, 2020, that he included in a Facebook

21  message.

22         And although I am not aware that he would have the

23  infrastructure, personnel, or financial infrastructure to do

24  something like this, the fact that he even made those

25  comments, put that into writing and then, less than a month

1    later, ended up on the Senate Floor in combat gear is

2    seriously disturbing, and it's unique to him --

3              THE COURT:  It's actually less than two weeks.

4              MS. AYERS-PEREZ:  Yes, Your Honor.

5              And it's unique to him compared to other

6    January 6th defendants.

7              There have been, of course, violent rhetoric

8    throughout.  But this rhetoric of Larry Brock is to such an

9    extreme nature, and to then act on that rhetoric is as

10   disturbing as it gets, Your Honor.

11             We originally, in our sentencing memo, had asked

12   for 60 months.  We renew that.  Even though there is a new

13   guideline range, we are still asking for 60 months in

14   custody for the defendant, for three years of supervised

15   release, a $2,000 restitution payment, which would be his

16   portion of the damages that happened to the Capitol Building

17   on January 6th, and the special assessments as are laid out

18   for each of the counts, Your Honor.

19             Your Honor, I would just reiterate that this is --

20   the violence and the behavior we saw from Larry Brock -- or

21   the violent language we saw from Larry Brock is unique to

22   him, and it is something that should absolutely be

23   considered in the amount of time that he would serve in

24   custody because of this.

25             He also told the probation officer, Ms. Willett,

1    that -- he again referred to it as a peaceful protest other

2    than the two incidents in which he helped out some of the

3    violence that he saw.

4          And this is once again -- even after going through

5    a three-day bench trial and seeing the evidence presented of

6    the violence at the Capitol, this is, once again, the

7    defendant not accepting responsibility for what he did and

8    mitigating his role on January 6th and what he saw on

9    January 6th.

10         We are now over two years later; and that is also

11    concerning, that he is still not accepting what actually

12    happened on January 6th, Your Honor.  And for those reasons,

13    we would ask for the 60 months and the other conditions as I

14    have stated and as are laid out in my sentencing memo.

15         THE COURT:  All right.  Thank you very much.

16         Mr. Burnham.

17         MR. BURNHAM:  Thank you, Your Honor.

18         Your Honor, I will start with Mr. Brock's

19    background and sort of work forward from there.  But in my

20    discussion of his background, I'm really offering that for

21    two purposes:  One, because that is a 3553 factor in and of

22    itself; and secondly, it's relevant to considering whether

23    Mr. Brock's personal background is either consistent or

24    inconsistent with the motives the government is still

25    arguing to ascribe to him well beyond the mens rea necessary

1    for conviction for the 1512 and the other offenses.  So

2    those are the purposes for which I am offering it.

3           So let's start.  I mean, Mr. Brock's background --

4    Your Honor has read it, I will just mention a few things --

5    it's absolutely commendable, almost from beginning to end.

6           He comes from humble origins, but was second in

7    his class in high school.  He could have gone to Harvard

8    perhaps with grades like that.  He could have been a doctor

9    and become, you know, a multimillionaire, all sorts of

10   things, but he chose to go to the Air Force Academy.

11          THE COURT:  Everybody who goes to an Ivy League

12   college does not become a multimillionaire.

13          MR. BURNHAM:  Well, he had the opportunity to

14   pursue, you know, a career that would be more lucrative than

15   the military.  He chose to serve in the military, that's the

16   takeaway.

17          His military service is obviously -- that's

18   significant.  I will make -- three points about it, I think,

19   stand out.  One is the length and time period during which

20   he served was during -- during a time in our history when --

21   unlike when my dad was in the Army, he was -- you are

22   getting deployed all the time in the war on terror; and he

23   served during that particularly challenging time.  It was

24   tough on families, and his family wasn't immune to some of

25   the challenges of that.  But he stayed in the military

1    longer than his commitment to the Air Force Academy,

2    deploying over and over again.  That's highly significant.

3         Secondly, all military service is highly

4    commendable, but there is a special place of honor, I think,

5    within military and without for those who are in harm's way,

6    getting shot at, and that was for most of the time.  Even as

7    a civilian, Mr. Brock's service was -- was of that nature.

8         And finally, all decorations are something to be

9    proud of; but decorations for valor, I think, carry their

10   own significance, and Mr. Brock received those, five -- five

11   air medals, which criteria for that are either for service

12   above and beyond the call of duty in the face of the enemy.

13   And we think that's highly significant and distinguishes

14   Mr. Brock from many, many other January 6th cases, and I

15   will allude back to that.

16        Now, coming to the facts of this case, I will say

17   two things about the social media.

18        Firstly, it's clear that -- that Mr. Brock felt

19   strongly about the 2020 election, and he wasn't alone in

20   that.  There were public figures that had those concerns.

21   Major news networks gave them concerns about the election, a

22   respectful hearing, the President of the United States.

23   It's a factual opinion that he had that -- that, in and of

24   itself, is not either aggravating or mitigating, it's

25   just -- that's his factual opinion.  We don't think that

1    should drive sentencing, his particular substance of his

2    opinions.

3            THE COURT:  Not everyone who feels strongly or

4    felt strongly about the results of the 2020 election

5    advocated violent insurrection.

6            MR. BURNHAM:  Well -- and I want to address

7    exactly that.

8            What do we make of these statements the government

9    is relying on?

10           Well, first of all, what is the context, right?

11           In American political rhetoric, revolutionary

12   imagery is -- he is not the only one that speaks in those

13   terms.  I mean, think of the tea party.  Not that long ago

14   political activity involved people wearing tri-cornered hats

15   and dressing up like revolutionary patriots.  And what's the

16   purpose of that?  They were consciously emulating

17   individuals who overthrew the government by force.

18           They weren't trying to overthrow the government by

19   force, that's just the political terms in which it's part of

20   our national DNA to invoke that legacy.

21           And that is not only on the right.

22           I mean, there is a famous example of a more to the

23   left side celebrity comedian who famously held up Trump's

24   severed head with blood dripping off of it, right?  I mean,

25   it's -- rhetoric has coarsened in recent years, and

1    Mr. Brock isn't -- isn't immune from that at all.

2            So I think the correct framework, I guess I would

3    say, for evaluating the significance of his social media

4    record is to take the statements and ask the Court --

5    inquiry as to what extent do they correspond to reality, to

6    his actions and to his -- to what the Court knows about his

7    history and personal characteristics leading up until that

8    point.

9            In many, many January 6 cases there is overheated

10   social media rhetoric.  There is almost -- my impression is

11   that's the rule rather than the exception.  I don't at all

12   concede the government's argument that Mr. Brock's rhetoric

13   is necessarily that much worse than others that I have come

14   across.  Even one of the cases they have cited as a

15   comparator case has literal white supremacist media

16   activity.  I mean, there's all sorts of stuff that these

17   search warrants --

18           THE COURT:  Well, I can't -- I can't profess to be

19   familiar with every case and the rhetoric in every case, but

20   I am familiar with a slice of those cases -- a considerable

21   slice of those cases, either from handling the cases or from

22   research involved in looking at sentencing issues.

23           I think it's fair to say that his rhetoric is on

24   the far end of how extreme it is.

25           MR. BURNHAM:  Well, I will even work within

1    Your Honor's frame, I am happy to do that.  Because I

2    continue to posit that the -- the most informative inquiry

3    is not how bad is the rhetoric -- we can debate that -- but

4    to what extent does it correspond to reality?

5         There certainly are some January 6th cases,

6    including the Pruitt case the government relies on that I

7    alluded to a moment ago where you have outrageous rhetoric;

8    that gentleman had a social media record of that nature, and

9    then you look at what are the facts of the case.  And there

10   you had an individual who was a member of an alleged

11   paramilitary organization that had manpower they could

12   command, that allegedly made preparations to deploy that

13   manpower -- according to the indictments anyway -- in an

14   organized way on January 6th.

15        So there is a case I could see where you would

16   say, okay, you've got this rhetoric.  And when you match up

17   to the reality, well, there is some reason to be concerned

18   here.

19        So let's take that same analysis and apply it to

20   Mr. Brock.  I will head on -- I'll take the most

21   inflammatory, perhaps, passage that the government relies

22   on, which is this -- I think it was Christmas Eve six-point

23   plan.

24        First of all, you know, by its own terms, the

25   preface of it is:  If Congress fails to act on January 6th.

1    And, arguably, it wouldn't even be applicable to the facts

2    of the case because at that point Congress's decision wasn't

3    finalized.  But even apart from that, the -- it was two

4    military buddies talking to each other, special forces and a

5    fighter pilot, you know, they're a couple of tough guys.

6    The conclusion is so many subtasks, I can't even imagine

7    them.  I am quoting here from the government's sentencing

8    memorandum.

9         So the -- turning from this social media post and

10   others, we go and say, okay, what did Mr. Brock actually do

11   that might roughly correspond to this?

12        And I will go ahead and take it in the light most

13   favorable to the government.  If we're tallying it up, we'll

14   say -- we'll give the government that he got on a plane, he

15   went to D.C., that he wound up inside the Capitol, and he

16   was wearing a helmet and a vest.  We'll put three chalk

17   marks in their favor on that side of it.

18        THE COURT:  You're giving that to the government?

19        MR. BURNHAM:  Taking that in the view most

20   favorable to the government.

21        THE COURT:  I think I have already given those to

22   the government.

23        MR. BURNHAM:  For the purposes of my argument, I

24   am setting it up that way --

25        THE COURT:  Go ahead.

1      MR. BURNHAM:  So what -- that's half the inquiry.

2    The other half of the inquiry is what's on the other side?

3          If the government's allegation -- or the way I

4    take it:  If this was a real plan, it is not believable that

5    he would do all of this by himself.  He is not

6    single-handedly going to overthrow the government.

7    Naturally you would think he would go out and try to find

8    people.  I could use a little help, I want to overthrow the

9    government --

10          THE COURT:  Well, he never was charged with any

11   real plan.

12          MR. BURNHAM:  That's right.

13          THE COURT:  He never was charged with any attempt

14   to engage in seditious conduct or other --

15          MR. BURNHAM:  That's right.

16          THE COURT:  -- elements of the plan and the rules

17   of engagement that he set forth.

18          MR. BURNHAM:  Right.

19          THE COURT:  So nobody ever concluded that he was

20   attempting to effectuate that.

21          MR. BURNHAM:  Well, the government -- the way I

22   understand the argument is they're arguing that as a

23   sentencing factor, not a charge --

24          THE COURT:  Right.

25          MR. BURNHAM:  This was not something he was saying

1    in jest or as a thought experiment or --

2         THE COURT:  Right.  And in the cases -- in the

3    January 6th cases wouldn't you agree that judges have taken

4    social media into account, even if that social media was by

5    an individual who had no means to effectuate it?

6         MR. BURNHAM:  Well, it's a question of weight.

7    And it's not just that he had no means, that he didn't even

8    take basic steps to -- that he could have taken to acquire

9    the means.  The government -- the point I am making is the

10   government went through all his Facebook messages, they went

11   through his phone.  They interviewed at least some of his

12   acquaintances.  And they didn't find a single post on a

13   forum saying:  I am going to be in January 6th, some rough

14   stuff might go down, do you want to meet up and talk?

15        They didn't find him reaching out to any of his

16   military buddies saying:  Do you want to go together, we

17   might have to -- you know.

18        THE COURT:  I guess he only took one affirmative

19   step to engage in the civil war that he mentioned.  He

20   bought a tactical vest, body armor, and a helmet.

21        MR. BURNHAM:  Your Honor, these are arguments that

22   I have made.  I suppose the Court didn't find them as

23   persuasive as I thought they were, there were other reasons

24   to dress that way.

25        Many of the government's witnesses conceded --

```
 1              THE COURT:  I am, basically, quoting what he said
 2      on December 24th:  I bought myself body armor and a helmet
 3      for the civil war that is coming.
 4              MR. BURNHAM:  Well, that doesn't refer to
 5      January 6th.
 6              THE COURT:  Oh, come on.
 7              MR. BURNHAM:  Well, many of -- many of Mr. Brock's
 8      social media commentary isn't specifically tied to
 9      January 6th; it deals with the whole election process,
10      larger societal issues.  It's not tied to it.
11              And there was evidence that came out at trial,
12      that there were reasons why a reasonable person would want
13      to have some level of personal protective equipment on that
14      day.
15              THE COURT:  But that's not why he bought it.  He
16      didn't buy it because he needed, in his mind -- you know, if
17      you look at that post, and in terms of any evidence at the
18      trial, there is no evidence that he bought it -- you can
19      argue that, and you have argued that.  But there is no
20      evidence that he bought it in order to protect himself
21      against Antifa or some other insurrectionist from the left
22      side.
23              MR. BURNHAM:  Well, taking the -- taking the
24      message by itself, I can understand that argument.  But
25      let's continue the thought experiment --
```

1          THE COURT:  Please.

2          MR. BURNHAM:  If he did buy the helmet and the

3     vest to start a civil war or participate in one that

4     somebody else started, the next question is:  How would he

5     have -- how would someone with that mentality have behaved

6     on the day itself?

7          If that was his objective in traveling to D.C.,

8     likely, he would have been among the individuals who were

9     initially -- the ones who were most ready to go to the

10    Capitol and -- and start what happened.  He would have been

11    the one that was there at the bike racks initially with the

12    pushing and shoving.  He would have been the one who was the

13    first, second, tenth, or fifteenth person who went into the

14    Capitol if that was his mentality.

15         But what does the government's evidence show?  He

16    was there listening to the President's speech.  And by the

17    time he made the -- there is the one -- one shot of him

18    walking from the Ellipse to the Capitol, and that isn't --

19    doesn't have the look of a man with any particular sense of

20    urgency.  He is sitting there looking at his phone,

21    seemingly walking at a leisurely pace.

22         And by the time he arrives at the Capitol, the

23    entrances and the battles with police have already come and

24    gone, that's inconsistent with an individual whose purpose

25    is to start a civil war or take politicians by force.  And

1    that -- that behavior pattern continues to exhibit itself

2    when he enters the building itself.

3           The first thing he does -- if he was there to take

4    hostages or start a civil war, you would expect him to

5    behave like a man on a mission.

6           But what is the first thing he does --

7           THE COURT:  Look.  You don't have to convince me

8    that he didn't take actions on January 6th to start a civil

9    war or to take hostages, or any of those indicia of a civil

10   war.

11          I mean, I know what the record is here.  There is

12   a record of his rhetoric, and then there is a record of his

13   conduct on January 6th.

14          I mean, you really don't have to convince me that

15   he didn't take affirmative steps on January 6th to do the

16   things that he had listed as part of his -- the government

17   called it a "manifesto," I am not going to call it a

18   manifesto -- I am going to call it a plan of action and

19   rules engagement.

20          MR. BURNHAM:  Say no more, Your Honor.  I will

21   conclude.  That was exactly the message I was trying to get

22   across.

23          I will mention one more thing about social media

24   that I can't resist.  I do take umbrage that the government

25   included this without qualification:  Men with guns need to

1   shoot their way in; that's a part of their sentencing memo.

2          As Your Honor recalls, the case agent testified

3   that that was not in relation to January 6th, that came out

4   in cross-examination; and the government included that

5   without that bit of context, so I want to provide it.

6          THE COURT:  Go ahead.  Don't stop.  I am just

7   looking up something.

8          I believe that on January 6th itself, he said:

9   Patriots on the Capitol.  Patriots storming.  Men with guns

10  need to shoot their way in.

11         MR. BURNHAM:  That's right.

12         The "mens with guns need to shoot their way in" --

13  on cross-examination the agent testified that was in

14  response to -- someone had sent him a link or a news story,

15  or something about observers being physically barred from

16  counting locations in Georgia, and that was what it was in

17  reference to, not the United States Capitol.

18         THE COURT:  Right.  But it's in reference to

19  resisting the election results.

20         MR. BURNHAM:  In Georgia, yes.

21         So a few comments on -- on the rest of the facts

22  of this case.

23         Notably, you know, some of the most disturbing

24  rhetoric that you heard from different people that day,

25  "Where is Nancy?"  "Hang Mike Pence."  He didn't participate

1    in any of that, right?  Occasionally, it was going on where

2    he was at least a couple of times.  He didn't participate in

3    any of that.

4            And I know Your Honor has read this several times,

5    but I can't move on without at least reviewing, you know,

6    some of his actions that day that I think are worthy of

7    repetition.  I won't belabor it, but we -- we saw the way he

8    behaved in there.

9            The minute he entered the upper part of the

10   Senate, his first reaction was:  "Nobody destroys anything,

11   we got to show respect."  Then he goes back out and sees the

12   fight with a pretty scary looking guy, a comic book

13   villain-looking guy, attacking two police officers; and he

14   physically intervened at some risk to himself.  That's

15   highly significant, distinguishes him from -- I'm getting

16   ahead of myself to disparity; that's something you don't see

17   too much in these cases.

18           And then, on the Senate Floor, "Get out of that

19   chair.  That's not your chair, that's the Vice President's

20   chair.  We have got to show respect."

21           We would argue that the video of him allegedly

22   rifling through the papers on the desk showed him picking up

23   papers on the floor and putting them back on the desk --

24   it's a question of interpretation, but we'd allege that's

25   what that was.  It was consistent with -- with all of his

1    rhetoric that day.

2          And then, even on his way out, I think -- there is

3    no sound, but the last two or three videos the government

4    showed I think can reasonably be interpreted as consistent

5    with him trying to find a way out.

6          You know, he comes in, and then he's on the Senate

7    Floor, and then he is just sort of wandering the halls for a

8    while; and that's what he appears to be doing.  I don't

9    think the Court should have any trouble concluding the one

10   young lady who told him to stop -- he easily could not

11   have -- have heard her.  It's not believable to me that he

12   was disregarding her instructions and ignoring her.

13         It was noisy in there that day.  His body

14   language -- he didn't run away from her.  I just think he

15   didn't hear her.  That's, I think, the way I would interpret

16   that, especially since there was another video right before

17   that where -- he essentially said the picture --

18         THE COURT:  I understand the point.  But he wasn't

19   spending the whole 37 minutes trying to get out of the

20   Capitol.

21         MR. BURNHAM:  Yeah.  I think maybe it would be the

22   past 10 -- the last 10 or 15, that is what he appears to be

23   doing, especially since the final video in the Capitol is

24   him leaving willingly.

25         He is standing in line; he is waiting to get out.

1    And on his way out you see this guy -- he looks like he's

2    drunk; I think he might actually have been teargassed.  But

3    he's confronting the officers, and Mr. Brock is --

4    literally, his last act was to -- you know, he sort of takes

5    that guy around the shoulder, pats him.  You can see him

6    talking to him, and he diffuses that situation even on the

7    way out.  So all of those things are significant.

8         And where all of this is sort of leading is in a

9    case where he's one of a thousand people.  The disparities

10   analysis gets very complicated very fast, but it's -- it's

11   important, and so I will offer the Court our take on how to

12   do the disparities analysis.

13        So here -- here is the starting point.  First of

14   all, there is a long tradition of people protesting in the

15   Capitol.  Not with this number people, certainly, but there

16   is a long tradition of protesting at the Capitol; Code Pink,

17   Vietnam, Pro-life, Pro-Choice.  It happens, and --

18        THE COURT:  Correction.  That's mainly a tradition

19   of protesting at the Capitol, not in the Capitol.

20        MR. BURNHAM:  Well, with Code Pink and --

21        THE COURT:  There is no tradition of protesting at

22   the Capitol when the Capitol is closed to the public, that's

23   not part of the American tradition.

24        MR. BURNHAM:  I can't think of a counterexample to

25   that.  But there are people that have, you know, interrupted

1  the session, Code Pink, Kavanaugh --

2          THE COURT:  Yes.

3          MR. BURNHAM:  -- and usually it's handled as

4  misdemeanors in superior court, and that's not totally

5  inconsistent with the way the majority of individuals have

6  been charged here.

7          The starting point, I think from the government's

8  exercise of prosecutorial discretion, is:  If you walked in,

9  you looked around, you didn't break anything or you didn't

10 have a criminal record, you didn't -- weren't rude or

11 aggressive to police -- you got a misdemeanor and, usually,

12 a misdemeanor with no jail.

13         If you look at the government's sentencing charts,

14 page after page:  Probation, house arrest; probation, house

15 arrest.  It goes and goes and goes.  So that's sort of the

16 starting point.

17         And so the starting point to my analysis is what

18 distinguishes Mr. Brock from that.  And the first thing --

19 this comes from the government -- is he went to the Senate

20 Floor, so he gets the obstruction felony.

21         THE COURT:  I think the first thing that

22 distinguishes it is he was convicted of a felony.

23         MR. BURNHAM:  That's right.

24         THE COURT:  Because you just said:  Misdemeanor,

25 misdemeanor, misdemeanor.  He was convicted of a felony, as

1    well as misdemeanor.

2          MR. BURNHAM:  Well, that's why he was charged with

3    the felony.  I think the government would not dispute this:

4    We're going to charge him with a felony because he went on

5    the Senate Floor; that was the real drive.

6          Because I think it was not the social media.

7    Maybe the government can contradict me.  But I don't think

8    he was charged with a felony because of social media because

9    that applies in many, many cases.  Maybe it wasn't to the

10   same extent.  But I had conversations with the government,

11   that's their consistent charging policy.

12         And so I think there could be counter arguments to

13   that, is -- why does -- you know, is that really so much

14   that he has to be a felon for life and someone that wandered

15   around the Rotunda and the offices and all the hallways gets

16   to have a misdemeanor, but we'll work with that.  They're

17   the government, they made that decision.

18         My first contention to the Court is not only

19   making him a felon because he peacefully entered a Senate

20   that had adjourned, but giving him, in their view, five

21   years in jail creates an unwarranted disparity by several

22   orders of magnitude between him and the 5 or 600 people who

23   just got misdemeanors with no jail.

24         THE COURT:  I am going to save you some time.

25         You don't have to argue against the government's

1     request for a 60-month sentence.  He is not going to get a

2     60-month sentence.

3            MR. BURNHAM:  Thank you, Your Honor.  I appreciate

4     that.

5            But even a much smaller sentence, even if it was

6     12 months or 20 -- a guidelines sentence, let's say -- you

7     know, person A walks down the hall and walks by the offices

8     and walks through the Rotunda and gets a misdemeanor

9     probation, and person B peacefully goes in and out of an

10    unoccupied Senate, gets a felony plus two years.  I would

11    just submit to the Court that's too much of a disparity

12    between people that are similarly situated in most respects.

13    That's the first point on our view of the disparities

14    analysis.

15           The second point is there is --

16           THE COURT:  You want to -- the disparity under

17    3553(a)(6) doesn't work the way you have just described it.

18    It's not a disparity between someone who is charged with one

19    offense and someone who is not charged with that offense;

20    it's comparing people who are charged and convicted of the

21    same things.

22           MR. BURNHAM:  I think it says convicted of similar

23    conduct, doesn't it?

24           THE COURT:  Yes.

25           MR. BURNHAM:  So that's my contention.  Even if

1    the charges are different, the conduct is similar, that

2    would be the contention.

3          THE COURT:  Well, I am not sure -- I'm not sure I

4    have seen cases that do that comparison that you are trying

5    to do, saying that, oh, Individual A did this kind of

6    conduct but was charged with a felony, and Individual B did

7    this kind of conduct but was only charged with a

8    misdemeanor.  That's selective prosecution-type argument,

9    that is not a disparity in sentencing-type argument under

10   3553(a)(6).

11         MR. BURNHAM:  Well, let's make it easier.

12         We can totally ignore the charges, that's -- that

13   will make it an easier analysis, and the same argument still

14   applies.

15         If Person A walks down the hall wherever he walks

16   and gets probation, Person B, you know, peacefully goes into

17   the Senate, tries to keep order in the Senate, peacefully

18   walks out.  Maybe you can make an argument that that person

19   should be treated a little bit more harshly than the person

20   who didn't go in the Senate, it is the Senate after all.

21   But my suggestion to the Court is going from probation to

22   two years or three years is far and away beyond anything

23   called for by the disparity and conduct.  So we don't even

24   have to get into the disparity and charges.  I think that

25   becomes relevant when it comes to collateral consequences.

1  But for the disparities analysis, we can easily ignore that

2  part of it.

3        Secondly, there is precedent in this court for

4  felony January 6th defendants receiving non-incarceration,

5  or very close to it.  And I have cited to the two cases I am

6  aware of where Your Honor's colleagues have taken that step

7  and -- you know, no two cases are exactly alike, there are

8  always points that differ.

9        But taking all of the 3553 --

10       THE COURT:  One of them is a case where the judge

11  took into account the fact that the defendant had autism.

12       MR. BURNHAM:  That's right.  That's right.

13       And so the view -- and that was a case of mine, so

14  I am familiar with it.  But the -- my analysis of that case

15  is -- the autism was obviously highly significant.

16  Mr. Brock is not autistic; clearly, he is not.  So you put

17  that on one side.  But that individual in that case didn't

18  have mitigating factors approaching Mr. Brock's military

19  record, and he committed destruction of property and was in

20  the first wave of people that came -- he was number 12, I

21  think.

22       So there is a difference of mitigating and

23  aggravating factors on both sides in every case.  But when

24  you balance it out, I think Mr. Brock has about as good a

25  case for non-incarceration or very short incarceration or

1    home detention as any felony defendant to come through the

2    courthouse.

3        I think he, if anything, has perhaps a little bit

4    better case than the two individuals who have received that,

5    particularly because -- and this is I think -- he has

6    mitigating factors that I think are -- I mean, I didn't even

7    mention, in my 3553 analysis, protecting the police, keeping

8    order.  I mean, there are all sorts of ways to distinguish

9    him.

10        And I think that analysis becomes even stronger

11    when you look at collateral consequences that apply in this

12    case that don't apply in many, many other cases.  The most

13    simple one is Mr. Brock was on home detention already for

14    seven months, I think, which is a stronger -- more stringent

15    conditions of release than what other Capitol defendants got

16    in this case.  The starting point, from what I have seen

17    anyway --

18        THE COURT:  I took him off of home detention.

19        MR. BURNHAM:  That's right.  Your Honor did, and

20    we appreciated that.

21        But it was -- you know, he served some time on,

22    basically, house arrest-type conditions, and that's --

23    that's some people's whole sentence, and he has already done

24    seven months of that.  That's the first one.

25        The second one -- and we mentioned this in our

1    sentencing memo.  He was an airline pilot; they are very

2    handsomely compensated.  They make a good living.  And then

3    he had to start over as a 50-something man and become a home

4    inspector.

5          And so effectively what that works out to is --

6    you know, a lot of people -- if you get a felony conviction,

7    it's not good for your career.  But I -- the numbers are in

8    the presentence report.  That works out to roughly a 100,000

9    fine a year for the rest of his life, probably.  He might

10   get his license back, but it's not looking good.  Probably

11   for the foreseeable future his standard of living drops

12   several pegs, and it's most likely going to stay that way.

13   And that's a significant collateral consequence that -- to

14   that extent, I don't think you see that in the general run

15   of cases here, and that is particular to him.

16         THE COURT:  So do you think that two defendants

17   who are otherwise equal but one of them has a high paying

18   job and the other one doesn't, the fact that the one with a

19   high paying job because of a felony conviction no longer can

20   have that high paying job entitles him to a lower sentence?

21         Is that your argument?

22         MR. BURNHAM:  I think it's a relevant factor.  All

23   else equal -- you don't want to treat rich people, they get

24   less but --

25         THE COURT:  That's what you are arguing for.

1    MR. BURNHAM:  I think all else equal, if that was

2    the only difference -- yes, I absolutely do think it would

3    weigh in because it's directly relevant to 3553.  Just

4    punishment, right? -- it's relevant to that.  If it's just

5    that he suffer because of his wrongdoing, that's some

6    suffering so it reduces the Court's need to inflict more

7    just punishment.  Deterrence, it's relevant to deterrence;

8    it's specific and general, clearly.  Respect for the law.  I

9    mean, it's logically relevant to multiple 3553 factors.

10       I said in my sentencing memo that he was expelled

11   from the Association of Air Force Academy graduates.  The

12   presentence report did say there was -- that the process to

13   kick him out had started.  Somebody contacted me from that

14   organization and said, no, he is still a member; so I guess

15   he is still a member of that.  But his ability to become a

16   member -- you know, a part of the veteran community has been

17   significant curtailed because of this case.

18       The last point I will mention is probably the most

19   subtle, but it might be the most important collateral

20   consequence.  I think Mr. Brock has become sort of one of

21   the faces of January 6th in the public mind because he

22   happened to be -- he is tall, you know, he stands out.  He

23   was photographed carrying the Flex Cuffs that we now know

24   where he got them, but very few people that are not in this

25   courtroom are going to appreciate that backstory, and it was

1    all over the media.  So he is one of the five or ten people

2    that were there that day --

3              THE COURT:  You are saying that that's because he

4    was tall and carrying the Flex Cuffs.  I would add because

5    he had tactical vest and helmet on and because he is a

6    retired lieutenant colonel in the Air Force.

7              MR. BURNHAM:  Sure.  I grant all of that.  But the

8    comparison I was setting up is there were literally hundreds

9    of people there that day who not only were wearing much

10   more --

11             THE COURT:  I think the numbers are probably more

12   than hundreds, but go ahead, sir.

13             MR. BURNHAM:  More than hundreds who were wearing

14   similar and even more, you know --

15             THE COURT:  I'm sorry.  I interrupted you

16   midstream.  I apologize.

17             MR. BURNHAM:  Not at all.  Any time.  I am happy

18   to take direction from the Court.

19             But there were many people dressed like he was

20   that day.  And there were many people who were -- by orders

21   of magnitude more culpable, by anybody's -- there were, you

22   know, Nazis there that day; there were people fighting with

23   police.  There were people who dismantled the bike racks by

24   force.  There were people who were neo-Confederates, I mean,

25   we could go on and on -- criminal records; and nobody knows

1    their names, nobody remembers who they were.  Most of those

2    people pass through this courthouse and they're not in the

3    public imagination; but because of the way his case has been

4    covered, he is.  He is going to have to live that forever.

5    And I could go on and on about how that's redounded to his

6    detriment in his custody proceedings.  It's been used

7    against him in his personal life, professionally -- and

8    that's not going away; the internet is there forever.

9          And I would argue that he has been

10   disproportionately presented as one of the worst actors from

11   January 6th -- or one of the top ten worst actors, which

12   does not reflect reality, but he is going to have to live

13   with that.

14         So it's a complicated analysis when you have a

15   complicated case with a thousand other comparable cases.

16   But I think, by any 3553 analysis, he is at the very bottom

17   in terms of culpability of any felony defendant, and that's

18   why we would ask Your Honor to sentence him as such.

19         Thank you.

20         THE COURT:  Thank you, Mr. Burnham.

21         And, now, if Mr. Brock wants to say something,

22   this would be his chance to do so.

23         MR. BURNHAM:  He would love to address the Court,

24   but since we do have to discuss whether we will be

25   appealing -- this is all on the record -- I have advised him

1    not to.  He will not be -- not be speaking, respectfully.

2              THE COURT:  All right.  Thank you, Mr. Burnham.

3              MR. BURNHAM:  Thank you, Your Honor.

4              THE COURT:  All right.  We have been at this for a

5    while, but now I need to take into account everything that's

6    been said and reach some and express some conclusions.

7              Let me say a couple of things before I ask

8    Mr. Brock and Mr. Burnham to come up to the lectern.  I have

9    a couple of things I have to say first.

10             Do you need a second to talk to counsel?

11             THE DEFENDANT:  No, sir.

12             THE COURT:  Okay.  So I have received a lot of

13   information through not only the comments here today but,

14   also, through the presentence report, through the sentencing

15   memos provided by each side, through a proffer of some

16   support for Mr. Brock that I have taken into account because

17   I did review the substance of that proffer; and all of that

18   is important to me in assessing the appropriate sentence in

19   this case.

20             I will start with restitution.  There is a

21   documented and well-founded, approximately, $2.8 million

22   loss caused by the events at the Capitol on January 6, 2021.

23   And like other judges in other similar cases dealing with

24   this kind of conduct, I am going to order restitution, under

25   the applicable statutes, in the amount of $2,000 here.

1          With respect to a fine, I have reviewed the

2     available information.  It's not always that extensive, but

3     I have reviewed what is available.  And I have decided that

4     in addition to that restitution payment, I do not think

5     there is a real ability to pay a fine, and I will not impose

6     a fine in this case.

7          That brings me to the reasons for and the sentence

8     that will be imposed beyond the restitution amount.

9          I will go through this one time and then give the

10    counsel any opportunity to make any legal objection before I

11    formally impose the sentence, but I will not go through it a

12    second time.  In giving the sentence, I would like Mr. Brock

13    and his counsel to come up to the lectern please.  Up here.

14         It bears repeating briefly but doesn't need a lot

15    of repetition to say that the conduct we're talking about,

16    the events of January 6, 2021, were extremely serious.

17    Extremely serious.  They represent an attack on our

18    democratic values and our democratic institutions, and the

19    Capitol is one of those most cherished of institutions of

20    our democracy.

21         It was an attack on and an attempt to undermine

22    and frustrate the peaceful transition of power from

23    presidential administration to presidential administration

24    that is a hallmark of our democracy and our governmental

25    process.

1    It was a mob engaged in a riot, and all of that

2    has to be taken seriously by the criminal justice system.

3    There is no avoiding it; it has to be taken seriously by the

4    criminal justice system.  The number of cases brought, the

5    results of those cases reflect that serious criminal justice

6    enterprise, and this is just part of that effort.

7    Now, we have before this Court today Mr. Brock.

8    He has no meaningful prior criminal conduct, none of any

9    kind.  He has been employed through his adult life; he is

10   well educated.  He has got substantial community

11   contributions that are reflected in the presentence

12   investigation report and otherwise, in materials the Court

13   has reviewed.  He has a distinguished military service to

14   his country, and that is important and is something that

15   courts should take account of when deciding an appropriate

16   sentence for conduct that brings someone into the criminal

17   justice system.  All of that is of great importance in this

18   sentencing.

19   The sentencing guidelines I have already gone

20   through; they lead, in the Court's calculation, to a

21   sentencing range of 24 to 30 months.  I don't have to follow

22   the guidelines, but they are something that is viewed

23   generally as being reasonable, in terms of sentencing, for

24   the particular offense.

25   And probation, based on a higher guideline range,

1   asked for a sentence of 48 months -- recommended that

2   sentence.  I don't believe they're recommending a sentence

3   that high any longer.

4         The government is still, nonetheless, asking for a

5   sentence of 60 months, notwithstanding my calculation of a

6   much lower sentencing guideline range.

7         The defendant is requesting a sentence of home

8   confinement based on their assessment and calculation of a

9   lower guideline range but still, I take it, asking for a

10   sentence of home confinement.

11         So I am going to have to go through this in some

12   detail but not great detail because the pre-January 6th,

13   extending all the way up to January 6th, communications that

14   Mr. Brock engaged in are, indeed, very troubling.  I can't

15   escape them.  I can't just put them off as:  Oh, they

16   weren't serious; oh, he didn't follow through on them; oh,

17   he never really intended anything along those lines.  It's

18   serious stuff, so I will go through a few of them.

19         Shortly after the election, on November 11th,

20   2020, one Facebook post he said:  The battle isn't winnable

21   democratically if they complete the steal.  Fire and blood

22   will be needed soon.

23         On December 24th:  I bought myself body armor and

24   a helmet for the civil war that is coming.

25         On December 31st:  We are now under occupation by

1    a hostile governing force; and then, quoting language

2    against all enemies foreign and domestic.  The message being

3    that these are domestic enemies, these who are involved in

4    running the government post the election results of

5    November 2020.  And he calls it a second civil war, not the

6    only time he uses that term.

7           On January 1st, referring to January 6th he says:

8    The castle will be stormed.

9           On January 5th:  I really believe we're going to

10   take back what they did on November 3.  Plane is packed with

11   people going to Stop the Steal.

12          On the date of the insurrection at the Capitol:

13   Patriots on the Capitol.  Patriots storming.

14          And then, in reference to counter-election result

15   conduct in Georgia:  Men with guns need to shoot their way

16   in.

17          On other posts, looking back to November 9th:

18   When we get to the bottom of this conspiracy, we need to

19   execute the traitors that are trying to steal the election,

20   and that includes the leaders of the media and social media

21   aiding and abetting the coup plotters.

22          On December 5th:  If SCOTUS doesn't act we have

23   two choices, we can either live in a communist country or we

24   can rebel.  Keep the rightful president in power and demand

25   free and fair elections.  #civilwar2021.

1    Then, already referred to by counsel, there is the

2  December 24th, 2020, Facebook message to a fellow former

3  military friend that sets out a plan of action and rules of

4  engagement.  Those are military concepts by a military --

5  experienced military leader.

6    And among the plan -- the tasks of the plan of

7  action are:  Seize all democratic politicians and Biden key

8  staff and select Republicans as well.  Begin interrogations

9  using methods we used on Al-Qaeda to gain evidence on the

10  coup.  Another task:  Seize national media assets and key

11  personnel, identifying personnel from CNN, *Washington Post*,

12  *New York Times* editors.  Eliminate them.  Media silence,

13  except for White House communications.  Let the Democratic

14  cities burn, cut off power and food to all who oppose us,

15  establish provisional government.

16    And then the rules of engagement referred to

17  earlier today:  Do not kill LEO, standing for law

18  enforcement officers, unless necessary.  Gas would assist in

19  this if we can get it.  Attempt to capture Democrats with

20  knowledge of coup.  Shoot and destroy enemy nodes and key

21  personnel.

22    Later, on December 27th:  I prefer outright

23  insurrection on this point.

24    On January 1st:  Storm the castle.  Help is on the

25  way, January 6, 2021.

1    On January 3rd:  Biden won't be inaugurated, we

2    will ensure that on the 6th.

3    Just one or two more.

4    I may have repeated this already.  On

5    November 9th, a Facebook post:  When we get to the bottom of

6    this conspiracy, we need to execute the traitors that are

7    trying to steal the election and that includes the leaders

8    of the media and social media aiding and abetting the coup

9    plotters.  I think I did mention that already.

10   On December 6th, a Facebook post:  No way in hell

11   should we accept this rigged election.  We need to restore

12   the Constitution, and the best and shortest way is to go

13   offensive on the communist that stole it, a/k/a the

14   Democratic Party.

15   On December 7th:  I think SCOTUS needs to see, if

16   they don't act, that there will be blood.

17   This is chilling stuff, and it does reflect a

18   purpose:  To stop the certification of the election,

19   particularly if the Congress and the Supreme Court don't act

20   in the way that Mr. Brock believed would be appropriate.

21   This conduct on January 6th doesn't reflect all of

22   that by any means.  He did wear a tactical vest and a

23   helmet.  He did, for a time, carry Flex Cuffs that he

24   acquired while there, not that he brought with him.

25   He entered the Capitol, clear from the evidence

1    that he was not entitled to do so.  He did not have

2    authority to do so.

3         He roamed throughout the Capitol.  He was on the

4    Senate Floor.  He tried to open -- with keys that he had

5    acquired apparently -- a door to the Senate Lobby.  It

6    happened to be the door that the Vice President was rushed

7    out of in evacuating the Capitol proper during these events.

8         And, all told, he was in the Capitol for

9    37 minutes, a long time; not a quick entry and exit by any

10   means.

11        On the other hand, no violent conduct, no property

12   damage.  And he tried, on more than one occasion, actually,

13   to calm other rioters in order to avoid violent activity and

14   conduct with law enforcement officers; and that is to his

15   credit.

16        I do also acknowledge that some of the support for

17   him speaks of his integrity.  It speaks of it without taking

18   into account the January 6th events, but it does speak to

19   his integrity as a military officer in particular.

20        Normally, I think this -- given the guidelines

21   here, we would be at the bottom of the guidelines and then

22   would take several things into account:  The fact that

23   Mr. Brock does have some responsibilities with his family,

24   in terms of the care of his parents; the fact that there was

25   no violence that he engaged in and he actually avoided or

1    helped to try to avoid violent confrontations; and most

2    importantly, his military service -- all of that would lead

3    me to vary downward from the bottom of the guideline range.

4         But we have to take into account the rhetoric and

5    the intent through his plan of action, to his rules

6    engagement, and through other posts that is reflected in

7    terms of his thinking and his mindset.

8         And I think it's especially reprehensible and,

9    quite frankly, unbelievable coming from a former senior

10    military officer.  This kind of conduct that is contemplated

11    and communicated in those detailed, repetitive posts -- it's

12    really pretty astounding coming from a former high ranking

13    military officer.  It's detailed.  It's persistent.  It's

14    consistent.  And it's both astounding and atrocious.  And

15    that's coupled with the fact that he bought and then wore to

16    the Capitol on January 6th a helmet and a tactical vest.

17         And we have no acceptance of responsibility and no

18    showing of remorse whatsoever, zero.

19         All of that leads me to conclude that there should

20    not be -- notwithstanding his military service and some of

21    the other things that count in his favor -- there should not

22    be a variance down from the guideline range.  And,

23    therefore, I am going to sentence to 24 months on Count 1,

24    and then concurrent sentences on the other counts of

25    12 months on Counts 2 and 3, and 6 months on Counts 4, 5,

1    and 6; but that's all concurrent to the 24-month sentence on

2    Count 1.

3              In addition, supervised release on Count 1 will be

4    24 months; on Counts 2 and 3, 12 months.  There is no

5    supervised release that applies to Counts 4, 5, and 6.  All

6    of that, too, will be concurrent.

7              So is this a sentence that is consistent with 3553

8    and all of the considerations that have to be taken into

9    account under that statutory provision, and I believe it is.

10             I believe it is a sentence that is sufficient, but

11   not greater than necessary, to comply with all of the

12   purposes set forth in that statute.  It takes into account

13   the nature and circumstances of the offense and all of

14   Mr. Brock's conduct relating to the January 6th events, the

15   history and the characteristics of the defendant as

16   reflected not just in his life as a military officer but,

17   also, in the months preceding January 6th.

18             It considers the need to impose a sentence that

19   reflects the seriousness of the offense, but will also

20   promote respect for the law, for the rule of law, and to

21   provide a just punishment for the offense.  And,

22   importantly, to provide both general and special -- or

23   specific deterrence.

24             I understand that Mr. Brock has suffered some

25   other consequences, that is true of a lot of criminal

1  defendants -- not just in the January 6th context, but

2  otherwise.  But I think this sentence -- the incarceration

3  portion of this sentence -- does serve to afford adequate

4  and necessary deterrence to criminal conduct by others,

5  that's the general deterrence, and anything from Mr. Brock

6  in the future; less important but, nonetheless, also

7  specific deterrence with respect to him.

8          And then, finally, on the question of the need to

9  avoid unwarranted sentence disparities among defendants with

10  similar records who have been found guilty of similar

11  conduct -- as I said, that really requires looking at

12  individuals who have been found guilty of similar conduct.

13  And I take it to mean guilty of felonies, not comparing

14  someone who was charged with a misdemeanor to someone who

15  was charged with a felony.

16          I didn't get much help from the parties, and

17  that's understandable because they were operating on the

18  basis of different guideline calculations, and so they were

19  comparing circumstances that weren't necessarily the same.

20          I have looked at the cases.  And I think it's fair

21  to say that a sentence of 24 months for this conduct

22  involving how long Mr. Brock was in the Capitol, how he

23  entered the Capitol, where he went in the Capitol, how he

24  was dressed, and what he said repeatedly beforehand with

25  respect to his intent and his purposes -- I think the

1    sentence of 24 months is perfectly consistent.  Indeed, it

2    may be at the low end of sentences given to defendants

3    having similar records who have been found guilty of similar

4    conduct.

5              So, with that, I am going to now read the sentence

6    that will be imposed.

7              Pursuant to the Sentencing Reform Act of 1984 and

8    in consideration of the provisions of 18 U.S.C. Section 3553

9    that I have just gone through, as well as the Advisory

10   Sentencing Guidelines, it is the judgment of the Court that

11   you, Larry Rendall Brock, are hereby committed to the

12   custody of the Bureau of Prisons for concurrent terms of

13   24 months, that is two years, on Count 1; 12 months, that's

14   one year, on Counts 2 and 3; and 6 months on Counts 4, 5,

15   and 6; and those are concurrent terms.

16             You are further sentenced to serve concurrent

17   terms of supervised release of 24 months on Count 1, and

18   12 months on each of Counts 2 and 3.  Again, concurrent.

19             In addition, you are ordered to pay special

20   assessments, as is statutorily required, that totals $180,

21   in accordance with Title 18 of the U.S. Code Section 3013.

22   That is $100 for Count 1; $25 for Count 2; $25 for Count 3;

23   and $10 for each of Counts 4, 5, and 6.

24             While on supervision, you shall abide by the

25   following mandatory conditions, as well as all discretionary

1    conditions recommended by the probation office in Part D,

2    sentencing options of the presentence report, which are

3    imposed to establish the basic expectations for your conduct

4    while on supervision.

5         The mandatory conditions include that you must not

6    commit another federal, state, or local crime; you must not

7    unlawfully possess a controlled substance; you must refrain

8    from any unlawful use of a controlled substance; you must

9    submit to one drug test within 15 days of placement on

10   supervision, and at least two periodic drug tests thereafter

11   as determined by the Court; you must cooperate in the

12   collection of DNA as directed by the probation officer; and

13   you must make restitution in accordance with 18 U.S.C.

14   Section 3663 and 3663(a), or any other statute authorizing a

15   sentence of restitution.

16        You shall comply with the following special

17   conditions:  You shall complete 100 hours of community

18   service within 18 months of the start of supervision.  The

19   probation officer will supervise the participation in the

20   program by approving the program.  You must provide written

21   verification of completed hours to the probation officer.

22        You must provide the probation officer access to

23   any requested financial information and authorize the

24   release of any financial information.  The probation office

25   may share financial information with the United States

1    Attorney's Office.

2         Within 60 days of release from incarceration or

3    placement on supervision, you will appear before the Court

4    for a reentry progress hearing.  Prior to the hearing, the

5    probation officer will submit a report summarizing your

6    status and compliance with the release conditions.

7         If you are supervised by a district outside of

8    Washington, D.C., or this metropolitan area, the United

9    States Probation Office in that district will submit a

10   progress report to the Court within 60 days of the

11   commencement of supervision.  Upon receipt of the progress

12   report, the Court will determine if your appearance is

13   required.

14        You are ordered to make restitution to -- I'm

15   sorry -- that's an extra order.

16        You are ordered to make restitution in the amount

17   of $2,000 to the Architect of the Capitol.  The Court

18   determined that you do not have the ability to pay interest

19   and, therefore, waives any interest or penalties that may

20   accrue on the balance.  Restitution payments shall be made

21   to the Clerk of the Court for the United States District

22   Court, District of Columbia, for disbursement to the

23   following victim, and that is the Architect of the Capitol

24   at the appropriate address in the Ford House Office Building

25   here in Washington; and the amount is $2,000.  You must pay

1  the balance of any restitution at a rate of no less than

2  $100 per month.

3  The Court finds that you do not have the ability

4  to pay a fine and, therefore, waives imposition of a fine in

5  this case.

6  The financial obligations are immediately payable

7  to the Clerk of the Court for the U.S. District Court here

8  at the address in Washington, D.C.  Within 30 days of any

9  change of address you shall notify the Clerk of the Court of

10  the change until such time as the financial obligation is

11  paid in full.

12  The probation office shall release the presentence

13  investigation report to all appropriate agencies, and that

14  includes the United States Probation Office in the approved

15  district of residence in order to execute the sentence of

16  the Court.  Treatment agencies shall return the presentence

17  report to the probation office upon the defendant's

18  completion or termination from treatment.

19  Now, Mr. Brock, you were convicted after a bench

20  trial.  You have the right to appeal your conviction, as has

21  already been mentioned here today.  You also have the right

22  to appeal the sentence that I have imposed.

23  You have the right to apply for leave to appeal in

24  forma pauperis.  And if you so request and were to qualify,

25  the Clerk of the Court would prepare and file a notice of

1    appeal on your behalf.  But I do note that you are

2    represented by very able counsel here today who, presumably,

3    will assist you in that process if you wish to follow it.

4            With few exceptions, any notice of appeal must be

5    filed within 14 days of the entry of judgment; and I expect

6    that judgment will be entered maybe today, probably not.

7    But if not today, then early next week.

8            With that, let me ask counsel if there are any

9    reasons, other than reasons that have already been stated

10   and argued here, why the sentence should not be imposed as I

11   have just indicated?

12           Mr. Burnham?

13           MR. BURNHAM:  Nothing other than previously

14   stated.

15           THE COURT:  And for the government?

16           MS. AYERS-PEREZ:  I have no reasons, Your Honor.

17           THE COURT:  All right.  Then are there questions

18   as to anything else that we should cover before I formally

19   impose the sentence?

20           There are no counts to be dismissed.

21           Is there any request with respect to a place of

22   incarceration?

23           MR. BURNHAM:  I would just state as close as

24   possible consistent with custody points to Grapevine, Texas.

25           THE COURT:  All right.  And I will make that

1    recommendation.

2            MR. BURNHAM:  And then we have one other request,

3    it's a request for self-surrender.  The government has

4    not --

5            THE COURT:  We'll deal with that in just a second,

6    okay?

7            There was one other question that occurred to me,

8    but it's escaping me at the moment.

9            No programs that you would be asking for in --

10   during incarceration?

11           MR. BURNHAM:  No, Your Honor.

12           THE COURT:  All right.  And is there anything else

13   from the government?

14           MS. AYERS-PEREZ:  There is nothing else,

15   Your Honor.

16           THE COURT:  All right.  Then I, therefore, order

17   that the sentence is imposed as I have just stated it, with

18   that recommendation with respect to the placement of

19   incarceration.  And that is the sentence of the Court.

20           We then deal with the question of his status

21   pending -- or from this date forward.

22           Is there a request -- and you can have a seat,

23   Mr. Brock; you don't have to stand there any longer.

24   Mr. Burnham, you can as well.

25           Is there any request from the government that you

1    wish to make?

2           MS. AYERS-PEREZ:  I have no requests, Your Honor.

3           THE COURT:  All right.  I assume that the request

4    from the defense, as just intimated, is for self-surrender.

5           MR. BURNHAM:  Yes, Your Honor.

6           THE COURT:  All right.  And I think in this

7    circumstance, given Mr. Brock's history and his compliance

8    with his conditions of release, I think self-surrender is

9    warranted.  And I will order that he report for service of

10   sentence in the future.

11          You will remain under the same conditions that you

12   are under at this time, that means that you are released

13   pending reporting for that date, and you need to continue to

14   comply with those conditions.  Failure to do so could

15   subject you to serious consequences, as has been explained

16   before.

17          You will have a date to report.  If you fail to

18   report on that date for service of the sentence, that's a

19   separate criminal offense.  You need to be aware of that.

20          And lastly, as you have been reminded in other

21   contexts and as I remind everyone in these circumstances, if

22   you were to commit a crime while on release under the

23   conditions that you will be under -- that could subject you

24   to more serious penalties for that crime than you otherwise

25   would face.

1    With that, I believe we are done for today, unless

2  there is anything else.

3    First, from the government?

4    MS. AYERS-PEREZ:  I have nothing further,

5  Your Honor.

6    THE COURT:  From the defense?

7    MR. BURNHAM:  Nothing further, Your Honor.

8    THE COURT:  Anything from probation?

9    MS. WILLETT:  No, Your Honor.

10    THE COURT:  All right.  I thank you all very much.

11  And I thank those who have been in attendance today, some of

12  whom, I will assume, are in support of Mr. Brock.  He will

13  continue to need that support.  We will wish him well when

14  he completes all aspects of his obligations resulting from

15  the conduct on January 6th.

16    With that, a good day to everyone.  That completes

17  these proceedings.  Thank you.

18    THE COURTROOM DEPUTY:  This Honorable Court stands

19  in recess until the return of Court.

20    (Whereupon, the proceeding concludes, 1:03 p.m.)

21

22

23

24

25

### **CERTIFICATE**


I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

This certificate shall be considered null and void if the transcript is disassembled and/or photocopied in any manner by any party without authorization of the signatory below.


Dated this 8th day of May, 2023.


/s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter

# #

**#civilwar2021** [1] - 69:25

# $

**$10** [1] - 76:23
**$100** [2] - 76:22, 79:2
**$180** [1] - 76:20
**$2,000** [4] - 38:15, 65:25, 78:17, 78:25
**$25** [2] - 76:22

# '

**'administration** [1] - 10:21

# /

**/s** [1] - 84:14

# 1

**1** [16] - 4:4, 4:22, 4:24, 5:7, 26:11, 31:2, 31:8, 31:15, 32:6, 32:8, 73:23, 74:2, 74:3, 76:13, 76:17, 76:22
**10** [3] - 5:12, 53:22
**100** [1] - 77:17
**100,000** [1] - 61:8
**11** [1] - 19:1
**11412** [1] - 1:12
**11:03** [1] - 1:5
**11th** [1] - 68:19
**12** [6] - 57:6, 59:20, 73:25, 74:4, 76:13, 76:18
**1331** [1] - 1:16
**14** [2] - 31:17, 80:5
**1424** [1] - 1:20
**15** [2] - 53:22, 77:9
**1512** [5] - 16:12, 16:13, 18:10, 27:23, 40:1
**1512(c** [1] - 27:1
**1512(c)(2** [2] - 4:6, 10:9
**16-month** [1] - 5:12
**17** [5] - 1:5, 30:21, 31:24, 32:2, 32:7
**1752(a)(1** [1] - 4:9
**1752(a)(2** [1] - 4:12
**18** [7] - 4:5, 4:8, 4:11, 76:8, 76:21, 77:13, 77:18
**1962** [1] - 20:4

**1984** [2] - 3:8, 76:7
**1:03** [1] - 83:20
**1st** [2] - 69:7, 70:24

# 2

**2** [11] - 4:6, 4:7, 4:22, 23:16, 31:2, 31:8, 73:25, 74:4, 76:14, 76:18, 76:22
**2.8** [2] - 26:17, 65:21
**20** [2] - 4:22, 57:6
**20005** [2] - 1:16, 1:20
**202** [3] - 1:13, 1:17, 1:21
**2020** [7] - 34:6, 37:20, 41:19, 42:4, 68:20, 69:5, 70:2
**2021** [4] - 30:25, 65:22, 66:16, 70:25
**2023** [2] - 1:5, 84:13
**21** [1] - 36:10
**21-140** [2] - 1:3, 2:3
**22035** [1] - 1:13
**24** [10] - 30:23, 32:9, 37:20, 67:21, 73:23, 74:4, 75:21, 76:1, 76:13, 76:17
**24-month** [1] - 74:1
**24th** [3] - 48:2, 68:23, 70:2
**25** [1] - 5:4
**27th** [1] - 70:22
**29** [2] - 17:5, 37:17
**2A2.4** [1] - 31:3
**2B2.3** [1] - 31:2
**2J1.2** [9] - 9:7, 10:8, 10:16, 10:20, 11:3, 31:2, 31:3, 31:13, 31:15
**2J1.2(1)(B)** [1] - 28:10
**2J1.2(a)** [1] - 31:17
**2J1.2(b)(2** [1] - 26:8
**2J1.2(b)(2)** [1] - 31:23

# 3

**3** [10] - 4:10, 4:22, 31:3, 31:8, 69:10, 73:25, 74:4, 76:14, 76:18, 76:22
**30** [4] - 30:23, 32:9, 67:21, 79:8
**3013** [1] - 76:21
**305-4367** [1] - 1:17
**31st** [1] - 68:25
**32(i)(3)(A** [1] - 3:5
**3553** [9] - 30:13, 39:21, 59:9, 60:7, 62:3, 62:9, 64:16,

74:7, 76:8
**3553(a)(6** [1] - 57:17
**3553(a)(6)** [1] - 58:10
**3663** [1] - 77:14
**3663(a** [1] - 77:14
**37** [3] - 37:3, 53:19, 76:11
**386-6920** [1] - 1:21
**3E1.1(a** [2] - 23:10, 23:15
**3rd** [1] - 71:1

# 4

**4** [7] - 4:13, 4:25, 31:4, 73:25, 74:5, 76:14, 76:23
**40** [3] - 4:14, 4:16, 4:19
**450** [1] - 1:12
**48** [1] - 68:1

# 5

**5** [8] - 4:15, 4:25, 31:4, 56:22, 73:25, 74:5, 76:14, 76:23
**50-something** [1] - 61:3
**500** [1] - 1:20
**5104(e)(2)(A** [1] - 4:14
**5104(e)(2)(D** [1] - 4:17
**5104(e)(2)(G** [1] - 4:20
**57** [3] - 5:7, 30:22, 32:9
**5th** [4] - 1:12, 12:22, 69:9, 69:22

# 6

**6** [19] - 4:18, 4:25, 5:1, 13:7, 25:2, 25:5, 29:25, 31:4, 33:25, 43:9, 65:22, 66:16, 70:25, 73:25, 74:1, 74:5, 76:14, 76:15, 76:23
**60** [7] - 14:12, 38:12, 38:13, 39:13, 68:5, 78:2, 78:10
**60-month** [2] - 57:1, 57:2
**600** [1] - 56:22
**6th** [55] - 8:1, 8:2, 11:6, 11:7, 11:24, 12:7, 12:17, 13:9, 13:12, 24:19, 25:14, 28:19, 29:21, 29:23, 30:9, 33:16, 34:2,

# 7

**71** [1] - 30:23
**71-month** [2] - 5:8, 32:9
**7th** [1] - 71:15

# 8

**894-4237** [1] - 1:13
**8th** [1] - 84:13

# 9

**9th** [2] - 69:17, 71:5

# A

**a.m** [1] - 1:5
**a/k/a** [1] - 71:13
**abetting** [4] - 4:5, 6:16, 69:21, 71:8
**abide** [1] - 76:24
**ability** [5] - 62:15, 66:5, 78:18, 79:3, 84:7
**able** [2] - 26:3, 80:2
**absent** [1] - 15:13
**absolute** [1] - 16:6
**absolutely** [6] - 13:22, 17:18, 19:24, 38:22, 40:5, 62:2
**Academy** [3] - 40:10, 41:1, 62:11
**accept** [3] - 3:5, 18:19, 71:11
**acceptance** [21] - 5:11, 5:18, 6:7, 6:19, 6:20, 14:25, 15:2, 15:24, 17:1, 18:5, 23:6, 23:8, 23:18, 23:23, 25:6, 25:10, 25:13, 26:6, 30:16, 31:25, 73:17
**accepted** [3] - 7:3, 7:12, 24:3

34:4, 36:23, 37:9, 37:12, 37:14, 38:6, 38:17, 39:8, 39:9, 39:12, 41:14, 44:5, 44:14, 44:25, 47:3, 47:13, 48:5, 48:9, 50:8, 50:13, 50:15, 51:3, 51:8, 59:4, 62:21, 64:11, 68:12, 68:13, 69:7, 71:2, 71:10, 71:21, 72:18, 73:16, 74:14, 74:17, 75:1, 83:15

**accepting** [3] - 7:13, 39:7, 39:11
**access** [1] - 77:22
**accomplished** [1] - 22:17
**accordance** [2] - 76:21, 77:13
**according** [2] - 24:2, 44:13
**account** [10] - 47:4, 59:11, 65:5, 65:16, 67:15, 72:18, 72:22, 73:4, 74:9, 74:12
**accrue** [1] - 78:20
**accurate** [1] - 84:4
**achieve** [1] - 37:15
**achieved** [1] - 37:19
**acknowledge** [1] - 72:16
**acquaintances** [1] - 47:12
**acquire** [1] - 47:8
**acquired** [2] - 71:24, 72:5
**act** [6] - 38:9, 44:25, 54:4, 69:22, 71:16, 71:19
**Act** [2] - 20:5, 76:7
**action** [4] - 50:18, 70:3, 70:7, 73:5
**Action** [2] - 1:3, 2:3
**actions** [5] - 27:7, 29:3, 43:6, 50:8, 52:6
**activity** [4] - 37:7, 42:14, 43:16, 72:13
**actors** [2] - 64:10, 64:11
**acts** [3] - 7:11, 29:2, 31:10
**actual** [2] - 11:14, 29:16
**add** [2] - 20:5, 63:4
**addition** [4] - 8:16, 66:4, 74:3, 76:19
**additional** [1] - 6:14
**additions** [1] - 5:5
**address** [9] - 2:23, 2:24, 5:25, 33:1, 42:6, 64:23, 78:24, 79:8, 79:9
**adequate** [1] - 75:3
**adjourned** [1] - 56:20
**adjusted** [1] - 31:24
**adjustment** [2] - 23:12, 23:23
**administration** [31] - 5:21, 6:17, 7:17, 7:19, 7:24, 8:1, 8:4, 8:8, 8:21, 9:9, 10:13,

11:4, 11:8, 11:13, 19:4, 19:13, 20:7, 20:11, 21:6, 21:14, 26:10, 26:21, 27:4, 27:18, 27:21, 28:13, 28:14, 30:18, 31:21, 66:23
**administrative** [2] - 20:11, 21:10
**adopt** [2] - 27:5, 27:6
**adult** [1] - 67:9
**adversarial** [1] - 18:8
**advised** [1] - 64:25
**Advisory** [1] - 76:9
**advisory** [6] - 3:15, 3:18, 3:22, 32:14, 32:21, 32:23
**advocated** [1] - 42:5
**afford** [1] - 75:3
**agencies** [2] - 79:13, 79:16
**agent** [2] - 51:2, 51:13
**Agent** [1] - 36:25
**aggravated** [2] - 20:19, 20:23
**aggravating** [2] - 41:24, 59:23
**aggressive** [1] - 55:11
**ago** [2] - 42:13, 44:7
**agree** [15] - 6:11, 6:13, 6:18, 7:22, 11:1, 13:21, 18:11, 22:21, 27:13, 28:1, 28:15, 29:7, 35:13, 47:3
**agreed** [5] - 5:9, 16:25, 17:3, 18:1, 27:20
**ahead** [5] - 45:12, 45:25, 51:6, 52:16, 63:12
**aided** [1] - 1:25
**aiding** [4] - 4:5, 6:16, 69:21, 71:8
**Air** [4] - 40:10, 41:1, 62:11, 63:6
**air** [1] - 41:11
**airline** [1] - 61:1
**Al** [1] - 70:9
**Al-Qaeda** [1] - 70:9
**alike** [1] - 59:7
**allegation** [1] - 46:3
**allege** [1] - 52:24
**alleged** [1] - 44:10
**allegedly** [2] - 44:12, 52:21
**allow** [1] - 18:16
**allude** [1] - 41:15
**alluded** [1] - 44:7
**almost** [2] - 40:5, 43:10

**alone** [1] - 41:19
**ALSO** [1] - 1:22
**alternative** [2] - 21:10, 21:16
**AMERICA** [1] - 1:3
**America** [1] - 2:3
**American** [2] - 42:11, 54:23
**amount** [5] - 38:23, 65:25, 66:8, 78:16, 78:25
**amounts** [1] - 25:22
**analysis** [13] - 30:13, 44:19, 54:10, 54:12, 55:17, 57:14, 58:13, 59:1, 59:14, 60:7, 60:10, 64:14, 64:16
**answer** [3] - 2:17, 21:19
**Antifa** [1] - 48:21
**anyway** [2] - 44:13, 60:17
**apart** [1] - 45:3
**apologies** [1] - 9:17
**apologize** [2] - 34:11, 63:16
**appeal** [10] - 15:9, 15:23, 16:10, 24:8, 25:25, 79:20, 79:22, 79:23, 80:1, 80:4
**appealing** [1] - 64:25
**Appeals** [1] - 16:10
**appear** [1] - 78:3
**appearance** [1] - 78:12
**APPEARANCES** [1] - 1:9
**applicability** [1] - 7:18
**applicable** [3] - 31:1, 45:1, 65:25
**application** [7] - 16:3, 20:15, 23:16, 24:2, 26:11, 28:2, 29:6
**applied** [6] - 8:20, 24:7, 27:1, 31:13, 32:10, 32:11
**applies** [9] - 8:2, 17:8, 26:8, 27:14, 28:10, 28:16, 56:9, 58:14, 74:5
**apply** [30] - 5:21, 5:24, 6:6, 6:8, 8:10, 9:3, 9:22, 10:16, 10:22, 10:23, 11:2, 11:8, 15:3, 20:2, 21:25, 23:12, 26:14, 28:7, 29:4, 29:8, 29:19, 30:9, 30:16, 31:5, 31:7, 44:19, 60:11, 60:12, 79:23

**applying** [3] - 31:18, 31:19, 32:1
**appreciate** [2] - 57:3, 62:25
**appreciated** [1] - 60:20
**approach** [1] - 16:4
**approaching** [1] - 59:18
**appropriate** [8] - 3:17, 20:25, 32:13, 65:18, 67:15, 71:20, 78:24, 79:13
**approved** [1] - 79:14
**approving** [1] - 77:20
**April** [1] - 2:5
**APRIL** [1] - 1:11
**april.ayersperez@ usdoj.gov** [1] - 1:14
**Architect** [2] - 78:17, 78:23
**area** [3] - 26:19, 35:22, 78:8
**areas** [3] - 18:7, 37:8
**arguably** [1] - 45:1
**argue** [6] - 7:5, 26:13, 48:19, 52:21, 56:25, 64:9
**argued** [2] - 32:15, 48:19, 80:10
**argues** [1] - 24:11
**arguing** [4] - 22:12, 39:25, 46:22, 61:25
**argument** [18] - 6:21, 7:20, 11:16, 13:5, 13:6, 15:10, 16:14, 25:17, 26:2, 43:12, 45:23, 46:22, 48:24, 58:8, 58:9, 58:13, 58:18, 61:21
**arguments** [4] - 33:8, 37:17, 47:21, 56:12
**arising** [1] - 7:25
**Arizona** [1] - 8:18
**armor** [7] - 12:20, 12:23, 12:25, 14:4, 47:20, 48:2, 68:23
**arms** [1] - 34:5
**Army** [1] - 40:21
**arrest** [3] - 55:14, 55:15, 60:22
**arrest-type** [1] - 60:22
**arrived** [1] - 21:13
**arrives** [1] - 49:22
**ascribe** [1] - 39:25
**aspect** [1] - 24:24
**aspects** [1] - 83:14
**assert** [1] - 23:25
**assess** [1] - 3:19
**assessing** [1] - 65:18

**assessment** [4] - 25:1, 27:5, 27:6, 68:8
**assessments** [2] - 38:17, 76:20
**assets** [1] - 70:10
**assist** [3] - 26:19, 70:18, 80:3
**assisting** [1] - 33:19
**Association** [1] - 62:11
**assume** [2] - 82:3, 83:12
**astounding** [2] - 73:12, 73:14
**ATR** [1] - 1:11
**atrocious** [1] - 73:14
**attack** [2] - 66:17, 66:21
**attacking** [1] - 52:13
**attempt** [5] - 33:20, 34:17, 46:13, 66:21, 70:19
**attempted** [1] - 36:8
**attempting** [1] - 46:20
**attendance** [1] - 83:11
**attenuated** [1] - 29:15
**attire** [1] - 14:1
**Attorney's** [1] - 78:1
**authority** [1] - 72:2
**authorization** [1] - 84:10
**authorize** [1] - 77:23
**authorizing** [1] - 77:14
**autism** [2] - 59:11, 59:15
**autistic** [1] - 59:16
**available** [2] - 66:2, 66:3
**avoid** [3] - 72:13, 73:1, 75:9
**avoided** [1] - 72:25
**avoiding** [1] - 67:3
**award** [1] - 25:13
**aware** [4] - 14:2, 37:22, 59:6, 82:19
**AYERS** [23] - 1:11, 3:1, 6:10, 8:24, 9:17, 10:4, 11:20, 12:14, 13:21, 13:25, 14:10, 14:17, 14:20, 32:19, 33:4, 33:9, 34:11, 36:14, 38:4, 80:16, 81:14, 82:2, 83:4
**Ayers** [5] - 2:5, 6:9, 19:19, 21:20, 33:3
**AYERS-PEREZ** [23] - 1:11, 3:1, 6:10, 8:24, 9:17, 10:4, 11:20, 12:14, 13:21, 13:25, 14:10, 14:17, 14:20,

32:19, 33:4, 33:9, 34:11, 36:14, 38:4, 80:16, 81:14, 82:2, 83:4
**Ayers-Perez** [2] - 2:5, 33:3

## B

**backed** [1] - 14:1
**background** [4] - 39:19, 39:20, 39:23, 40:3
**backstory** [1] - 62:25
**bad** [1] - 44:3
**balance** [3] - 59:24, 78:20, 79:1
**barred** [1] - 51:15
**barricading** [1] - 35:15
**BARRY** [1] - 1:15
**barry.disney@usdoj. gov** [1] - 1:17
**base** [3] - 5:5, 5:6, 31:17
**base-offense** [3] - 5:5, 5:6, 31:17
**based** [10] - 5:4, 9:12, 9:18, 15:9, 24:3, 25:1, 27:23, 29:20, 67:25, 68:8
**basic** [3] - 24:9, 47:8, 77:3
**basis** [2] - 19:4, 75:18
**BATES** [1] - 1:8
**battle** [1] - 68:20
**battles** [1] - 49:23
**bears** [1] - 66:14
**become** [5] - 22:24, 40:9, 40:12, 61:3, 62:15, 62:20
**becomes** [3] - 21:7, 58:25, 60:10
**BEFORE** [1] - 1:8
**beforehand** [2] - 22:2, 75:24
**begin** [1] - 70:8
**beginning** [1] - 40:5
**behalf** [2] - 2:11, 80:1
**behave** [1] - 50:5
**behaved** [2] - 49:5, 52:8
**behavior** [2] - 38:20, 50:1
**behind** [1] - 36:13
**belabor** [1] - 52:7
**believable** [2] - 46:4, 53:11
**below** [1] - 84:11
**bench** [8] - 2:10, 4:2,

33:7, 33:12, 36:24, 37:18, 39:5, 79:19
**benefit** [1] - 7:13
**best** [4] - 18:6, 18:16, 71:12, 84:6
**better** [2] - 19:10, 60:4
**between** [7] - 5:13, 11:25, 12:2, 27:7, 56:22, 57:12, 57:18
**beyond** [6] - 16:8, 20:14, 39:25, 41:12, 58:22, 66:8
**Biden** [4] - 34:3, 34:14, 70:7, 71:1
**big** [1] - 10:14
**biggest** [1] - 10:7
**bike** [3] - 17:25, 49:11, 63:23
**bit** [7] - 22:5, 29:1, 29:15, 30:1, 51:5, 58:19, 60:3
**blank** [1] - 11:19
**blood** [3] - 42:24, 68:21, 71:16
**body** [8] - 12:20, 12:23, 12:25, 14:4, 47:20, 48:2, 53:13, 68:23
**book** [1] - 52:12
**bottom** [5] - 64:16, 69:18, 71:5, 72:21, 73:3
**bought** [9] - 12:20, 34:21, 47:20, 48:2, 48:15, 48:18, 48:20, 68:23, 73:15
**breach** [1] - 7:25
**break** [1] - 55:9
**briefly** [1] - 66:14
**bring** [1] - 30:3
**brings** [2] - 66:7, 67:16
**broad** [3] - 9:8, 10:12, 11:4
**BROCK** [1] - 1:5
**Brock** [52] - 2:4, 2:7, 2:12, 5:6, 8:11, 8:16, 15:11, 22:7, 22:18, 24:5, 24:11, 26:20, 28:4, 28:17, 30:1, 32:5, 33:1, 35:8, 35:20, 35:21, 35:22, 37:5, 38:8, 38:20, 38:21, 41:10, 41:14, 41:18, 43:1, 44:20, 45:10, 54:3, 55:18, 59:16, 59:24, 60:13, 62:20, 64:21, 65:8, 65:16, 66:12, 67:7, 68:14, 71:20, 72:23,

74:24, 75:5, 75:22, 76:11, 79:19, 81:23, 83:12
**Brock's** [12] - 18:24, 25:20, 29:5, 39:18, 39:23, 40:3, 41:7, 43:12, 48:7, 59:18, 74:14, 82:7
**broken** [2] - 35:10
**brought** [3] - 6:25, 67:4, 71:24
**buddies** [2] - 45:4, 47:16
**building** [3] - 4:8, 4:11, 50:2
**Building** [12] - 4:15, 4:19, 8:15, 28:22, 34:23, 34:25, 35:2, 35:5, 35:14, 37:9, 38:16, 78:24
**burden** [2] - 17:20, 23:13
**Bureau** [1] - 76:12
**burn** [1] - 70:14
**BURNHAM** [66] - 1:19, 1:19, 2:17, 14:24, 15:11, 15:16, 15:25, 16:5, 16:13, 17:12, 17:18, 19:7, 19:16, 20:18, 21:5, 21:18, 21:24, 22:15, 22:22, 32:17, 39:17, 40:13, 42:6, 43:25, 45:19, 45:23, 46:1, 46:12, 46:15, 46:18, 46:21, 46:25, 47:6, 47:21, 48:4, 48:7, 48:23, 49:2, 50:20, 51:11, 51:20, 53:21, 54:20, 54:24, 55:3, 55:23, 56:2, 57:3, 57:22, 57:25, 58:11, 59:12, 60:19, 61:22, 62:1, 63:7, 63:13, 63:17, 64:23, 65:3, 80:13, 80:23, 81:2, 81:11, 82:5, 83:7
**Burnham** [11] - 2:7, 2:11, 14:23, 23:2, 33:1, 39:16, 64:20, 65:2, 65:8, 80:12, 81:24
**buy** [2] - 48:16, 49:2

**C**

**calculation** [14] - 2:15, 2:23, 5:3, 5:4, 5:10, 5:16, 6:6, 14:16, 23:4, 30:24, 31:9,

67:20, 68:5, 68:8
**calculations** [1] - 75:18
**calm** [1] - 72:13
**Capitol** [60] - 4:15, 4:19, 7:25, 8:15, 12:7, 14:4, 15:18, 22:3, 22:12, 24:13, 24:15, 26:19, 28:6, 28:21, 28:22, 29:3, 29:22, 30:3, 33:25, 34:23, 34:25, 35:2, 35:5, 35:9, 35:14, 37:2, 37:7, 37:9, 38:16, 39:6, 45:15, 49:10, 49:14, 49:18, 49:22, 51:9, 51:17, 53:20, 53:23, 54:15, 54:16, 54:19, 54:22, 60:15, 65:22, 66:19, 69:12, 69:13, 71:25, 72:3, 72:7, 72:8, 73:16, 75:22, 75:23, 78:17, 78:23
**capture** [4] - 13:6, 13:12, 13:16, 33:20, 34:17, 70:19
**care** [1] - 72:24
**career** [2] - 40:14, 61:7
**carried** [1] - 17:20
**carry** [4] - 4:23, 30:2, 41:9, 71:23
**carrying** [3] - 4:25, 62:23, 63:4
**case** [43] - 3:7, 3:17, 3:19, 5:19, 8:10, 10:19, 13:5, 13:22, 17:6, 17:7, 17:10, 18:4, 19:18, 24:9, 27:2, 27:5, 29:8, 41:16, 43:15, 43:19, 44:6, 44:9, 44:15, 45:2, 51:2, 51:22, 54:9, 59:10, 59:13, 59:14, 59:17, 59:23, 59:25, 60:4, 60:12, 60:16, 62:17, 64:3, 64:15, 65:19, 66:6, 79:5
**cases** [41] - 3:11, 6:3, 7:25, 10:23, 13:7, 15:2, 16:21, 16:24, 18:13, 20:3, 24:19, 25:8, 25:12, 29:1, 29:5, 29:7, 33:17, 41:14, 43:9, 43:14, 43:20, 43:21, 44:5, 47:2, 47:3, 52:17, 56:9, 58:4, 59:5,

59:7, 60:12, 61:15, 64:15, 65:23, 67:4, 67:5, 75:20
**castle** [2] - 69:8, 70:24
**Category** [3] - 5:7, 32:6, 32:8
**category** [2] - 32:6, 32:13
**causal** [2] - 27:6, 27:9
**caused** [5] - 12:10, 13:8, 28:5, 29:24, 65:22
**causing** [11] - 5:22, 6:15, 11:10, 12:6, 13:2, 27:11, 28:11, 29:12, 29:16, 30:7, 30:19
**celebrity** [1] - 42:23
**certain** [2] - 5:5, 17:24
**certainly** [2] - 44:5, 54:15
**CERTIFICATE** [1] - 84:1
**certificate** [1] - 84:8
**certification** [3] - 24:13, 24:15, 71:18
**certify** [1] - 84:4
**certifying** [1] - 22:14
**chair** [3] - 52:19, 52:20
**chalk** [1] - 45:16
**challenge** [1] - 24:1
**challenges** [1] - 40:25
**challenging** [1] - 40:23
**chance** [3] - 2:13, 2:18, 64:22
**change** [2] - 79:9, 79:10
**characteristic** [1] - 31:20
**characteristics** [3] - 10:20, 43:7, 74:15
**charge** [4] - 4:22, 25:16, 31:14, 46:23, 56:4
**charged** [12] - 46:10, 46:13, 55:6, 56:2, 56:8, 57:18, 57:19, 57:20, 58:6, 58:7, 75:14, 75:15
**charges** [3] - 58:1, 58:12, 58:24
**charging** [1] - 56:11
**CHARLES** [1] - 1:19
**Charles** [1] - 2:6
**charles@ burnhamgorokhov. com** [1] - 1:21
**charts** [1] - 55:13

**cherished** [1] - 66:19
**Chief** [6] - 7:23, 10:18, 20:8, 27:2, 27:13, 28:15
**chilling** [1] - 71:17
**Choice** [1] - 54:17
**choices** [1] - 69:23
**chose** [2] - 40:10, 40:15
**Christmas** [1] - 44:22
**Circuit** [2] - 19:19, 21:12
**circuit** [1] - 19:20
**circumstance** [2] - 13:18, 82:7
**circumstances** [5] - 28:3, 29:5, 74:13, 75:19, 82:21
**cite** [1] - 19:18
**cited** [2] - 43:14, 59:5
**cities** [1] - 70:14
**civil** [9] - 47:19, 48:3, 49:3, 49:25, 50:4, 50:8, 50:9, 68:24, 69:5
**civilian** [1] - 41:7
**class** [1] - 40:7
**Class** [3] - 4:23, 4:25, 31:6
**clear** [3] - 36:18, 41:18, 71:25
**clearly** [4] - 23:8, 23:17, 59:16, 62:8
**Clerk** [4] - 78:21, 79:7, 79:9, 79:25
**close** [4] - 17:2, 22:6, 59:5, 80:23
**closed** [1] - 54:22
**closely** [2] - 33:6
**closer** [2] - 22:16, 22:22
**closing** [2] - 17:5, 37:17
**CNN** [1] - 70:11
**coarsened** [1] - 42:25
**Code** [8] - 4:6, 4:9, 4:12, 4:16, 54:16, 54:20, 55:1, 76:21
**collateral** [4] - 58:25, 60:11, 61:13, 62:19
**colleagues** [1] - 59:6
**collection** [1] - 77:12
**collectively** [1] - 27:11
**College** [5] - 8:7, 22:7, 22:9, 22:14, 31:22
**college** [1] - 40:12
**colonel** [1] - 63:6
**Columbia** [1] - 78:22
**COLUMBIA** [1] - 1:1
**combat** [4] - 34:21,

34:22, 36:22, 38:1
**comedian** [1] - 42:23
**comic** [1] - 52:12
**coming** [6] - 19:1, 41:16, 48:3, 68:24, 73:9, 73:12
**command** [1] - 44:12
**commands** [1] - 36:23
**commencement** [1] - 78:11
**commendable** [2] - 40:5, 41:4
**commentaries** [1] - 9:6
**commentary** [3] - 9:8, 23:11, 48:8
**comments** [3] - 37:25, 51:21, 65:13
**Commission** [5] - 3:9, 9:3, 10:14, 21:3
**commit** [2] - 77:6, 82:22
**commitment** [1] - 41:1
**committed** [3] - 29:2, 59:19, 76:11
**common** [2] - 22:8, 31:11
**communicated** [1] - 73:11
**communication** [1] - 34:18
**communications** [2] - 68:13, 70:13
**communist** [2] - 69:23, 71:13
**community** [3] - 62:16, 67:10, 77:17
**comparable** [1] - 64:15
**comparator** [1] - 43:15
**compared** [1] - 38:5
**comparing** [3] - 57:20, 75:13, 75:19
**comparison** [2] - 58:4, 63:8
**compensated** [1] - 61:2
**complete** [3] - 68:21, 77:17, 84:6
**completed** [1] - 77:21
**completes** [2] - 83:14, 83:16
**completion** [1] - 79:18
**compliance** [2] - 78:6, 82:7
**complicated** [4] - 18:12, 54:10, 64:14, 64:15
**comply** [3] - 74:11,

77:16, 82:14
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concede** [1] - 43:12
**conceded** [1] - 47:25
**concepts** [1] - 70:4
**concerned** [1] - 44:17
**concerning** [3] - 29:17, 33:11, 39:11
**concerns** [2] - 41:20, 41:21
**conclude** [3] - 27:24, 50:21, 73:19
**concluded** [5] - 19:15, 26:22, 29:10, 30:2, 46:19
**concludes** [1] - 83:20
**concluding** [1] - 53:9
**conclusion** [2] - 27:14, 45:6
**conclusions** [3] - 32:12, 32:15, 65:6
**concurrent** [7] - 73:24, 74:1, 74:6, 76:12, 76:15, 76:16, 76:18
**conditions** [12] - 39:13, 60:15, 60:22, 76:25, 77:1, 77:5, 77:17, 78:6, 82:8, 82:11, 82:14, 82:23
**conduct** [42] - 4:10, 4:15, 8:2, 11:23, 12:3, 12:5, 12:8, 13:8, 13:23, 20:4, 20:24, 23:19, 24:4, 27:15, 28:20, 29:11, 33:14, 46:14, 50:13, 57:23, 58:1, 58:6, 58:7, 58:23, 65:24, 66:15, 67:8, 67:16, 69:15, 71:21, 72:11, 72:14, 73:10, 74:14, 75:4, 75:11, 75:12, 75:21, 76:4, 77:3, 83:15
**Confederates** [1] - 63:24
**confinement** [2] - 68:8, 68:10
**confrontations** [1] - 73:1
**confronting** [1] - 54:3
**Congress** [9] - 3:8, 4:14, 8:5, 9:5, 27:22, 31:22, 33:21, 44:25, 71:19
**Congress's** [1] - 45:2
**Congressional** [2] -

11:5, 26:15
**congressional** [1] - 22:13
**connected** [1] - 31:11
**consciously** [1] - 42:16
**consequence** [2] - 61:13, 62:20
**consequences** [4] - 58:25, 60:11, 74:25, 82:15
**consider** [1] - 3:10
**considerable** [2] - 29:20, 43:20
**consideration** [1] - 76:8
**considerations** [1] - 74:8
**considered** [5] - 3:16, 3:24, 32:21, 38:23, 84:8
**considering** [2] - 3:20, 39:22
**considers** [1] - 74:18
**consistent** [8] - 39:23, 52:25, 53:4, 56:11, 73:14, 74:7, 76:1, 80:24
**conspiracy** [2] - 69:18, 71:6
**constitutes** [1] - 84:4
**Constitution** [1] - 71:12
**constitutional** [3] - 23:19, 23:22, 24:1
**construction** [1] - 21:10
**consulted** [1] - 82:21
**contacted** [1] - 62:13
**contained** [1] - 3:13
**containing** [1] - 10:21
**contemplated** [1] - 73:10
**contends** [2] - 24:5, 26:20
**contention** [4] - 18:7, 56:18, 57:25, 58:2
**contested** [3] - 6:23, 16:11, 24:11
**context** [6] - 15:3, 17:10, 20:17, 25:10, 25:14, 25:15, 42:10, 51:5, 75:1
**contexts** [1] - 82:21
**continue** [4] - 44:2, 48:25, 82:13, 83:13
**continues** [1] - 50:1
**continuing** [3] - 8:15, 36:1, 36:2
**contradict** [1] - 56:7

contributed [1] - 27:15
**contributions** [1] - 67:11
**Control** [1] - 20:4
**controlled** [2] - 77:7, 77:8
**conversations** [2] - 22:1, 56:10
**convicted** [7] - 27:22, 28:4, 55:22, 55:25, 57:20, 57:22, 79:19
**conviction** [5] - 31:6, 40:1, 61:6, 61:19, 79:20
**convictions** [1] - 32:4
**convince** [2] - 50:7, 50:14
**Cooper** [1] - 7:24
**cooperate** [1] - 77:11
**cornered** [1] - 42:14
**correct** [3] - 3:23, 28:1, 43:2
**correction** [1] - 54:18
**correctly** [1] - 29:9
**correspond** [3] - 43:5, 44:4, 45:11
**counsel** [7] - 19:2, 65:10, 66:10, 66:13, 70:1, 80:2, 80:8
**count** [3] - 26:16, 31:5, 73:21
**Count** [19] - 4:4, 4:7, 4:10, 4:13, 4:15, 4:18, 4:22, 31:2, 31:3, 31:15, 73:23, 74:2, 74:3, 76:13, 76:17, 76:22
**counter** [2] - 56:12, 69:14
**counter-election** [1] - 69:14
**counterexample** [1] - 54:24
**counting** [2] - 8:7, 51:16
**country** [2] - 67:14, 69:23
**Counts** [11] - 4:22, 31:4, 31:8, 73:25, 74:4, 74:5, 76:14, 76:18, 76:23
**counts** [12] - 3:8, 4:25, 6:23, 7:2, 7:6, 31:1, 31:4, 31:7, 31:8, 38:18, 73:24, 80:20
**coup** [5] - 33:20, 69:21, 70:10, 70:20, 71:8
**couple** [4] - 45:5,

52:2, 65:7, 65:9
**coupled** [1] - 73:15
**course** [3] - 6:23, 33:6, 38:7
**court** [12] - 8:20, 9:16, 9:21, 9:23, 10:1, 10:2, 20:22, 21:15, 26:25, 28:2, 55:4, 59:3
**COURT** [91] - 1:1, 1:8, 2:9, 2:20, 3:3, 8:19, 9:15, 9:25, 11:16, 11:25, 12:24, 13:24, 14:6, 14:14, 14:18, 14:23, 15:7, 15:14, 15:19, 16:1, 16:12, 17:9, 17:13, 19:5, 19:11, 20:6, 21:2, 21:17, 21:22, 22:11, 22:20, 23:2, 32:18, 32:20, 33:5, 34:10, 36:12, 38:3, 39:15, 40:11, 42:3, 43:18, 45:18, 45:21, 45:25, 46:10, 46:13, 46:16, 46:19, 46:24, 47:2, 47:18, 48:1, 48:6, 48:15, 49:1, 50:7, 51:6, 51:18, 53:18, 54:18, 54:21, 55:2, 55:21, 55:24, 56:24, 57:16, 57:24, 58:3, 59:10, 60:18, 61:16, 61:25, 63:3, 63:11, 63:15, 64:20, 65:2, 65:4, 65:12, 80:15, 80:17, 80:25, 81:5, 81:12, 81:16, 82:3, 82:6, 83:6, 83:8, 83:10
**Court** [43] - 1:23, 1:24, 3:14, 3:16, 3:17, 16:7, 16:10, 18:8, 18:11, 32:22, 33:2, 33:21, 43:4, 43:6, 47:22, 53:9, 54:11, 56:18, 57:11, 58:21, 63:18, 64:23, 67:7, 67:12, 71:19, 76:10, 77:11, 78:3, 78:10, 78:12, 78:17, 78:21, 78:22, 79:3, 79:7, 79:9, 79:16, 79:25, 81:19, 83:18, 83:19, 84:15
**Court's** [2] - 62:6, 67:20
**courthouse** [3] - 19:22, 60:2, 64:2
**COURTROOM** [2] -

2:2, 83:18
**courtroom** [1] - 62:25
**courts** [3] - 10:24, 29:4, 67:15
**cover** [3] - 10:11, 10:12, 80:18
**covered** [2] - 10:18, 64:4
**covers** [2] - 10:17, 20:24
**created** [1] - 3:9
**creates** [1] - 56:21
**credit** [1] - 72:15
**crime** [2] - 77:6, 82:22, 82:24
**Criminal** [3] - 1:3, 2:3, 3:4
**criminal** [22] - 3:11, 5:6, 5:7, 6:3, 16:24, 23:18, 31:11, 32:3, 32:4, 32:5, 32:7, 32:13, 55:10, 63:25, 67:2, 67:4, 67:5, 67:8, 67:16, 74:25, 75:4, 82:19
**criteria** [1] - 41:11
**CRM** [1] - 1:15
**cross** [3] - 31:3, 51:4, 51:13
**cross-examination** [2] - 51:4, 51:13
**crowded** [1] - 35:16
**Cuffs** [10] - 24:16, 28:23, 30:2, 35:12, 35:17, 35:20, 35:24, 62:23, 63:4, 71:23
**culpability** [1] - 64:17
**culpable** [1] - 63:21
**curtailed** [1] - 62:17
**custody** [5] - 38:14, 38:24, 64:6, 76:12, 80:24
**cut** [1] - 70:14

**D**

**D.C** [10] - 1:6, 7:21, 12:22, 12:25, 26:19, 34:22, 45:15, 49:7, 78:8, 79:8
**dad** [1] - 40:21
**damage** [19] - 5:23, 6:16, 11:11, 11:22, 12:7, 13:3, 13:9, 13:11, 13:20, 26:17, 28:6, 28:12, 28:21, 29:13, 29:16, 29:25, 30:8, 30:20, 72:12
**damages** [1] - 38:16
**dangerous** [1] - 28:18

**date** [7] - 12:17, 29:22, 69:12, 81:21, 82:13, 82:17, 82:18
**Dated** [1] - 84:13
**days** [11] - 11:23, 28:19, 33:15, 34:2, 37:3, 37:11, 77:9, 78:2, 78:10, 79:8, 80:5
**DC** [3] - 1:13, 1:16, 1:20
**deal** [2] - 81:5, 81:20
**dealing** [1] - 65:23
**deals** [1] - 48:9
**dealt** [1] - 7:21
**debate** [2] - 18:16, 44:3
**debating** [1] - 8:18
**December** [11] - 12:21, 34:6, 37:20, 48:2, 68:23, 68:25, 69:22, 70:2, 70:22, 71:10, 71:15
**decided** [1] - 66:3
**deciding** [1] - 67:15
**decision** [4] - 18:17, 27:3, 45:2, 56:17
**decisions** [1] - 3:14
**decorations** [2] - 41:8, 41:9
**decrease** [1] - 6:19
**decreased** [1] - 23:9
**defendant** [28] - 4:1, 5:17, 6:18, 6:21, 8:14, 11:6, 13:23, 23:8, 23:12, 23:17, 23:24, 24:3, 25:2, 25:5, 25:14, 27:10, 29:2, 29:21, 33:15, 33:18, 37:18, 38:14, 39:7, 59:11, 60:1, 64:17, 68:7, 74:15
**Defendant** [1] - 1:6
**DEFENDANT** [2] - 1:18, 65:11
**defendant's** [6] - 7:2, 7:20, 11:23, 27:7, 27:15, 79:17
**defendants** [15] - 13:7, 13:12, 15:18, 16:23, 25:11, 27:22, 29:23, 38:6, 59:4, 60:15, 61:16, 75:1, 75:9, 76:2
**defense** [5] - 5:10, 32:16, 32:25, 82:4, 83:6
**defined** [2] - 26:11, 28:15
**definition** [6] - 8:2,

8:8, 9:8, 11:4, 11:9, 36:25
**delay** [2] - 8:3, 26:15
**demand** [1] - 69:24
**democracy** [2] - 66:20, 66:24
**Democratic** [3] - 34:14, 70:13, 71:14
**democratic** [2] - 66:18, 70:7
**democratically** [1] - 68:21
**democrats** [2] - 33:20, 34:17
**Democrats** [1] - 70:19
**demonstrate** [1] - 23:18
**demonstrates** [1] - 23:8
**demonstrating** [1] - 4:18
**denied** [1] - 25:9
**deny** [4] - 24:9, 26:5, 30:15, 30:18
**denying** [4] - 23:13, 24:12, 24:13, 24:15
**deploy** [1] - 44:12
**deployed** [1] - 40:22
**deploying** [1] - 41:2
**DEPUTY** [2] - 2:2, 83:18
**described** [1] - 57:17
**desk** [2] - 52:22, 52:23
**desks** [1] - 36:22
**destroy** [2] - 34:17, 70:20
**destroyed** [1] - 29:3
**destroys** [1] - 52:10
**destruction** [1] - 59:19
**detail** [2] - 68:12
**detailed** [3] - 3:10, 73:11, 73:13
**detention** [3] - 60:1, 60:13, 60:18
**determination** [7] - 8:25, 9:1, 9:12, 10:14, 24:2, 24:25, 28:25
**determine** [2] - 3:19, 78:12
**determined** [3] - 8:21, 77:11, 78:18
**determining** [2] - 3:11, 3:17
**Deterrence** [1] - 62:7
**deterrence** [5] - 62:7, 74:23, 75:4, 75:5, 75:7
**detriment** [1] - 64:6

**differ** [1] - 59:8
**difference** [5] - 5:13, 11:25, 12:2, 59:22, 62:2
**different** [7] - 7:1, 16:16, 17:16, 28:10, 51:24, 58:1, 75:18
**diffuses** [1] - 54:6
**directed** [2] - 22:3, 77:12
**direction** [1] - 63:18
**directly** [1] - 62:3
**disagree** [1] - 9:1
**disagrees** [1] - 24:10
**disassembled** [1] - 84:9
**disbursement** [1] - 78:22
**discretion** [1] - 55:8
**discretionary** [1] - 76:25
**discuss** [1] - 64:24
**discussion** [1] - 39:20
**dismantled** [1] - 63:23
**dismissed** [1] - 80:20
**DISNEY** [1] - 1:15
**disorderly** [2] - 4:10, 4:15
**disparities** [5] - 54:9, 54:12, 57:13, 59:1, 75:9
**disparity** [8] - 52:16, 56:21, 57:11, 57:16, 57:18, 58:9, 58:23, 58:24
**disproportionately** [1] - 64:10
**dispute** [11] - 2:16, 2:25, 3:6, 17:7, 17:11, 17:19, 17:20, 24:6, 24:21, 26:1, 56:3
**disputed** [1] - 25:22
**disputing** [3] - 17:16, 17:17
**disregarding** [1] - 53:12
**disrupted** [1] - 29:3
**disruptive** [1] - 4:10
**distinguish** [1] - 60:8
**distinguished** [1] - 67:13
**distinguishes** [4] - 41:13, 52:15, 55:18, 55:22
**district** [4] - 19:19, 78:7, 78:9, 79:15
**DISTRICT** [3] - 1:1, 1:1, 1:8
**District** [7] - 1:11,

7:21, 19:17, 26:23, 78:21, 78:22, 79:7
**disturbing** [4] - 35:25, 38:2, 38:10, 51:23
**divorced** [1] - 22:3
**DNA** [2] - 42:20, 77:12
**doctor** [1] - 40:8
**documented** [1] - 65:21
**DOJ** [2] - 1:11, 1:15
**DOJ-ATR** [1] - 1:11
**DOJ-CRM** [1] - 1:15
**domestic** [2] - 69:2, 69:3
**done** [4] - 5:3, 12:20, 60:23, 83:1
**door** [8] - 35:10, 35:11, 36:9, 36:13, 36:20, 72:5, 72:6
**doors** [3] - 35:7, 35:15
**doubles** [1] - 13:15
**Douglas** [1] - 2:5
**down** [5] - 9:14, 47:14, 57:7, 58:15, 73:22
**downstairs** [2] - 36:7, 36:15
**downward** [1] - 73:3
**dress** [1] - 47:24
**dressed** [4] - 24:14, 28:24, 63:19, 75:24
**dressing** [1] - 42:15
**dripping** [1] - 42:24
**drive** [3] - 5:16, 42:1, 56:5
**driving** [1] - 21:3
**drops** [1] - 61:11
**drug** [2] - 77:9, 77:10
**drunk** [1] - 54:2
**during** [14] - 6:22, 6:23, 27:16, 33:6, 33:12, 36:24, 37:16, 37:17, 40:19, 40:20, 40:23, 72:7, 81:10
**duty** [1] - 41:12

**E**

**early** [1] - 80:7
**easier** [2] - 58:11, 58:13
**easiest** [2] - 19:3, 19:5
**easily** [2] - 53:10, 59:1
**east** [1] - 35:15
**editors** [1] - 70:12
**educated** [1] - 67:10
**effectively** [1] - 61:5
**effectuate** [2] - 46:20, 47:5
**effort** [1] - 67:6
**egregious** [2] - 13:23,

13:25
**eight** [14] - 5:22, 6:14, 10:7, 11:10, 11:21, 12:4, 13:13, 21:22, 21:24, 28:9, 29:12, 30:18, 31:18, 32:10
**eight-level** [8] - 5:22, 6:14, 12:4, 28:9, 29:12, 30:18, 31:18, 32:10
**either** [9] - 16:2, 24:20, 36:1, 37:17, 39:23, 41:11, 41:24, 43:21, 69:23
**election** [12] - 41:19, 41:21, 42:4, 48:9, 51:19, 68:19, 69:4, 69:14, 69:19, 71:7, 71:11, 71:18
**elections** [1] - 69:25
**Electoral** [5] - 8:7, 22:6, 22:9, 22:14, 31:22
**elements** [3] - 23:14, 24:12, 46:16
**eliminate** [1] - 70:12
**ELIZABETH** [1] - 84:3
**Elizabeth** [2] - 1:23, 84:14
**Ellipse** [1] - 49:18
**elsewhere** [2] - 26:24, 30:12
**Email** [3] - 1:14, 1:17, 1:21
**employed** [1] - 67:9
**emulating** [1] - 42:16
**encompasses** [3] - 10:8, 13:22, 27:21
**end** [4] - 14:3, 40:5, 43:24, 76:2
**ended** [1] - 38:1
**enemies** [2] - 69:2, 69:3
**enemy** [3] - 34:17, 41:12, 70:20
**enforcement** [7] - 26:16, 26:18, 33:18, 34:16, 36:3, 70:18, 72:14
**engage** [4] - 13:8, 28:20, 46:14, 47:19
**engaged** [4] - 14:3, 67:1, 68:14, 72:25
**engagement** [6] - 34:15, 46:17, 50:19, 70:4, 70:16, 73:6
**engages** [1] - 13:18
**enhancement** [41] - 5:20, 5:22, 6:14, 6:18, 7:16, 8:10,

8:20, 9:3, 9:22, 11:9, 11:10, 11:21, 12:4, 13:13, 13:14, 13:16, 14:7, 14:9, 14:11, 20:1, 20:16, 26:7, 26:14, 26:25, 27:14, 27:23, 28:3, 28:8, 28:9, 28:16, 29:4, 29:6, 29:9, 29:12, 29:20, 30:7, 30:10, 30:17, 30:19, 32:10
**enhancements** [12] - 5:11, 6:8, 7:15, 7:18, 7:25, 10:5, 10:6, 10:8, 10:15, 11:14, 20:3, 21:20
**ensure** [2] - 34:3, 71:2
**enter** [4] - 34:23, 35:7, 35:16, 36:9
**entered** [6] - 35:10, 52:9, 56:19, 71:25, 75:23, 80:6
**entering** [2] - 4:7, 4:13
**enterprise** [1] - 67:6
**enters** [2] - 36:20, 50:2
**entire** [1] - 44:3
**entirety** [1] - 34:7
**entitled** [3] - 5:17, 6:19, 72:1
**entitles** [1] - 61:20
**entrances** [1] - 49:23
**entry** [2] - 72:9, 80:5
**equal** [2] - 61:17, 61:23, 62:1
**equipment** [1] - 48:13
**escape** [1] - 68:15
**escaping** [1] - 81:8
**especially** [3] - 53:16, 53:23, 73:8
**essential** [4] - 17:13, 23:14, 24:11, 24:24
**essentially** [1] - 53:17
**establish** [2] - 70:15, 77:3
**evacuating** [1] - 72:7
**evacuations** [1] - 26:15
**evaluating** [1] - 43:3
**Eve** [1] - 44:22
**event** [1] - 12:16
**events** [8] - 29:22, 29:25, 30:9, 65:22, 66:16, 72:7, 72:18, 74:14
**eventually** [1] - 35:7
**evidence** [14] - 6:25, 9:19, 25:1, 33:7, 36:17, 37:6, 39:5, 48:11, 48:17, 48:18,

48:20, 49:15, 70:9, 71:25
**exact** [1] - 7:8
**exactly** [5] - 19:2, 21:20, 42:7, 50:21, 59:7
**examination** [2] - 51:4, 51:13
**example** [5] - 15:4, 23:24, 24:1, 25:9, 42:22
**except** [2] - 24:22, 70:13
**exception** [2] - 17:24, 43:11
**exceptions** [1] - 80:4
**exclusive** [1] - 25:12
**exclusively** [2] - 8:22, 15:5
**execute** [2] - 69:19, 71:6, 79:15
**exercise** [2] - 23:21, 55:8
**exercises** [1] - 23:19
**exhibit** [1] - 50:1
**exhibits** [1] - 7:1
**exit** [1] - 72:9
**expect** [2] - 50:4, 80:5
**expectations** [1] - 77:3
**expelled** [1] - 62:10
**expenditure** [5] - 9:20, 26:12, 27:12, 27:16, 28:6
**expenditures** [1] - 27:8
**experienced** [1] - 70:5
**experiment** [2] - 47:1, 48:25
**explain** [1] - 30:14
**explained** [1] - 82:15
**Export** [1] - 20:4
**exposure** [1] - 13:15
**express** [1] - 65:6
**extending** [1] - 68:13
**extensive** [1] - 66:2
**extensively** [1] - 36:24
**extent** [5] - 24:18, 43:5, 44:4, 56:10, 61:14
**extra** [1] - 78:15
**extreme** [3] - 15:5, 16:23, 38:9, 43:24
**extremely** [2] - 66:16, 66:17

**F**

**face** [2] - 41:12, 82:25
**Facebook** [6] - 37:20,

47:10, 68:20, 70:2, 71:5, 71:10
**faces** [1] - 62:21
**fact** [9] - 3:6, 8:13, 28:25, 37:24, 59:11, 61:18, 72:22, 72:24, 73:15
**fact-sensitive** [1] - 28:25
**factor** [2] - 39:21, 46:23, 61:22
**factors** [6] - 3:25, 32:22, 59:18, 59:23, 60:6, 62:9
**facts** [21] - 11:14, 16:25, 17:7, 17:16, 17:17, 18:9, 20:24, 24:6, 24:7, 24:9, 24:20, 24:21, 24:22, 25:16, 25:18, 27:23, 41:16, 44:9, 45:1, 51:21
**factual** [12] - 21:19, 22:24, 23:14, 23:25, 24:11, 24:17, 24:25, 25:20, 25:22, 26:1, 41:23, 41:25
**fail** [1] - 82:17
**fails** [1] - 44:25
**failure** [1] - 82:14
**fair** [3] - 43:23, 69:25, 75:20
**fall** [1] - 3:7
**false** [4] - 9:12, 9:13, 9:18, 9:19
**familiar** [4] - 33:7, 43:19, 43:20, 59:14
**families** [1] - 40:24
**family** [2] - 40:24, 72:23
**famous** [1] - 42:22
**famously** [1] - 42:23
**far** [2] - 43:24, 58:22
**fast** [2] - 9:15, 54:10
**favor** [3] - 22:24, 45:17, 73:21
**favorable** [2] - 45:13, 45:20
**FCRR** [3] - 1:23, 84:3, 84:14
**fear** [1] - 29:23
**Federal** [1] - 3:4
**federal** [1] - 77:6
**fellow** [3] - 34:9, 35:23, 70:2
**felon** [2] - 56:14, 56:19
**felonies** [1] - 75:13
**felony** [17] - 4:21, 9:10, 31:14, 55:20,

55:22, 55:25, 56:3, 56:4, 56:8, 57:10, 58:6, 59:4, 60:1, 61:6, 61:19, 64:17, 75:15
**felt** [2] - 41:18, 42:4
**few** [11] - 11:3, 14:18, 22:9, 22:17, 24:6, 33:10, 34:2, 40:4, 51:21, 62:24, 68:18, 80:4
**fifteenth** [1] - 49:13
**Fifth** [2] - 19:19, 21:12
**fight** [1] - 52:12
**fighter** [1] - 45:5
**fighting** [1] - 63:22
**figures** [1] - 41:20
**file** [1] - 79:25
**filed** [1] - 80:5
**final** [1] - 53:23
**finalized** [1] - 45:3
**finally** [4] - 4:18, 5:21, 41:8, 75:8
**financial** [6] - 37:23, 77:23, 77:24, 77:25, 79:6, 79:10
**findings** [1] - 3:6
**fine** [6] - 61:9, 66:1, 66:5, 66:6, 79:4
**fire** [1] - 68:21
**first** [23] - 2:11, 3:21, 5:2, 6:1, 16:7, 23:6, 32:25, 35:4, 42:10, 44:24, 49:13, 50:3, 50:6, 52:10, 54:13, 55:18, 55:21, 56:18, 57:13, 59:20, 60:24, 65:9, 83:3
**firstly** [1] - 41:18
**fit** [3] - 12:3, 12:5, 12:8
**five** [6] - 6:25, 41:10, 56:20, 63:1
**fled** [1] - 36:10
**flee** [1] - 34:1
**flew** [1] - 12:22
**Flex** [10] - 24:16, 28:23, 30:2, 35:12, 35:17, 35:20, 35:24, 62:23, 63:4, 71:23
**flight** [1] - 12:24
**flip** [1] - 21:5
**floor** [5] - 4:13, 8:6, 36:9, 52:23
**Floor** [11] - 8:17, 36:11, 36:19, 36:20, 36:22, 38:1, 52:18, 53:7, 55:20, 56:5, 72:4
**follow** [3] - 67:21, 68:16, 80:3

followed [1] - 27:19
following [5] - 2:10, 4:2, 76:25, 77:16, 78:23
food [1] - 70:14
FOR [3] - 1:1, 1:10, 1:18
Force [4] - 40:10, 41:1, 62:11, 63:6
force [6] - 34:5, 42:17, 42:19, 49:25, 63:24, 69:1
forces [1] - 45:4
Ford [1] - 78:24
foregoing [1] - 84:4
foreign [1] - 69:2
foreseeable [1] - 61:11
forever [2] - 64:4, 64:8
forfeited [1] - 15:7
forma [1] - 79:24
formally [2] - 66:11, 80:18
format [1] - 3:7
former [6] - 34:10, 34:11, 34:12, 70:2, 73:9, 73:12
forth [3] - 16:20, 46:17, 74:12
forum [1] - 47:13
forward [2] - 39:19, 81:21
founded [1] - 65:21
frame [1] - 44:1
framed [1] - 19:2
framework [1] - 43:2
frankly [2] - 10:1, 73:9
free [1] - 69:25
Friedrich [1] - 7:22
friend [1] - 70:3
frustrate [1] - 66:22
full [2] - 79:11, 84:5
fully [1] - 32:21
future [3] - 61:11, 75:6, 82:10

## G

gain [1] - 70:9
Gallery [4] - 35:18, 35:21, 36:6, 36:15
gallery [2] - 35:22
gas [2] - 33:19, 70:18
gathering [1] - 37:13
gear [6] - 24:14, 30:4, 34:21, 34:22, 36:22, 38:1
general [5] - 27:6, 61:14, 62:8, 74:22, 75:5

generally [1] - 67:23
gentleman [1] - 44:8
Georgia [3] - 51:16, 51:20, 69:15
given [6] - 15:4, 23:24, 45:21, 72:20, 76:2, 82:7
glass [1] - 35:11
GOROKHOV [1] - 1:19
governing [1] - 69:1
government [60] - 2:6, 2:21, 5:9, 6:4, 6:12, 6:13, 17:20, 18:14, 19:3, 21:9, 23:13, 24:10, 25:18, 25:19, 25:21, 26:3, 26:12, 26:13, 27:8, 27:9, 27:12, 27:16, 28:6, 28:17, 32:18, 32:25, 39:24, 42:8, 42:17, 42:18, 44:6, 44:21, 45:13, 45:14, 45:18, 45:20, 45:22, 46:6, 46:9, 46:21, 47:9, 47:10, 50:16, 50:24, 51:4, 53:3, 55:19, 56:3, 56:7, 56:10, 56:17, 68:4, 69:4, 70:15, 80:15, 81:3, 81:13, 81:25, 83:3
government's [11] - 13:4, 13:6, 33:13, 43:12, 45:7, 46:3, 47:25, 49:15, 55:7, 55:13, 56:25
governmental [4] - 9:4, 9:21, 10:1, 66:24
grabbed [1] - 36:7
grades [1] - 40:8
graduates [1] - 62:11
grand [1] - 10:25
grant [1] - 63:7
Grapevine [1] - 80:24
great [3] - 18:5, 67:17, 68:12
greater [1] - 74:11
ground [1] - 35:11
grounds [2] - 4:8, 4:11
group [2] - 27:10, 31:13
grouped [1] - 31:9
grumbling [1] - 18:20
guess [1] - 43:2, 47:18, 62:14
guideline [25] - 2:15, 2:23, 3:23, 5:8, 5:12, 10:19, 10:23, 14:16, 15:1, 20:24, 23:4, 30:21, 31:1, 31:9,

31:12, 31:23, 32:8, 32:14, 38:13, 67:25, 68:6, 68:9, 73:3, 73:22, 75:18
Guidelines [1] - 76:10
guidelines [27] - 3:10, 3:13, 3:15, 3:21, 3:24, 5:3, 5:16, 8:9, 9:2, 9:7, 11:2, 13:15, 20:14, 20:25, 21:8, 23:7, 23:10, 26:8, 30:25, 31:5, 31:7, 32:21, 57:6, 67:19, 67:22, 72:20, 72:21
guilt [13] - 6:23, 7:2, 17:14, 23:14, 24:1, 24:12, 24:25, 25:16, 25:17, 25:21, 25:23, 26:1
guilty [11] - 4:2, 6:24, 7:5, 7:6, 15:12, 15:15, 75:10, 75:12, 75:13, 76:3
guns [4] - 50:25, 51:9, 51:12, 69:15
guy [4] - 52:12, 52:13, 54:1, 54:5
guys [1] - 45:5

## H

half [3] - 32:9, 46:1, 46:2
hall [2] - 57:7, 58:15
hallmark [1] - 66:24
halls [1] - 53:7
hallways [1] - 56:15
hand [25] - 26:20, 72:11
handedly [1] - 46:6
handing [1] - 36:2
handled [1] - 55:3
handling [1] - 43:21
handsomely [1] - 61:2
hang [1] - 51:25
happy [2] - 44:1, 63:17
harm's [1] - 41:5
harshly [1] - 58:19
Harvard [1] - 40:7
hats [1] - 42:14
head [2] - 42:24, 44:20
hear [6] - 6:8, 14:15, 14:18, 18:8, 53:15
heard [6] - 24:10, 33:11, 33:17, 36:24, 51:24, 53:11
HEARING [1] - 1:7
hearing [4] - 37:17, 41:22, 78:4
held [3] - 24:16, 30:4,

42:23
hell [1] - 71:10
helmet [12] - 28:24, 30:5, 35:1, 35:3, 45:16, 47:20, 48:2, 49:2, 63:5, 68:24, 71:23, 73:16
help [3] - 46:8, 70:24, 75:16
helped [2] - 39:2, 73:1
hence [1] - 29:15
hereby [2] - 76:11, 84:3
high [7] - 18:5, 40:7, 61:17, 61:19, 61:20, 68:3, 73:12
higher [1] - 67:25
highest [1] - 31:12
highly [5] - 41:2, 41:3, 41:13, 52:15, 59:15
himself [3] - 46:5, 48:20, 52:14
history [11] - 5:6, 5:7, 32:3, 32:4, 32:6, 32:7, 32:13, 40:20, 43:7, 74:15, 82:7
holding [2] - 28:23, 35:23
HOLLY [1] - 1:11
home [7] - 19:19, 60:1, 60:13, 60:18, 61:3, 68:7, 68:10
honestly [1] - 19:8
Honor [58] - 2:2, 3:2, 6:10, 6:21, 7:9, 7:16, 8:24, 9:1, 9:20, 10:4, 11:1, 11:12, 11:20, 12:14, 13:22, 14:10, 14:17, 14:20, 14:24, 14:25, 16:14, 17:4, 17:6, 18:16, 18:18, 18:22, 19:1, 23:1, 32:19, 33:4, 33:9, 34:7, 34:12, 37:16, 38:4, 38:10, 38:18, 38:19, 39:12, 39:17, 39:18, 40:4, 47:21, 50:20, 51:2, 52:4, 57:3, 60:19, 64:18, 65:3, 80:16, 81:11, 81:15, 82:2, 82:5, 83:5, 83:7, 83:9
honor [1] - 41:4
Honor's [3] - 21:19, 44:1, 59:6
Honorable [1] - 83:18
HONORABLE [1] - 1:8
hopefully [1] - 18:11
horrific [1] - 34:19
hostages [2] - 50:4,

50:9
hostile [1] - 69:1
hours [5] - 8:14, 22:9, 22:17, 77:17, 77:21
house [1] - 55:14, 60:22
House [3] - 8:6, 70:13, 78:24
Howell [4] - 7:23, 10:18, 27:13, 28:15
Howell's [2] - 20:8, 27:3
humble [1] - 40:6
hundreds [3] - 63:8, 63:12, 63:13

## I

identifying [1] - 70:11
ignore [2] - 58:12, 59:1
ignoring [1] - 53:12
imagery [1] - 42:12
imagination [1] - 64:3
imagine [1] - 45:6
immediately [1] - 79:6
immune [2] - 40:24, 43:1
importance [1] - 67:17
important [8] - 9:19, 13:1, 24:19, 54:11, 62:19, 65:18, 67:14, 75:6
importantly [2] - 73:2, 74:22
impose [4] - 66:5, 66:11, 74:18, 80:19
imposed [6] - 66:8, 76:6, 77:3, 79:22, 80:10, 81:17
imposition [1] - 79:4
impression [1] - 43:10
imprisonment [3] - 4:21, 4:24, 5:1
improper [1] - 9:10
inaugurated [2] - 34:3, 71:1
incarceration [8] - 59:4, 59:25, 75:2, 78:2, 80:22, 81:10, 81:19
incidents [1] - 39:2
include [5] - 10:14, 11:5, 26:11, 34:13, 77:5
included [4] - 9:24, 37:20, 50:25, 51:4
includes [4] - 9:10, 69:20, 71:7, 79:14
including [6] - 8:14,

16:3, 27:10, 28:23, 30:5, 44:6
**inconsistent** [3] - 39:24, 49:24, 55:5
**increase** [2] - 31:18, 31:19
**indeed** [2] - 68:14, 76:1
**indicated** [1] - 80:11
**indication** [2] - 10:3, 10:19
**indicia** [1] - 50:9
**indictment** [1] - 9:11
**indictments** [1] - 44:13
**Individual** [2] - 58:5, 58:6
**individual** [4] - 44:10, 47:5, 49:24, 59:17
**individuals** [5] - 42:17, 49:8, 55:5, 60:4, 75:12
**inflammatory** [1] - 44:21
**inflict** [1] - 62:6
**inflicting** [1] - 28:21
**inform** [1] - 18:24
**information** [6] - 37:13, 65:13, 66:2, 77:23, 77:24, 77:25
**informative** [1] - 44:2
**infrastructure** [2] - 37:23
**initial** [2] - 5:3, 8:12
**injuries** [1] - 26:16
**injury** [15] - 5:23, 6:15, 11:11, 11:22, 12:6, 12:12, 13:2, 13:9, 13:11, 13:19, 28:12, 29:13, 29:24, 30:8, 30:20
**innocence** [1] - 25:21
**inquiry** [5] - 22:24, 43:5, 44:2, 46:1, 46:2
**inside** [6] - 8:15, 28:21, 35:14, 36:6, 37:2, 45:15
**inspector** [1] - 61:4
**instance** [2] - 3:21, 18:15
**instead** [1] - 30:22
**institutions** [2] - 66:18, 66:19
**instructions** [1] - 53:12
**insurrection** [4] - 33:23, 42:5, 69:12, 70:23
**insurrectionist** [1] -

48:21
**integrity** [1] - 72:17, 72:19
**intend** [1] - 36:4
**intended** [2] - 23:12, 68:17
**intent** [7] - 9:2, 17:11, 18:10, 18:12, 24:22, 73:5, 75:25
**interest** [2] - 78:18, 78:19
**interesting** [1] - 35:25
**interestingly** [1] - 35:18
**interfere** [1] - 22:13
**interference** [13] - 5:20, 6:17, 7:17, 8:4, 9:9, 11:7, 22:5, 22:21, 26:9, 26:10, 27:17, 30:17, 31:21
**internet** [1] - 64:8
**interpret** [4] - 20:7, 20:11, 21:8, 53:15
**interpretation** [1] - 52:24
**interpreted** [1] - 53:4
**interrogations** [1] - 70:8
**interrupted** [2] - 54:25, 63:15
**intervened** [1] - 52:14
**interview** [2] - 7:7, 37:3
**interviewed** [1] - 47:11
**intimated** [1] - 82:4
**investigation** [3] - 9:11, 67:12, 79:13
**invoke** [1] - 42:20
**involve** [2] - 22:1, 31:10
**involved** [6] - 13:10, 28:11, 29:25, 42:14, 43:22, 69:3
**involving** [3] - 10:23, 31:16, 75:22
**IO** [3] - 36:23, 37:10, 37:13
**issue** [14] - 15:21, 16:15, 17:24, 18:12, 20:6, 23:6, 24:7, 24:19, 24:24, 25:20, 26:21, 28:1, 28:2, 28:14
**issued** [1] - 3:10
**issues** [26] - 2:14, 2:15, 2:22, 2:24, 3:2, 3:6, 5:15, 14:16, 14:21, 15:4, 15:8, 15:23, 16:20, 16:21,

17:8, 17:25, 19:2, 23:3, 23:25, 24:17, 25:20, 25:22, 25:24, 25:25, 43:22, 48:10
**itself** [7] - 39:22, 41:24, 48:24, 49:6, 50:1, 50:2, 51:8
**Ivy** [1] - 40:11

## J

**jacket** [1] - 36:1
**jail** [3] - 55:12, 56:21, 56:23
**January** [66] - 8:1, 8:2, 11:6, 11:7, 11:24, 12:7, 12:17, 12:22, 13:7, 13:9, 13:12, 24:19, 25:2, 25:5, 25:14, 28:19, 29:21, 29:23, 29:25, 30:9, 33:16, 33:25, 34:2, 36:23, 37:9, 37:12, 37:14, 38:6, 38:17, 39:8, 39:9, 39:12, 41:14, 43:9, 44:5, 44:14, 44:25, 47:3, 47:13, 48:5, 48:9, 50:8, 50:13, 50:15, 51:3, 51:8, 59:4, 62:21, 64:11, 65:22, 66:16, 68:12, 68:13, 69:7, 69:9, 70:24, 70:25, 71:1, 71:21, 72:18, 73:16, 74:14, 74:17, 75:1, 83:15
**jest** [1] - 47:1
**job** [3] - 61:18, 61:19, 61:20
**JOHN** [1] - 1:8
**Judge** [15] - 7:22, 7:23, 7:24, 8:25, 10:18, 20:8, 21:12, 27:2, 27:13, 28:15, 29:8, 29:10
**judge** [8] - 8:19, 19:12, 19:14, 19:16, 26:22, 27:25, 59:10
**JUDGE** [1] - 1:8
**judges** [14] - 3:10, 7:21, 7:22, 16:3, 16:14, 19:9, 19:12, 25:9, 26:24, 27:19, 27:20, 28:1, 47:3, 65:23
**judgment** [3] - 76:10, 80:5, 80:6
**judicial** [1] - 8:22, 9:4, 9:11, 9:23, 10:3, 10:11, 19:14, 20:12,

20:16, 20:22, 26:22
**juries** [1] - 10:25
**justice** [35] - 5:21, 6:17, 7:17, 7:19, 7:24, 8:1, 8:4, 8:8, 8:22, 9:9, 10:13, 11:5, 11:8, 11:13, 19:4, 19:13, 20:8, 20:11, 20:20, 21:7, 21:10, 21:14, 26:10, 26:21, 27:5, 27:18, 27:21, 28:13, 28:15, 30:18, 31:21, 67:2, 67:4, 67:5, 67:17
**justice'** [1] - 10:21

## K

**Kavanaugh** [1] - 55:1
**keep** [2] - 58:17, 69:24
**keeping** [1] - 60:7
**KELLI** [1] - 1:22
**Kelli** [1] - 2:8
**Kelly** [1] - 7:23
**KENT** [1] - 1:15
**key** [5] - 33:10, 34:15, 70:7, 70:10, 70:20
**keys** [2] - 36:7, 72:4
**kick** [1] - 62:13
**kill** [2] - 34:16, 70:17
**killing** [1] - 33:18
**kind** [6] - 18:11, 58:5, 58:7, 65:24, 67:9, 73:10
**knowingly** [1] - 24:23
**knowledge** [4] - 19:16, 22:8, 33:20, 70:20
**knows** [2] - 43:6, 63:25

## L

**lady** [1] - 53:10
**laid** [2] - 38:17, 39:14
**Lamberth** [1] - 7:23
**language** [8] - 7:9, 12:5, 16:2, 21:7, 21:8, 38:21, 53:14, 69:1
**large** [1] - 28:6
**largely** [1] - 17:23
**larger** [2] - 8:11, 48:10
**LARRY** [1] - 1:5
**Larry** [5] - 2:4, 37:5, 38:8, 38:20, 38:21, 76:11
**last** [5] - 33:21, 53:3, 53:22, 54:4, 62:18
**lastly** [1] - 82:20

**law** [14] - 17:8, 19:20, 21:15, 24:7, 26:16, 26:18, 33:18, 34:16, 36:2, 62:8, 70:17, 72:14, 74:20
**lead** [3] - 27:2, 67:20, 73:2
**leader** [1] - 70:5
**leaders** [2] - 69:20, 71:7
**leading** [6] - 11:24, 28:19, 33:15, 37:12, 43:7, 54:8
**leads** [2] - 37:10, 73:19
**League** [1] - 40:11
**least** [7] - 3:8, 16:9, 35:4, 47:11, 52:2, 52:5, 77:10
**leave** [1] - 79:23
**leaves** [1] - 18:3
**leaving** [1] - 53:24
**lectern** [2] - 65:8, 66:13
**left** [3] - 36:6, 42:23, 48:21
**legacy** [1] - 42:20
**legal** [15] - 16:21, 17:8, 18:12, 19:3, 19:4, 20:6, 21:18, 22:23, 25:24, 26:20, 27:4, 27:25, 28:2, 28:14, 66:10
**legally** [1] - 22:23
**legitimate** [1] - 25:23
**leisurely** [1] - 49:21
**length** [2] - 12:2, 40:19
**LEO** [1] - 70:17
**less** [7] - 29:6, 32:9, 37:25, 38:3, 61:24, 75:6, 79:1
**level** [39] - 5:4, 5:5, 5:6, 5:18, 5:20, 5:22, 6:7, 6:14, 6:18, 7:16, 8:9, 8:20, 12:4, 18:5, 21:22, 21:23, 21:24, 23:9, 26:4, 26:7, 26:25, 28:7, 28:9, 29:12, 30:15, 30:16, 30:18, 30:21, 30:22, 31:13, 31:17, 31:18, 31:19, 31:24, 32:1, 32:9, 32:10, 32:13, 48:13
**Level** [2] - 30:21, 32:2, 32:7
**levels** [4] - 13:14, 18:4, 19:1, 23:10
**license** [1] - 61:10

**lieutenant** [1] - 63:6
**life** [6] - 54:17, 56:14, 61:9, 64:7, 67:9, 74:16
**light** [2] - 3:14, 45:12
**likely** [3] - 29:6, 49:8, 61:12
**limit** [1] - 18:6
**limited** [3] - 19:13, 20:12, 20:16
**limiting** [1] - 21:10
**line** [2] - 27:9, 53:25
**lines** [2] - 7:10, 68:17
**link** [1] - 51:14
**list** [2] - 34:9, 34:13
**listed** [1] - 50:16
**listen** [2] - 32:24, 33:2
**listened** [2] - 16:13, 33:6
**listening** [1] - 49:16
**literal** [1] - 43:15
**literally** [2] - 54:4, 63:8
**live** [3] - 64:4, 64:12, 69:23
**living** [2] - 61:2, 61:11
**Lobby** [1] - 72:5
**local** [1] - 77:6
**locations** [3] - 28:22, 28:23, 51:16
**logically** [1] - 62:9
**look** [12] - 10:5, 11:23, 12:9, 16:22, 19:22, 31:12, 44:9, 48:17, 49:19, 50:7, 55:13, 60:11
**looked** [3] - 19:22, 55:9, 75:20
**looking** [11] - 9:6, 9:7, 10:6, 43:22, 49:20, 51:7, 52:12, 52:13, 61:10, 69:17, 75:11
**looks** [1] - 54:1
**loss** [2] - 26:17, 65:22
**LOTH** [1] - 84:3
**Loth** [2] - 1:23, 84:14
**love** [1] - 64:23
**low** [1] - 76:2
**lower** [5] - 30:21, 30:22, 61:20, 68:6, 68:9
**lowest** [2] - 5:7, 32:5
**lucrative** [1] - 40:14

## M

**machine** [1] - 1:25
**machinery** [1] - 20:22
**magnitude** [2] - 56:22, 63:21
**main** [1] - 24:7

**major** [1] - 41:21
**majority** [1] - 55:5
**man** [3] - 49:19, 50:5, 61:3
**mandatory** [5] - 3:15, 3:18, 3:22, 76:25, 77:5
**manifested** [1] - 18:5
**manifesto** [4] - 34:8, 37:19, 50:17, 50:18
**manner** [1] - 84:10
**manpower** [2] - 44:11, 44:13
**manual** [2] - 3:14, 30:25
**March** [1] - 1:5
**marched** [1] - 28:21
**marching** [1] - 35:2
**marks** [1] - 45:17
**match** [1] - 44:16
**materials** [2] - 11:18, 67:12
**matter** [2] - 2:10, 18:18, 18:22
**matters** [1] - 6:22
**maximum** [3] - 4:21, 4:24, 5:1
**McFadden** [3] - 8:25, 21:13, 29:8
**mean** [23] - 13:14, 13:24, 16:12, 16:13, 16:20, 19:6, 20:3, 21:9, 21:14, 21:15, 40:3, 42:13, 42:22, 42:24, 43:16, 50:11, 50:14, 60:6, 60:8, 62:9, 63:24, 75:13
**meaningful** [1] - 67:8
**means** [9] - 15:19, 30:14, 47:5, 47:7, 47:9, 71:22, 72:10, 82:12
**meant** [3] - 10:21, 13:16, 13:17
**medals** [1] - 41:11
**media** [22] - 22:1, 29:14, 30:12, 41:17, 43:3, 43:10, 43:15, 44:8, 45:9, 47:4, 48:8, 50:23, 56:6, 56:8, 63:1, 69:20, 70:10, 70:12, 71:8
**meet** [1] - 47:14
**Meisel** [1] - 2:6
**member** [5] - 34:9, 44:10, 62:14, 62:15, 62:16
**members** [1] - 26:15
**memo** [5] - 38:11, 39:14, 51:1, 61:1,

62:10
**memorandum** [2] - 33:13, 45:8
**memos** [1] - 65:15
**Men** [1] - 50:25
**men** [2] - 51:9, 69:15
**mens** [9] - 17:13, 17:17, 17:19, 24:18, 24:22, 25:17, 26:4, 39:25, 51:12
**mentality** [2] - 49:5, 49:14
**mention** [5] - 40:4, 50:23, 60:7, 62:18, 71:9
**mentioned** [3] - 47:19, 60:25, 79:21
**mere** [1] - 21:7
**message** [5] - 37:21, 48:24, 50:21, 69:2, 70:2
**messages** [1] - 47:10
**met** [1] - 22:9
**Meta** [1] - 29:10
**methods** [1] - 70:9
**metropolitan** [2] - 26:19, 78:8
**midstream** [1] - 63:16
**might** [11] - 15:2, 17:4, 18:23, 19:22, 20:2, 45:11, 47:14, 47:17, 54:2, 61:9, 62:19
**Mike** [1] - 51:25
**military** [22] - 28:24, 34:9, 40:15, 40:17, 40:25, 41:3, 41:5, 45:4, 47:16, 59:18, 67:13, 70:3, 70:4, 70:5, 72:19, 73:2, 73:10, 73:13, 73:20, 74:16
**military-style** [1] - 28:24
**million** [2] - 26:17, 65:21
**mind** [2] - 48:16, 62:21
**mindset** [1] - 73:7
**mine** [1] - 59:13
**minority** [2] - 10:16, 19:23
**minute** [3] - 22:11, 35:21, 52:9
**minutes** [5] - 14:19, 36:10, 37:3, 53:19, 72:9
**misdemeanor** [1] - 31:6, 55:11, 55:12, 55:24, 55:25, 56:1, 56:16, 57:8, 58:8,

75:14
**misdemeanors** [5] - 4:23, 4:25, 55:4, 56:23
**mission** [2] - 24:14, 50:5
**mitigating** [5] - 39:8, 41:24, 59:18, 59:22, 60:6
**mixed** [1] - 29:1
**mob** [5] - 8:11, 27:9, 28:5, 35:16, 67:1
**moment** [5] - 2:24, 8:18, 36:5, 44:7, 81:8
**month** [3] - 12:21, 37:25, 79:2
**months** [32] - 5:1, 11:24, 14:12, 28:19, 30:23, 32:9, 33:15, 37:12, 38:12, 38:13, 39:13, 57:6, 60:14, 60:24, 67:21, 68:1, 68:5, 73:23, 73:25, 74:4, 74:17, 75:21, 76:1, 76:13, 76:14, 76:17, 76:18, 77:18
**Moore** [1] - 36:25
**Moss** [1] - 7:23
**most** [22] - 10:11, 14:3, 16:25, 18:1, 33:11, 37:8, 41:6, 44:2, 44:20, 45:12, 45:19, 49:9, 51:23, 57:12, 60:12, 61:12, 62:18, 62:19, 64:1, 66:19, 73:1
**motion** [2] - 16:16, 16:18
**motions** [1] - 16:9
**motives** [1] - 39:24
**move** [1] - 52:5
**moving** [2] - 7:15, 14:11
**MR** [64] - 2:17, 14:24, 15:11, 15:16, 15:25, 16:5, 16:13, 17:12, 17:18, 19:7, 19:16, 20:18, 21:5, 21:18, 21:24, 22:15, 22:22, 32:17, 39:17, 40:13, 42:6, 43:25, 45:19, 45:23, 46:1, 46:12, 46:15, 46:18, 46:21, 46:25, 47:6, 47:21, 48:4, 48:7, 48:23, 49:2, 50:20, 51:11, 51:20, 53:21, 54:20, 54:24, 55:3, 55:23, 56:2, 57:3, 57:22,

57:25, 58:11, 59:12, 60:19, 61:22, 62:1, 63:7, 63:13, 63:17, 64:23, 65:3, 80:13, 80:23, 81:2, 81:11, 82:5, 83:7
**MS** [23] - 3:1, 6:10, 8:24, 9:17, 10:4, 11:20, 12:14, 13:21, 13:25, 14:10, 14:17, 14:20, 32:19, 33:4, 33:9, 34:11, 36:14, 38:4, 80:16, 81:14, 82:2, 83:4, 83:9
**multimillionaire** [2] - 40:9, 40:12
**multiple** [1] - 62:9
**must** [11] - 3:16, 77:5, 77:6, 77:7, 77:8, 77:11, 77:13, 77:20, 77:22, 78:25, 80:4

## N

**names** [1] - 64:1
**Nancy** [2] - 34:1, 51:25
**narrow** [2] - 15:2, 20:2
**narrowly** [1] - 20:12
**national** [2] - 42:20, 70:10
**naturally** [1] - 46:7
**nature** [9] - 12:15, 16:9, 16:22, 33:11, 33:16, 38:9, 41:7, 44:8, 74:13
**Nazis** [1] - 63:22
**necessarily** [2] - 43:13, 75:19
**necessary** [9] - 22:25, 27:7, 33:19, 34:5, 34:16, 39:25, 70:18, 74:11, 75:4
**Necessary** [1] - 34:4
**need** [16] - 50:25, 51:10, 51:12, 62:6, 65:5, 65:10, 66:14, 69:15, 69:18, 71:6, 71:11, 74:18, 75:8, 82:13, 82:19, 83:13
**needed** [3] - 18:8, 48:16, 68:22
**needs** [1] - 71:15
**neo** [1] - 63:24
**neo-Confederates** [1] - 63:24
**networks** [1] - 41:21
**never** [5] - 35:19, 36:8, 46:10, 46:13, 68:17
**New** [2] - 37:4, 70:12

**new** [1] - 38:12
**news** [2] - 41:21, 51:14
**next** [3] - 35:20, 49:4, 80:7
**nobody** [4] - 46:19, 52:10, 63:25, 64:1
**nodes** [1] - 70:20
**noisy** [1] - 53:13
**non** [2] - 59:4, 59:25
**non-incarceration** [2] - 59:4, 59:25
**none** [1] - 67:8
**nonetheless** [3] - 25:25, 68:4, 75:6
**normally** [1] - 72:20
**notably** [2] - 19:18, 51:23
**note** [6] - 20:15, 23:16, 24:2, 26:11, 34:24, 80:1
**noted** [1] - 2:19
**notes** [5] - 15:4, 16:3, 28:17, 34:18, 84:5
**nothing** [8] - 21:9, 29:11, 34:21, 37:5, 80:13, 81:14, 83:4, 83:7
**notice** [2] - 79:25, 80:4
**notify** [1] - 79:9
**notwithstanding** [3] - 29:14, 68:5, 73:20
**novel** [1] - 18:14
**November** [6] - 12:10, 68:19, 69:5, 69:10, 69:17, 71:5
**null** [1] - 84:8
**number** [8] - 7:1, 7:22, 8:14, 10:8, 15:18, 54:15, 59:20, 67:4
**numbers** [2] - 61:7, 63:11
**NW** [3] - 1:12, 1:16, 1:20

## O

**objection** [2] - 32:12, 66:10
**objections** [3] - 2:19, 32:15, 32:17
**objective** [2] - 31:11, 49:7
**obligation** [3] - 5:2, 30:24, 79:10
**obligations** [2] - 79:6, 83:14
**observers** [1] - 51:15
**obstruct** [2] - 20:20,

20:21, 28:13
**obstructing** [2] - 20:21, 28:4
**obstruction** [8] - 4:4, 10:9, 10:24, 11:3, 20:2, 31:14, 31:16, 55:20
**obviously** [2] - 40:17, 59:15
**occasion** [1] - 72:12
**Occasionally** [1] - 52:1
**occupation** [1] - 68:25
**occurred** [2] - 22:12, 81:7
**occurring** [1] - 37:7
**odd** [3] - 20:7, 20:10, 20:17
**OF** [3] - 1:1, 1:3, 1:7
**offense** [27] - 5:4, 5:5, 5:6, 10:20, 20:18, 21:25, 23:9, 26:9, 28:11, 30:21, 31:12, 31:15, 31:17, 31:20, 31:24, 32:1, 32:7, 32:13, 57:19, 67:24, 74:13, 74:19, 74:21, 82:19
**offenses** [3] - 3:13, 4:2, 40:1
**offensive** [1] - 71:13
**offer** [1] - 54:11
**offered** [2] - 15:5, 21:9
**offering** [3] - 21:12, 39:20, 40:2
**Office** [4] - 78:1, 78:9, 78:24, 79:14
**office** [4] - 77:1, 77:24, 79:12, 79:17
**office's** [1] - 6:6
**officer** [10] - 38:25, 72:19, 73:10, 73:13, 74:16, 77:12, 77:19, 77:21, 77:22, 78:5
**officers** [7] - 26:16, 34:16, 35:14, 52:13, 54:3, 70:18, 72:14
**offices** [2] - 56:15, 57:7
**official** [6] - 4:4, 20:21, 27:21, 28:4, 31:16, 84:15
**Official** [1] - 1:24
**often** [1] - 24:18
**oftentimes** [1] - 20:23
**once** [58] - 7:20, 14:3, 15:17, 16:8, 16:9, 16:23, 17:24, 19:11,

19:12, 19:14, 19:16, 19:21, 19:24, 21:11, 21:12, 22:7, 22:18, 22:21, 26:22, 27:25, 29:7, 37:8, 37:16, 39:21, 40:19, 42:12, 43:14, 47:18, 49:3, 49:11, 49:12, 49:17, 50:23, 53:9, 54:9, 57:18, 59:10, 59:17, 60:13, 60:24, 60:25, 61:17, 61:18, 62:20, 63:1, 64:10, 64:11, 66:9, 66:19, 68:20, 71:3, 72:12, 76:14, 77:9, 81:2, 81:7
**ones** [1] - 49:9
**open** [1] - 72:4
**opened** [1] - 36:21
**operating** [1] - 75:17
**opinion** [2] - 41:23, 41:25
**opinions** [1] - 42:2
**opportunity** [3] - 6:1, 40:13, 66:10
**oppose** [1] - 70:14
**opposite** [1] - 21:6
**options** [2] - 33:22, 77:2
**order** [12] - 18:16, 28:12, 29:6, 48:20, 58:17, 60:8, 65:24, 72:13, 78:15, 79:15, 81:16, 82:9
**ordered** [2] - 76:19, 78:14, 78:16
**orders** [2] - 56:22, 63:20
**organization** [2] - 44:11, 62:14
**organized** [1] - 44:14
**originally** [1] - 38:11
**origins** [1] - 40:6
**otherwise** [4] - 61:17, 67:12, 75:2, 82:24
**outrageous** [1] - 44:7
**outright** [2] - 33:23, 70:22
**outside** [6] - 10:24, 33:25, 35:4, 35:12, 35:16, 35:18, 35:21, 78:7
**overheated** [1] - 43:9
**overthrew** [1] - 42:17
**overthrow** [2] - 42:18, 46:6, 46:8
**overwhelming** [2] - 25:11, 26:24
**own** [4] - 21:21, 21:25, 41:10, 44:24

## P

**p.m** [1] - 83:20
**pace** [1] - 49:21
**packed** [1] - 69:10
**page** [2] - 55:14
**paid** [1] - 79:11
**panic** [1] - 33:24
**papers** [3] - 15:1, 52:22, 52:23
**paperwork** [1] - 36:21
**parading** [1] - 4:18
**paramilitary** [1] - 44:11
**parents** [1] - 72:24
**Part** [1] - 77:1
**part** [17] - 7:3, 7:20, 8:11, 9:19, 15:17, 17:14, 18:1, 28:5, 42:19, 50:16, 51:1, 52:9, 54:23, 59:2, 62:16, 67:6
**participants** [1] - 27:10
**participate** [2] - 49:3, 51:25, 52:2
**participation** [1] - 77:19
**particular** [5] - 42:1, 49:19, 61:15, 67:24, 72:19
**particularly** [4] - 25:15, 40:23, 60:5, 71:19
**parties** [1] - 75:16
**party** [2] - 42:13, 84:10
**Party** [1] - 71:14
**pass** [1] - 64:2
**passage** [1] - 44:21
**past** [1] - 53:22
**patriots** [5] - 42:15, 51:9, 69:13
**pats** [1] - 54:5
**pattern** [1] - 50:1
**pauperis** [1] - 79:24
**pay** [4] - 66:5, 76:19, 78:18, 78:25, 79:4
**payable** [1] - 79:6
**paying** [3] - 61:17, 61:19, 61:20
**payment** [2] - 38:15, 66:4
**payments** [1] - 78:20
**peaceful** [6] - 7:10, 33:22, 37:4, 37:5, 39:1, 66:22
**peacefully** [4] - 56:19, 57:9, 58:16, 58:17
**pegs** [1] - 61:12

**P**

**penalties** [2] - 78:19, 82:24
**Pence** [3] - 36:10, 36:18, 51:25
**pending** [2] - 81:21, 82:13
**people** [27] - 8:14, 22:7, 22:18, 22:20, 42:14, 46:8, 51:24, 54:9, 54:14, 54:15, 54:25, 56:22, 57:12, 57:20, 59:20, 61:6, 61:23, 62:24, 63:1, 63:9, 63:19, 63:20, 63:22, 63:23, 63:24, 64:2, 69:11
**people's** [1] - 60:23
**per** [1] - 79:2
**PEREZ** [23] - 1:11, 3:1, 6:10, 8:24, 9:17, 10:4, 11:20, 12:14, 13:21, 13:25, 14:10, 14:17, 14:20, 32:19, 33:4, 33:9, 34:11, 36:14, 38:4, 80:16, 81:14, 82:2, 83:4
**Perez** [2] - 2:5, 6:9, 33:3
**perfectly** [1] - 76:1
**perhaps** [9] - 16:14, 17:5, 18:18, 19:21, 25:3, 25:12, 40:8, 44:21, 60:3
**period** [1] - 40:19
**periodic** [1] - 77:10
**perjury** [2] - 9:12, 9:18
**persistent** [1] - 73:13
**person** [16] - 2:7, 12:6, 12:13, 13:2, 28:12, 29:13, 29:24, 30:8, 30:20, 36:4, 48:12, 49:13, 57:7, 57:9, 58:18, 58:19
**Person** [2] - 58:15, 58:16
**personal** [4] - 39:23, 43:7, 48:13, 64:7
**personally** [1] - 33:17
**personnel** [2] - 26:15, 37:23, 70:11, 70:21
**persuasive** [1] - 47:23
**phone** [2] - 47:11, 49:20
**photocopied** [1] - 84:9
**photographed** [1] - 62:23
**phrase** [2] - 10:21, 26:21
**physical** [16] - 5:23,

6:15, 11:11, 11:22, 12:6, 12:12, 13:9, 13:11, 13:19, 28:12, 29:2, 29:13, 29:16, 29:24, 30:8, 30:19
**physically** [2] - 51:15, 52:14
**picked** [3] - 24:16, 35:12, 35:13
**picketing** [1] - 4:19
**picking** [1] - 52:22
**picture** [1] - 53:17
**pilot** [2] - 45:5, 61:1
**pin** [1] - 18:21
**Pink** [3] - 54:16, 54:20, 55:1
**place** [7] - 5:6, 8:12, 10:24, 14:7, 35:9, 41:4, 80:21
**placement** [3] - 77:9, 78:3, 81:18
**places** [1] - 14:4
**plan** [9] - 44:23, 46:4, 46:11, 46:16, 50:18, 70:3, 70:6, 73:5
**Plane** [1] - 69:10
**plane** [2] - 12:22, 45:14
**playing** [1] - 33:25
**plead** [2] - 7:4, 15:15
**pled** [2] - 6:24, 15:12
**PLLC** [1] - 1:19
**plotters** [2] - 69:21, 71:9
**plus** [7] - 10:7, 11:9, 11:10, 11:21, 57:10
**point** [19] - 16:5, 20:5, 26:5, 33:24, 35:24, 43:8, 44:22, 45:2, 47:9, 53:18, 54:13, 55:7, 55:16, 55:17, 57:13, 57:15, 60:16, 62:18, 70:23
**pointed** [1] - 23:15
**points** [6] - 18:23, 32:5, 33:10, 40:18, 59:8, 80:24
**police** [5] - 49:23, 52:13, 55:11, 60:7, 63:23
**policy** [1] - 56:11
**political** [3] - 42:11, 42:14, 42:19
**politicians** [3] - 34:14, 49:25, 70:7
**portion** [2] - 38:16, 75:3
**posed** [1] - 21:20
**posit** [1] - 44:2
**possess** [1] - 77:7

**possible** [2] - 18:17, 80:24
**possibly** [1] - 17:3
**Post** [1] - 70:11
**post** [8] - 15:3, 45:9, 47:12, 48:17, 68:20, 69:4, 71:5, 71:10
**post-trial** [1] - 15:3
**posts** [5] - 29:15, 30:12, 69:17, 73:6, 73:11
**posture** [1] - 18:24
**power** [3] - 66:22, 69:24, 70:14
**pre** [1] - 68:12
**pre-January** [1] - 68:12
**precedent** [1] - 59:3
**preceding** [1] - 74:17
**preface** [1] - 44:25
**prefaced** [1] - 22:15
**prefer** [2] - 33:23, 70:22
**premature** [1] - 9:10
**preparations** [1] - 44:12
**prepare** [1] - 79:25
**PRESENT** [1] - 1:22
**presentation** [1] - 18:9
**presented** [2] - 39:5, 64:10
**presentence** [10] - 2:13, 2:18, 3:5, 61:8, 62:12, 65:14, 67:11, 77:2, 79:12, 79:16
**preservation** [2] - 15:10, 25:24
**preserve** [2] - 23:25, 24:8
**preserving** [2] - 15:3, 15:23
**President** [4] - 36:10, 36:18, 41:22, 72:6
**president** [1] - 69:24
**President's** [2] - 49:16, 52:19
**presidential** [2] - 66:23
**presumably** [1] - 80:2
**presumption** [1] - 3:23
**pretrial** [7] - 15:3, 15:8, 15:20, 15:21, 16:9, 16:18, 24:4
**pretty** [4] - 16:11, 17:2, 52:12, 73:12
**previously** [1] - 80:13
**primarily** [1] - 24:4
**Prisons** [1] - 76:12

**Pro** [2] - 54:17
**Pro-Choice** [1] - 54:17
**Pro-life** [1] - 54:17
**Probation** [3] - 1:22, 78:9, 79:14
**probation** [24] - 2:8, 5:2, 5:3, 6:6, 6:13, 7:8, 26:13, 38:25, 55:14, 57:9, 58:16, 58:21, 67:25, 77:1, 77:12, 77:19, 77:21, 77:22, 77:24, 78:5, 79:12, 79:17, 83:8
**problem** [1] - 13:4
**Procedure** [1] - 3:4
**proceeded** [1] - 24:8
**proceeding** [9] - 4:4, 8:16, 10:2, 12:16, 20:22, 27:22, 28:5, 31:16, 83:20
**proceedings** [19] - 8:12, 8:13, 8:23, 9:4, 9:5, 9:23, 10:3, 10:12, 10:24, 11:5, 19:14, 20:12, 20:17, 20:21, 26:22, 64:6, 83:17, 84:6
**Proceedings** [1] - 1:25
**proceeds** [1] - 36:21
**process** [7] - 7:2, 7:3, 37:14, 48:9, 62:12, 66:25, 80:3
**produced** [1] - 1:25
**produces** [1] - 31:12
**profess** [1] - 43:18
**professionally** [1] - 64:7
**proffer** [2] - 65:15, 65:17
**program** [2] - 77:20
**programs** [1] - 81:9
**progress** [3] - 74:8, 78:10, 78:11
**promote** [1] - 74:20
**proof** [3] - 23:13, 25:19, 26:4
**proper** [2] - 3:20, 72:7
**properly** [1] - 29:4
**property** [21] - 5:23, 6:15, 11:11, 11:22, 12:7, 12:13, 13:2, 13:9, 13:11, 13:19, 26:17, 28:12, 28:21, 29:3, 29:13, 29:24, 30:8, 30:20, 35:6, 59:19, 72:11
**prosecution** [1] - 58:8
**prosecution-type** [1] - 58:8

**prosecutorial** [1] - 55:8
**protect** [1] - 48:20
**protecting** [2] - 26:19, 60:7
**protective** [1] - 48:13
**protest** [3] - 7:10, 37:4, 39:1
**protesting** [4] - 54:14, 54:16, 54:19, 54:21
**proud** [1] - 41:9
**prove** [1] - 26:3
**proven** [1] - 25:18
**provide** [6] - 23:7, 51:5, 74:21, 74:22, 77:20, 77:22
**provided** [1] - 65:15
**provides** [2] - 15:2, 31:15
**proving** [1] - 7:2
**provision** [4] - 20:13, 23:11, 24:23, 74:9
**provisional** [1] - 70:15
**provisions** [2] - 16:2, 76:8
**Pruitt** [1] - 44:6
**public** [5] - 34:4, 41:20, 54:22, 62:21, 64:3
**punishment** [3] - 62:4, 62:7, 74:21
**purchase** [1] - 12:25
**purge** [1] - 33:25
**purpose** [3] - 42:16, 49:24, 71:18
**purposes** [6] - 30:13, 39:21, 40:2, 45:23, 74:12, 75:25
**pursuant** [1] - 76:7
**pursue** [1] - 40:14
**pushing** [1] - 49:12
**put** [12] - 6:25, 7:1, 15:1, 18:21, 25:19, 26:3, 35:3, 36:1, 37:25, 45:16, 59:16, 68:15
**puts** [1] - 23:12
**putting** [1] - 52:23

**Q**

**Qaeda** [1] - 70:9
**qualification** [1] - 50:25
**qualify** [2] - 8:7, 79:24
**questions** [6] - 2:21, 16:15, 16:18, 21:19, 37:16, 80:17
**quick** [1] - 72:9
**quickly** [1] - 4:3

**quiet** [1] - 32:24
**quite** [6] - 5:13, 9:25, 10:1, 17:1, 19:9, 73:9
**quoting** [3] - 45:7, 48:1, 69:1

**R**

**rack** [1] - 17:25
**racks** [2] - 49:11, 63:23
**Rally** [2] - 34:24, 35:1
**rally** [1] - 35:2
**range** [11] - 5:8, 5:13, 32:8, 32:14, 38:13, 67:21, 67:25, 68:6, 68:9, 73:3, 73:22
**ranges** [1] - 3:12
**ranking** [1] - 73:12
**rare** [2] - 23:16, 23:17, 23:22
**rate** [1] - 79:1
**rather** [1] - 43:11
**rea** [8] - 17:13, 17:17, 17:19, 24:18, 24:22, 25:17, 26:4, 39:25
**reach** [1] - 65:6
**reaching** [1] - 47:15
**reaction** [1] - 52:10
**read** [6] - 11:17, 33:5, 34:7, 40:4, 52:4, 76:5
**ready** [2] - 35:6, 49:9
**real** [6] - 16:15, 26:1, 46:4, 46:11, 56:5, 66:5
**reality** [4] - 43:5, 44:4, 44:17, 64:12
**really** [11] - 5:16, 9:19, 13:2, 17:6, 17:10, 18:3, 19:21, 22:11, 24:21, 33:11, 39:20, 50:14, 56:13, 68:17, 69:9, 73:12, 75:11
**reason** [3] - 19:23, 26:5, 44:17
**reasonable** [3] - 36:3, 48:12, 67:23
**reasonably** [1] - 53:4
**reasons** [8] - 7:11, 39:12, 47:23, 48:12, 66:7, 80:9, 80:16
**rebel** [1] - 69:24
**receipt** [1] - 78:11
**receive** [1] - 27:23
**received** [8] - 2:12, 2:17, 2:21, 3:1, 25:6, 41:10, 60:4, 65:12
**receiving** [1] - 59:4

**recent** [1] - 42:25
**recess** [1] - 83:19
**recommendation** [2] - 81:1, 81:18
**recommended** [3] - 5:4, 68:1, 77:1
**recommending** [1] - 68:2
**record** [8] - 43:4, 44:8, 50:11, 50:12, 55:10, 59:19, 64:25
**records** [3] - 63:25, 75:10, 76:3
**recovered** [1] - 36:8
**redounded** [1] - 64:5
**reduces** [1] - 62:6
**reduction** [8] - 5:12, 5:18, 6:7, 15:1, 25:6, 25:13, 26:6, 30:15
**reentry** [1] - 78:4
**refer** [1] - 48:4
**reference** [4] - 31:3, 51:17, 51:18, 69:14
**referred** [6] - 20:13, 24:5, 34:8, 39:1, 70:1, 70:16
**referring** [3] - 3:20, 37:19, 69:7
**refers** [2] - 8:22, 26:21
**reflect** [7] - 13:2, 18:24, 20:25, 64:12, 67:5, 71:17, 71:21
**reflected** [3] - 67:11, 73:6, 74:16
**reflects** [1] - 74:19
**Reform** [1] - 76:7
**refrain** [1] - 77:7
**regards** [1] - 18:10
**reiterate** [1] - 38:19
**relate** [2] - 23:25, 24:17
**relating** [5] - 2:14, 24:22, 25:22, 74:14
**relation** [1] - 51:3
**release** [11] - 38:15, 60:15, 74:3, 74:5, 76:17, 77:24, 78:2, 78:6, 79:12, 82:8, 82:22
**released** [1] - 82:12
**relevance** [1] - 32:4
**relevant** [17] - 3:25, 14:7, 14:8, 14:9, 16:2, 16:8, 20:13, 22:16, 29:18, 32:22, 39:22, 58:25, 61:22, 62:3, 62:4, 62:7, 62:9
**relies** [2] - 44:6, 44:21
**relying** [1] - 42:9

**remain** [1] - 82:11
**remaining** [4] - 2:15, 2:25, 4:7, 4:13
**remains** [1] - 32:1
**remarks** [1] - 22:15
**remembers** [1] - 64:1
**remind** [1] - 82:21
**reminded** [1] - 82:20
**remorse** [1] - 73:18
**removed** [1] - 29:15
**Rendall** [1] - 76:11
**RENDALL** [1] - 1:5
**renew** [1] - 38:12
**repeat** [1] - 33:5
**repeated** [1] - 71:4
**repeatedly** [1] - 75:24
**repeating** [1] - 66:14
**repetition** [2] - 52:7, 66:15
**repetitive** [1] - 73:11
**report** [17] - 2:13, 2:18, 2:19, 3:5, 61:8, 62:12, 65:14, 67:12, 77:2, 78:5, 78:10, 78:12, 79:13, 79:17, 82:9, 82:17, 82:18
**reported** [1] - 1:25
**REPORTER** [1] - 9:14
**Reporter** [3] - 1:23, 1:24, 84:15
**reporter** [1] - 9:16
**reporting** [1] - 82:13
**reprehensible** [1] - 73:8
**represent** [1] - 66:17
**represented** [2] - 10:22, 80:2
**representing** [3] - 2:6, 2:7, 2:8
**republic** [1] - 34:5
**Republicans** [2] - 34:14, 70:8
**request** [8] - 57:1, 79:24, 80:21, 81:2, 81:3, 81:22, 81:25, 82:3
**requested** [1] - 77:23
**requesting** [1] - 68:7
**requests** [2] - 25:10, 82:2
**required** [2] - 76:20, 78:13
**requirement** [1] - 24:22
**requirements** [1] - 30:7
**requires** [1] - 75:11
**requisite** [1] - 25:17, 26:4
**research** [1] - 43:22

**resemble** [1] - 29:5
**residence** [1] - 79:15
**resist** [1] - 50:24
**resisting** [1] - 51:19
**resolution** [1] - 23:5
**resolve** [2] - 19:3, 23:3
**resolved** [1] - 22:23
**resources** [8] - 9:21, 9:24, 10:2, 26:12, 26:18, 27:12, 27:16, 28:7
**respect** [16] - 2:22, 14:16, 17:11, 17:17, 25:24, 26:7, 32:3, 52:11, 52:20, 62:8, 66:1, 74:20, 75:7, 75:25, 80:21, 81:18
**respectful** [1] - 41:22
**respectfully** [2] - 19:25, 65:1
**respecting** [1] - 55:20
**respects** [1] - 57:12
**response** [1] - 51:14
**responsibilities** [1] - 72:23
**responsibility** [24] - 5:11, 5:18, 6:7, 6:19, 6:20, 7:4, 7:12, 7:13, 15:24, 18:6, 22:14, 23:7, 23:8, 23:18, 23:23, 24:3, 25:6, 25:10, 25:13, 26:6, 30:16, 31:25, 39:7, 73:17
**rest** [2] - 51:21, 61:9
**restitution** [11] - 38:15, 65:20, 65:24, 66:4, 66:8, 77:13, 77:15, 78:14, 78:16, 78:20, 79:1
**restore** [3] - 34:4, 34:5, 71:11
**restricted** [2] - 4:7, 4:11
**result** [3] - 24:3, 30:20, 69:14
**resulted** [4] - 26:9, 26:14, 27:11, 27:17
**resulting** [5] - 5:7, 31:20, 83:14
**results** [6] - 22:14, 31:23, 42:4, 51:19, 67:5, 69:4
**retired** [1] - 63:6
**return** [2] - 79:16, 83:19
**review** [4] - 2:13, 2:18, 4:3, 65:17
**reviewed** [7] - 2:21, 3:2, 25:8, 66:1, 66:3,

67:13
**reviewing** [1] - 52:5
**revolutionary** [2] - 42:11, 42:15
**rhetoric** [24] - 28:18, 29:17, 29:19, 30:12, 33:14, 34:19, 37:11, 38:7, 38:8, 38:9, 42:11, 42:25, 43:10, 43:12, 43:19, 43:23, 44:3, 44:7, 44:16, 50:12, 51:24, 53:1, 73:4
**rich** [1] - 61:23
**riffle** [1] - 36:21
**rifling** [1] - 52:22
**rigged** [1] - 71:11
**rightful** [1] - 69:24
**riot** [5] - 26:14, 27:17, 67:1
**rioters** [3] - 8:3, 35:23, 72:13
**rises** [1] - 29:11
**risk** [1] - 52:14
**roamed** [1] - 72:3
**role** [1] - 39:8
**Room** [1] - 1:12
**Rotunda** [5] - 35:13, 35:15, 56:15, 57:8
**rough** [1] - 47:13
**roughly** [2] - 45:11, 61:8
**routine** [2] - 16:18
**RPR** [3] - 1:23, 84:3, 84:14
**Rubenacker** [2] - 10:18, 27:3
**rude** [1] - 55:10
**rule** [3] - 18:19, 43:11, 74:20
**Rule** [3] - 3:4, 17:5, 37:17
**rules** [6] - 34:15, 46:16, 50:19, 70:3, 70:16, 73:5
**ruling** [1] - 18:20
**run** [2] - 53:14, 61:14
**running** [1] - 69:4
**rushed** [1] - 72:6

**S**

**SAINT** [1] - 84:3
**Saint** [2] - 1:23, 84:14
**SAINT-LOTH** [1] - 84:3
**Saint-Loth** [1] - 1:23, 84:14
**satisfy** [1] - 30:7
**save** [1] - 56:24

**saw** [9] - 7:11, 8:2, 11:6, 35:19, 38:20, 38:21, 39:3, 39:8, 52:7
**scaffolding** [1] - 35:5
**scary** [1] - 52:12
**scene** [1] - 13:19
**school** [1] - 40:7
**SCOTUS** [2] - 69:22, 71:15
**search** [1] - 43:17
**seat** [1] - 81:22
**second** [9] - 30:15, 40:6, 49:13, 57:15, 60:25, 65:10, 66:12, 69:5, 81:5
**secondly** [5] - 5:19, 16:22, 39:22, 41:3, 59:3
**section** [1] - 31:15
**Section** [12] - 4:6, 4:9, 4:12, 4:14, 4:17, 4:20, 10:20, 26:8, 31:23, 76:8, 76:21, 77:14
**Sections** [1] - 4:6
**seditious** [1] - 46:14
**see** [14] - 8:8, 13:4, 14:9, 20:3, 24:20, 33:24, 35:4, 36:17, 44:15, 52:16, 54:1, 54:5, 61:14, 71:15
**seeing** [1] - 39:5
**seem** [2] - 16:4, 20:17
**seemingly** [1] - 49:21
**sees** [1] - 52:11
**seize** [2] - 70:7, 70:10
**seizing** [1] - 34:14
**select** [2] - 34:14, 70:8
**selective** [1] - 58:8
**self** [3] - 81:3, 82:4, 82:8
**self-surrender** [1] - 81:3, 82:4, 82:8
**Senate** [27] - 8:6, 8:17, 35:7, 35:18, 35:21, 36:6, 36:9, 36:10, 36:14, 36:16, 36:19, 36:20, 36:22, 38:1, 52:10, 52:18, 53:6, 55:19, 56:5, 56:19, 57:10, 58:17, 58:20, 72:4, 72:5
**senators'** [1] - 36:22
**senior** [1] - 73:9
**SENIOR** [1] - 1:8
**sense** [8] - 10:15, 10:25, 11:2, 12:18, 21:11, 21:16, 34:20, 49:19

**sensitive** [5] - 14:4, 14:7, 28:23, 28:25, 37:8
**sent** [2] - 34:9, 51:14
**sentence** [43] - 3:11, 3:17, 3:20, 3:23, 3:24, 57:1, 57:2, 57:5, 57:6, 60:23, 61:20, 64:18, 65:18, 66:7, 66:11, 66:12, 67:16, 68:1, 68:2, 68:5, 68:7, 68:10, 73:23, 74:1, 74:7, 74:10, 74:18, 75:2, 75:3, 75:9, 75:21, 76:1, 76:5, 77:15, 79:15, 79:22, 80:10, 80:19, 81:17, 81:19, 82:10, 82:18
**sentenced** [1] - 76:16
**sentences** [2] - 73:24, 76:2
**sentencing** [30] - 2:10, 3:7, 3:12, 3:21, 9:7, 13:1, 14:8, 25:7, 29:18, 30:13, 31:7, 33:13, 38:11, 39:14, 42:1, 43:22, 45:7, 46:23, 51:1, 55:13, 58:9, 61:1, 62:10, 65:14, 67:18, 67:19, 67:21, 67:23, 68:6, 77:2
**Sentencing** [4] - 3:9, 21:3, 76:7, 76:10
**SENTENCING** [1] - 1:7
**sentencing-type** [1] - 58:9
**sentencings** [1] - 27:1
**separate** [1] - 82:19
**Sergeant** [1] - 35:19
**series** [1] - 2:20
**serious** [7] - 66:16, 66:17, 67:5, 68:16, 68:18, 82:15, 82:24
**seriously** [3] - 38:2, 67:2, 67:3
**seriousness** [1] - 74:19
**serve** [4] - 38:23, 40:15, 75:3, 76:16
**served** [3] - 40:20, 40:23, 60:21
**service** [10] - 40:17, 41:3, 41:7, 41:11, 67:13, 73:2, 73:20, 77:18, 82:9, 82:18
**session** [1] - 55:1
**set** [5] - 3:12, 20:23,

36:7, 46:17, 74:12
**sets** [1] - 70:3
**setting** [2] - 45:24, 63:8
**seven** [2] - 60:14, 60:24
**several** [6] - 22:18, 22:20, 52:4, 56:21, 61:12, 72:22
**severed** [1] - 42:24
**shall** [8] - 76:24, 77:16, 77:17, 78:20, 79:9, 79:12, 79:16, 84:8
**share** [1] - 77:25
**shoot** [6] - 34:17, 51:1, 51:10, 51:12, 69:15, 70:20
**short** [1] - 59:25
**shortest** [1] - 71:12
**shorthand** [1] - 1:25
**shortly** [1] - 68:19
**shot** [2] - 41:6, 49:17
**shoulder** [1] - 54:5
**shouting** [2] - 35:23, 36:23
**shoving** [1] - 49:12
**show** [4] - 27:9, 49:15, 52:11, 52:20
**showed** [2] - 52:22, 53:4
**showing** [1] - 73:18
**sic** [2] - 6:12, 36:24
**side** [10] - 6:1, 21:5, 35:5, 35:6, 42:23, 45:17, 46:2, 48:22, 59:17, 65:15
**sided** [1] - 19:21
**sides** [2] - 5:13, 59:23
**signatory** [1] - 84:10
**significance** [2] - 41:10, 43:3
**significant** [9] - 16:19, 40:18, 41:2, 41:13, 52:15, 54:7, 59:15, 61:13, 62:17
**signs** [1] - 35:8
**silence** [1] - 70:12
**similar** [9] - 27:23, 57:22, 58:1, 63:14, 65:23, 75:10, 75:12, 76:3
**similarly** [1] - 57:12
**simple** [1] - 60:13
**simply** [5] - 3:18, 3:24, 10:19, 10:25, 19:10
**single** [2] - 46:6, 47:12
**single-handedly** [1] - 46:6
**siren** [1] - 33:25

**sit** [1] - 7:7
**sitting** [1] - 49:20
**situated** [1] - 57:12
**situation** [3] - 26:1, 27:11, 54:6
**situations** [2] - 23:16, 23:17
**six** [6] - 4:2, 6:23, 7:2, 7:6, 31:1, 44:22
**six-point** [1] - 44:22
**slice** [2] - 43:20, 43:21
**slow** [1] - 9:14
**smaller** [1] - 57:5
**social** [16] - 22:1, 29:14, 30:12, 41:17, 43:3, 43:10, 44:8, 45:9, 47:4, 48:8, 50:23, 56:6, 56:8, 69:20, 71:8
**societal** [1] - 48:10
**solely** [2] - 10:3, 29:20
**someone** [10] - 13:18, 29:21, 49:5, 51:14, 56:14, 57:18, 57:19, 67:16, 75:14
**somewhat** [1] - 30:6
**soon** [1] - 68:22
**sorry** [3] - 6:12, 63:15, 78:15
**sort** [9] - 17:22, 18:21, 21:8, 39:19, 53:7, 54:4, 54:8, 55:15, 62:20
**sorts** [6] - 20:20, 20:24, 34:8, 40:9, 43:16, 60:8
**sound** [1] - 53:3
**Southern** [1] - 1:11
**speaking** [2] - 11:19, 65:1
**speaks** [3] - 42:12, 72:17
**special** [6] - 13:18, 31:19, 38:17, 41:4, 45:4, 74:22, 76:19, 77:16
**specific** [11] - 3:13, 10:20, 11:14, 12:16, 12:17, 13:17, 18:7, 62:8, 74:23, 75:7
**specifically** [1] - 48:8
**speech** [1] - 49:16
**spending** [1] - 53:19
**split** [1] - 19:9
**splits** [1] - 19:11
**St** [1] - 1:20
**staff** [2] - 34:15, 70:8
**stand** [2] - 40:19, 81:23
**standard** [2] - 18:12,

61:11
**standing** [3] - 35:20, 53:25, 70:17
**stands** [2] - 62:22, 83:18
**start** [14] - 6:4, 14:25, 33:3, 33:24, 39:18, 40:3, 49:3, 49:10, 49:25, 50:4, 50:8, 61:3, 65:20, 77:18
**started** [3] - 16:17, 49:4, 62:13
**starting** [7] - 6:20, 16:5, 54:13, 55:7, 55:16, 55:17, 60:16
**state** [2] - 77:6, 80:23
**statement** [2] - 16:17, 17:4
**statements** [3] - 24:4, 42:8, 43:4
**States** [10] - 2:3, 27:3, 29:10, 34:23, 41:22, 51:17, 77:25, 78:9, 78:21, 79:14
**STATES** [4] - 1:1, 1:3, 1:8, 1:10
**states** [1] - 33:23
**status** [2] - 78:6, 81:20
**statute** [4] - 18:13, 18:14, 74:12, 77:14
**statutes** [6] - 10:9, 10:11, 10:22, 11:3, 20:13, 65:25
**statutorily** [1] - 76:20
**statutory** [1] - 74:9
**stay** [1] - 61:12
**stayed** [1] - 40:25
**steal** [2] - 68:21, 69:19, 71:7
**Steal** [3] - 34:24, 35:1, 69:11
**stenographic** [1] - 84:5
**step** [3] - 16:7, 47:19, 59:6
**steps** [2] - 47:8, 50:15
**still** [15] - 6:22, 6:24, 6:25, 7:10, 14:12, 15:8, 35:2, 38:13, 39:11, 39:24, 58:13, 62:14, 62:15, 68:4, 68:9
**stipulate** [1] - 6:22
**stipulated** [4] - 16:24, 24:20, 25:3, 25:16
**stipulation** [1] - 25:15
**stole** [1] - 71:13
**stop** [8] - 8:12, 8:13, 8:15, 24:13, 24:15,

51:6, 53:10, 71:18
**Stop** [3] - 34:24, 35:1, 69:11
**stopped** [2] - 8:11, 34:21
**storm** [2] - 24:14, 70:24
**stormed** [1] - 69:8
**storming** [2] - 51:9, 69:13
**story** [1] - 51:14
**Street** [2] - 1:12, 1:16
**stretching** [1] - 12:10
**stringent** [1] - 60:14
**stronger** [2] - 60:10, 60:14
**strongly** [3] - 41:19, 42:3, 42:4
**stuff** [5] - 17:22, 43:16, 47:14, 68:18, 71:17
**style** [1] - 28:24
**subject** [2] - 82:15, 82:23
**submit** [4] - 57:11, 77:9, 78:5, 78:9
**submitted** [1] - 33:6
**subset** [2] - 15:2, 20:2
**substance** [4] - 42:1, 65:17, 77:7, 77:8
**substantial** [18] - 5:20, 6:16, 7:16, 8:4, 9:8, 9:20, 11:7, 22:5, 26:9, 26:10, 26:22, 27:12, 27:16, 27:17, 28:5, 30:17, 31:21, 67:10
**substantially** [1] - 22:13
**substitute** [1] - 21:11
**subtasks** [1] - 45:6
**subtle** [1] - 62:19
**suffer** [1] - 62:5
**suffered** [1] - 74:24
**suffering** [1] - 62:6
**sufficient** [2] - 29:19, 74:10
**suggestion** [1] - 58:21
**suit** [1] - 27:19
**Suite** [1] - 1:20
**summarizing** [1] - 78:5
**superior** [1] - 55:4
**supervise** [1] - 77:19
**supervised** [6] - 14:13, 38:14, 74:3, 74:5, 76:17, 78:7
**supervision** [6] - 76:24, 77:4, 77:10, 77:18, 78:3, 78:11

**support** [7] - 6:5, 24:14, 26:23, 65:16, 72:16, 83:12, 83:13
**suppose** [2] - 22:6, 47:22
**supposed** [2] - 8:18, 21:8
**suppress** [1] - 16:16
**supremacist** [1] - 43:15
**Supreme** [3] - 3:14, 33:21, 71:19
**surplusage** [1] - 21:7
**surrender** [3] - 81:3, 82:4, 82:8
**surrounding** [1] - 35:11
**sweep** [1] - 29:22
**system** [3] - 67:2, 67:4, 67:17

**T**

**tactical** [7] - 24:14, 28:24, 30:4, 47:20, 63:5, 71:22, 73:16
**takeaway** [1] - 40:16
**tall** [2] - 62:22, 63:4
**tallying** [1] - 45:13
**task** [2] - 22:17, 70:10
**tasks** [2] - 34:13, 70:6
**tea** [1] - 42:13
**teargassed** [1] - 54:2
**technical** [2] - 18:18, 18:22
**ten** [3] - 25:8, 63:1, 64:11
**tenth** [1] - 49:13
**term** [5] - 4:21, 4:24, 5:1, 8:22, 69:6
**termination** [2] - 9:10, 79:18
**terms** [16] - 13:5, 19:13, 21:25, 29:11, 30:9, 42:13, 42:19, 44:24, 48:17, 64:17, 67:23, 72:24, 73:7, 76:12, 76:15, 76:17
**terror** [1] - 40:22
**test** [1] - 77:9
**testified** [4] - 35:19, 36:25, 51:2, 51:13
**testimony** [2] - 9:12, 9:18
**tests** [1] - 77:10
**Texas** [2] - 1:11, 80:24
**THE** [97] - 1:1, 1:8, 1:10, 1:18, 2:2, 2:9, 2:20, 3:3, 8:19, 9:14, 9:15, 9:25, 11:16,

11:25, 12:24, 13:24, 14:6, 14:14, 14:18, 14:23, 15:7, 15:14, 15:19, 16:1, 16:12, 17:9, 17:13, 19:5, 19:11, 20:6, 21:2, 21:17, 21:22, 22:11, 22:20, 23:2, 32:18, 32:20, 33:5, 34:10, 36:12, 38:3, 39:15, 40:11, 42:3, 43:18, 45:18, 45:21, 45:25, 46:10, 46:13, 46:16, 46:19, 46:24, 47:2, 47:18, 48:1, 48:6, 48:15, 49:1, 50:7, 51:6, 51:18, 53:18, 54:18, 54:21, 55:2, 55:21, 55:24, 56:24, 57:16, 57:24, 58:3, 59:10, 60:18, 61:16, 61:25, 63:3, 63:11, 63:15, 64:20, 65:2, 65:4, 65:11, 65:12, 80:15, 80:17, 80:25, 81:5, 81:12, 81:16, 82:3, 82:6, 83:6, 83:8, 83:10, 83:18
**thereafter** [1] - 77:10
**therefore** [10] - 15:23, 26:5, 28:7, 31:6, 31:11, 32:5, 73:23, 78:19, 79:4, 81:16
**thinking** [1] - 73:7
**thousand** [4] - 22:18, 22:20, 54:9, 64:15
**threat** [1] - 13:10
**threatened** [4] - 12:11, 12:12, 13:8, 29:24
**threatening** [12] - 5:23, 6:15, 11:10, 11:22, 12:6, 13:19, 28:11, 29:12, 30:6, 30:8, 30:12, 30:19
**threats** [3] - 14:5, 22:1, 29:16
**three** [31] - 2:14, 2:22, 4:24, 5:15, 5:20, 5:25, 6:18, 7:16, 8:9, 8:20, 10:7, 11:9, 14:12, 14:16, 14:21, 20:5, 21:23, 23:3, 26:7, 26:25, 28:7, 30:16, 31:4, 31:8, 31:19, 38:14, 39:5, 40:18, 45:16, 53:3, 58:22
**three-day** [1] - 39:5
**three-level** [10] - 5:20, 6:18, 7:16, 8:9, 8:20,

26:7, 26:25, 28:7, 30:16, 31:19
**throughout** [2] - 38:8, 72:3
**tie** [1] - 27:6
**tied** [2] - 48:8, 48:10
**Timberlake** [1] - 35:19
**Title** [5] - 4:5, 4:8, 4:11, 4:16, 76:21
**today** [12] - 7:7, 12:2, 32:15, 65:13, 67:7, 70:17, 79:21, 80:2, 80:6, 80:7, 83:1, 83:11
**together** [1] - 47:16
**took** [5] - 29:2, 35:17, 47:18, 59:11, 60:18
**top** [1] - 64:11
**total** [1] - 32:1
**totally** [2] - 55:4, 58:12
**totals** [1] - 76:20
**touch** [1] - 33:10
**touchy** [1] - 18:12
**tough** [2] - 40:24, 45:5
**track** [1] - 20:10
**tracking** [1] - 20:8
**tradition** [5] - 54:14, 54:16, 54:18, 54:21, 54:23
**traitors** [2] - 69:19, 71:6
**transactions** [1] - 31:10
**TRANSCRIPT** [1] - 1:7
**transcript** [4] - 1:25, 84:5, 84:6, 84:9
**transcription** [1] - 1:25
**transition** [1] - 66:22
**traveling** [1] - 49:7
**treat** [1] - 61:23
**treated** [3] - 3:22, 58:19
**treatment** [2] - 79:16, 79:18
**tri** [1] - 42:14
**tri-cornered** [1] - 42:14
**trial** [36] - 2:10, 4:2, 5:19, 6:21, 6:22, 6:24, 7:4, 7:14, 15:3, 15:8, 15:12, 15:22, 16:23, 17:23, 18:25, 23:13, 23:20, 23:22, 23:24, 24:6, 24:8, 24:12, 25:1, 25:3, 25:4, 25:5, 25:11, 25:14, 33:7, 33:12, 36:25, 37:18, 39:5, 48:11, 48:18, 79:20

**trials** [1] - 16:24
**tried** [4] - 18:6, 72:4, 72:12
**tries** [1] - 58:17
**trouble** [1] - 53:9
**troubling** [1] - 68:14
**true** [5] - 16:19, 29:14, 74:25, 84:4, 84:5
**Trump's** [1] - 42:23
**try** [2] - 46:7, 73:1
**trying** [9] - 35:16, 37:15, 42:18, 50:21, 53:5, 53:19, 58:4, 69:19, 71:7
**turn** [1] - 19:23
**turning** [1] - 45:9
**turns** [1] - 17:10
**two** [33] - 5:13, 5:18, 6:7, 6:8, 7:11, 10:14, 16:7, 18:4, 18:23, 23:10, 26:5, 29:7, 30:15, 31:10, 33:21, 38:3, 39:2, 39:10, 39:21, 41:17, 45:3, 52:13, 53:3, 57:10, 58:22, 59:5, 59:7, 60:4, 61:16, 69:23, 71:3, 76:13, 77:10
**two-level** [3] - 5:18, 6:7, 30:15
**two-point** [1] - 26:5
**type** [3] - 58:8, 58:9, 60:22

**U**

**U.S** [8] - 1:22, 3:9, 4:5, 4:9, 4:12, 4:16, 76:21, 79:7
**U.S.C** [4] - 4:14, 4:19, 76:8, 77:13
**umbrage** [1] - 50:24
**unbelievable** [1] - 73:9
**uncontested** [1] - 17:23
**under** [27] - 3:4, 3:7, 3:8, 5:15, 8:7, 9:6, 10:8, 11:3, 11:9, 13:15, 26:7, 27:22, 28:10, 30:24, 31:9, 31:17, 31:19, 31:23, 57:16, 58:9, 65:24, 68:25, 74:9, 82:11, 82:12, 82:22, 82:23
**undermine** [1] - 66:21
**underscore** [2] - 23:17
**understandable** [1] - 75:17
**unique** [3] - 38:2,

38:5, 38:21
**UNITED** [4] - 1:1, 1:3, 1:8, 1:10
**United** [10] - 2:3, 27:3, 29:10, 34:23, 41:22, 51:17, 77:25, 78:8, 78:21, 79:14
**unlawful** [1] - 77:8
**unlawfully** [1] - 77:7
**unless** [3] - 34:16, 70:18, 83:1
**unlike** [1] - 40:21
**unnecessary** [5] - 9:20, 26:11, 27:8, 27:11, 27:15
**unoccupied** [1] - 57:10
**unusual** [4] - 16:20, 16:21, 20:1, 24:20
**unwarranted** [2] - 56:21, 75:9
**up** [30] - 5:12, 11:17, 11:24, 14:1, 14:3, 14:7, 24:16, 28:19, 33:15, 35:6, 35:12, 35:13, 36:14, 37:12, 38:1, 42:15, 42:23, 43:7, 44:16, 45:13, 45:15, 45:24, 47:14, 51:7, 52:22, 63:8, 65:8, 66:13, 68:13
**upper** [1] - 52:9
**upstairs** [1] - 35:17
**urge** [1] - 16:6
**urgency** [1] - 49:20
**uses** [1] - 69:6
**utilize** [1] - 36:2

**V**

**valor** [1] - 41:9
**values** [1] - 66:18
**variance** [2] - 18:24, 73:22
**various** [2] - 25:9, 28:22
**vary** [1] - 73:3
**vast** [1] - 10:16
**vented** [1] - 12:19
**venue** [1] - 16:20
**verdict** [1] - 9:11
**verification** [1] - 77:21
**versus** [3] - 2:3, 27:3, 29:10
**vest** [7] - 28:24, 45:16, 47:20, 49:3, 63:5, 71:22, 73:16
**veteran** [1] - 62:16
**Vice** [4] - 36:10, 36:18, 52:19, 72:6

**victim** [2] - 31:10, 78:23
**video** [3] - 52:21, 53:16, 53:23
**videos** [1] - 53:3
**Vietnam** [1] - 54:17
**view** [10] - 15:22, 19:23, 20:9, 21:6, 26:24, 27:25, 45:19, 56:20, 57:13, 59:13
**viewed** [2] - 16:3, 67:22
**villain** [1] - 52:13
**villain-looking** [1] - 52:13
**violated** [1] - 20:4
**violation** [6] - 4:5, 4:8, 4:11, 4:14, 4:16, 4:19
**violence** [7] - 14:2, 29:2, 35:9, 38:20, 39:3, 39:6, 72:25
**violent** [12] - 12:15, 14:5, 28:18, 28:20, 30:11, 37:6, 38:7, 38:21, 42:5, 72:11, 72:13, 73:1
**void** [1] - 84:8
**volume** [2] - 25:11, 25:12
**vote** [2] - 26:16, 31:22
**votes** [1] - 8:7
**vs** [1] - 1:4

## W

**wait** [1] - 22:11
**waiting** [1] - 53:25
**waived** [3] - 15:13, 15:14, 15:16
**waives** [2] - 78:19, 79:4
**walked** [2] - 37:6, 55:8
**walking** [2] - 49:18, 49:21
**walks** [7] - 36:20, 57:7, 57:8, 58:15, 58:18
**wall** [1] - 11:19
**wandered** [1] - 56:14
**wandering** [1] - 53:7
**wants** [1] - 64:21
**war** [13] - 36:23, 37:10, 37:13, 40:22, 47:19, 48:3, 49:3, 49:25, 50:4, 50:9, 50:10, 68:24, 69:5
**warranted** [1] - 82:9
**warrants** [1] - 43:17
**Washington** [11] - 1:6,

1:13, 1:16, 1:20, 12:22, 12:25, 34:22, 70:11, 78:8, 78:25, 79:8
**watch** [1] - 34:1
**wave** [1] - 59:20
**ways** [4] - 13:1, 14:8, 20:20, 60:8
**wear** [3] - 34:25, 35:3, 71:22
**wearing** [4] - 42:14, 45:16, 63:9, 63:13
**week** [1] - 80:7
**weeks** [5] - 11:24, 28:19, 33:15, 37:11, 38:3
**weigh** [2] - 30:11, 62:3
**weight** [1] - 47:6
**well-founded** [1] - 65:21
**west** [2] - 35:5, 35:6
**whatsoever** [1] - 73:18
**white** [1] - 43:15
**White** [1] - 70:13
**whole** [8] - 8:3, 10:6, 10:12, 19:20, 37:9, 48:9, 53:19, 60:23
**WILLETT** [2] - 1:22, 83:9
**Willett** [2] - 2:8, 38:25
**willfully** [1] - 24:23
**willingly** [1] - 53:24
**wind** [1] - 5:12
**winding** [1] - 14:6
**windows** [1] - 35:10
**Wing** [1] - 35:7
**winnable** [1] - 68:20
**wish** [3] - 80:3, 82:1, 83:13
**wishes** [1] - 33:1
**witnesses** [2] - 7:1, 47:25
**Wood** [1] - 29:10
**wording** [1] - 7:19
**words** [15] - 11:23, 12:1, 12:3, 12:9, 12:10, 12:15, 12:18, 13:6, 13:24, 13:25, 14:1, 29:11, 33:14, 34:20
**wore** [3] - 30:4, 34:22, 73:15
**works** [2] - 61:5, 61:8
**worse** [1] - 43:13
**worst** [3] - 33:16, 64:10, 64:11
**worthwhile** [1] - 18:15
**worthy** [1] - 52:6
**wound** [1] - 45:15

**writing** [1] - 37:25
**written** [2] - 33:12, 77:20
**wrongdoing** [1] - 62:5

## Y

**year** [3] - 4:24, 61:9, 76:14
**years** [10] - 4:22, 14:13, 38:14, 39:10, 42:25, 56:21, 57:10, 58:22, 76:13
**York** [1] - 70:12
**Yorker** [1] - 37:4
**young** [1] - 53:10
**yourself** [1] - 2:12

## Z

**zero** [1] - 73:18

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2023, I caused this Brief of Defendant-Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Chrisellen R. Kolb
Assistant U.S. Attorney
United States Attorney's Office
Appellate Division
601 D Street, NW, Room 8104
Washington, DC 20530
Chrisellen.R.Kolb@usdoj.gov
*Counsel for Appellee*

I further certify that on this 10th day of July 2023, the Sealed Supplement of the Joint Appendix was emailed to the court at sealedfilings@cadc.uscourt.gov.

I further certify that on this 10th day of July 2023, I caused the required copies of the Brief of Appellant and Joint Appendix to be sent the court within the rule time frame and a copy of the Sealed Supplement of the Joint Appendix to be served, via express mail, upon counsel for the Appellee.

*/s/ Charles Burnham*
Charles Burnham