**SCHEDULED FOR ORAL ARGUMENT ON SEPTEMBER 27, 2023**

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 23-3045

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY RENDALL BROCK,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of Columbia
in No. 1:21-cr-00140-JDB-1, John D. Bates, U.S. Senior District Judge*

## BRIEF FOR DEFENDANT-APPELLANT

CHARLES BURNHAM
BURNHAM & GOROKHOV, PLLC
1750 K Street NW, Suite 300
Washington, DC 20006
(202) 386-6920
charles@burnhamgorokhov.com

*Counsel for Defendant-Appellant*

July 10, 2023

 COUNSEL PRESS, LLC

(202) 783-7288  *  (888) 277-3259

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. R. 28(a)(1), the undersigned certifies as follows:

### A. Parties and Amici

The parties that appeared in the district court and that are now before this court are Larry Brock (appellant) and the government (appellee). There are no amici curiae or intervenors.

### B. Rulings Under Review

Mr. Brock seeks review of the final judgment of conviction and of a ruling on sentencing guidelines.

### C. Related Cases

Mr. Brock is one of thousands of defendants prosecuted in connection with protest activity on January 6, 2021 and one of at least several dozen charged or convicted with Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2). As discussed below, this statute was recently construed by this Court in *United States v. Fischer*, 64 F.4th 329 (D.C. April 7, 2023).

In *United States v. Robertson*, 22-3062 the Appellant raised closely analogous issues as to § 1512(c)(2) and sentencing guidelines.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

    A.    Parties and Amici ..........................................................................i

    B.    Rulings Under Review ....................................................................i

    C.    Related Cases ..................................................................................i

TABLE OF AUTHORITIES ..........................................................................iv

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF ISSUES ..............................................................................1

STATEMENT OF THE CASE..........................................................................1

    I.    Indictment and Bench Trial...........................................................1

    II.    Sentencing .....................................................................................4

SUMMARY OF THE ARGUMENT ................................................................5

ARGUMENT ...................................................................................................6

    I.    Mr. Brock's Conviction for Obstruction of an Official Proceeding is Legally Flawed in Multiple Respects; Various Arguments Preserved for *En Banc* or Supreme Court Review............6

        a.    Legal Background: Current State of the Law on 18 U.S.C. § 1512(c)(2)....................................................................7

            i.    *United States v. Fischer* Panel Opinion...........................7

            ii.    Further Proceedings in *United States v. Fischer* ............10

        b.    The District Court Applied an Incorrect Definition of the *Actus Reus* of 18 U.S.C. § 1512(c)(2)................................10

            i.    Standard of Review .......................................................10

            ii.    The District Court Did Not Limit 18 U.S.C. § 1512(c)(2) *Actus Reus* to Either Destruction of Documents or Impairment of Evidence.........................10

c.   Under the Correct Legal Standard for 18 U.S.C. § 1512(c)(2) *Actus Reus*, the Evidence is Insufficient to Support Mr. Brock's Conviction ...............................................12

    i.   Standard of Review ......................................................12

    ii.   No Evidence that Mr. Brock Impaired Evidence or Destroyed Documents ..................................................13

d.   The District Court Applied the Incorrect Standard for 18 U.S.C. § 1512(c) *Mens Rea* ...............................................13

    i.   Standard of Review ......................................................13

    ii.   Judge Walker's "Unlawful Benefit" *Mens Rea* Formulation Should be Adopted for § 1512(c)(2)..........14

e.   Under the Correct *Mens Rea* Standard the Evidence in Insufficient to Support Mr. Brock's Conviction......................14

    i.   Standard of Review ......................................................14

    ii.   Insufficient Evidence of Corrupt Intent..........................15

f.   Even Under the District Court's Erroneous *Mens Rea* Formulation, the Evidence is Insufficient to Sustain Mr. Brock's § 1512(c)(2) Conviction on Appeal ....................16

    i.   Standard of Review ......................................................16

    ii.   Evidence Insufficient ....................................................16

II.   The District Court Miscalculated Mr. Brock's Sentencing Guidelines........................................................................18

a.   Standard of Review................................................................18

b.   USSG § 2J1.2(b)(2) Enhancement Incorrectly Assessed .........18

CONCLUSION ......................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Jackson v. United States*,
    353 F.2d 864 (D.C. Cir. 1965)............................................................ 12, 13, 15, 16

*United States v. Castellanos*,
    731 F.2d 979 (D.C. Cir. 1984).................................................... 12, 13, 14-15, 16

*United States v. Dickerson*,
    163 F.3d 639 (D.C. Cir. 1999)...............................................................................10

*United States v. Fischer*,
    64 F.4th 329 (D.C. April 7, 2023) ............................... 6, 7, 8, 9, 10, 11, 12, 14, 15

*United States v. McHugh*,
    No. 21-cr-453 (D.D.C. Mar. 6, 2023)....................................................................2

*United States v. Miller*,
    21-cr-75, ECF 73 (May 23, 2022) ........................................................................20

*United States v. Miller*,
    2022 WL 823070 (D.D.C. March 7, 2022) ....................................................... 1-2

*United States v. Puma*,
    2022 WL 823079 (D.C. Dist. Ct.2022) ....................................................... 14, 16

*United States v. Richardson*,
    676 F.3d 491 (5th Cir. 2012)................................................................................19

*United States v. Robertson*,
    610 F. Supp. 3d 229 (D.D.C. 2022) ..................................................... 8, 9, 14, 19

*United States v. Rubenacker*,
    No. 21-cr-193 (D.D.C. June 7, 2022)...................................................................19

*United States v. Seefried*,
    2022 WL 16528415 (D.D.C. Oct. 29, 2022)........................................... 19, 20, 21

*United States v. Snow*,
    484 F.2d 811 (D.C. Cir. 1973)..............................................................................19

*United States v. Turner*,
    21 F.4th 862 (D.C. Cir. 2022) ..............................................................................18

iv

**Statutes & Other Authorities:**

3 U.S.C. § 15 .................................................................................20

18 U.S.C. § 1503 .............................................................................19

18 U.S.C. § 1512 ............................................................... 2, 5, 6, 7, 8

18 U.S.C. § 1512(c) ............................................................... 1, 6, 7

18 U.S.C. § 1512(c)(2)............................ 1, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 21

18 U.S.C. § 1515(a)(1)(B) .................................................................9

18 U.S.C. § 1752(a)(1) ......................................................................1

18 U.S.C. § 1752(a)(2) ......................................................................1

18 U.S.C. § 3231 ...............................................................................1

18 U.S.C. § 3742(a) ...........................................................................1

18 U.S.C. § 5104(e)(2)(G) .................................................................1

28 U.S.C. § 1291 ...............................................................................1

40 U.S.C. § 5104(e)(2)(A) .................................................................1

40 U.S.C. § 5104(e)(2)(D) .................................................................1

D.C. Cir. R. 28 ..................................................................................6

Fed. R. App. P. 28(f) .........................................................................6

U.S.S.G. § 2J1.2(b)(2)............................................. 4, 18, 19, 21

Thomas Aquinas, *Summa Theologica* (January 1, 1274) ........................15

## JURISDICTIONAL STATEMENT

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231.

A timely notice of appeal having been filed, this Court has jurisdiction pursuant to

28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF ISSUES

**1. Is Larry Brock's Conviction under 18 U.S.C. § 1512(c)(2) Legally Flawed in Multiple Respects?**

**2. Did the District Court Miscalculate Larry Brock's Sentencing Guideline Range?**

## STATEMENT OF THE CASE

### I.    Indictment and Bench Trial

Mr. Brock was indicted for Obstruction of an Official Proceeding under 18

U.S.C.§ 1512(c), entering and remaining in a restricted building or grounds under

18 U.S.C. § 1752(a)(1), disorderly and disruptive conduct in a restricted building

or grounds under 18 U.S.C. § 1752(a)(2), entering and remaining on the floor of

Congress under 40 U.S.C. § 5104(e)(2)(A), disorderly conduct in a capitol building

under 40 U.S.C. § 5104(e)(2)(D), and parading, demonstrating or picketing in a

capitol building under 18 U.S.C. § 5104(e)(2)(G)).  The charges arose from his

presence at the U.S. Capitol on January 6, 2021.

Prior to trial, Mr. Brock moved to dismiss Count I for obstruction based on

Judge Nichols' decision to dismiss the same charge as a matter of law in *United*

1

*States v. Miller*, 2022 WL 823070 (D.D.C. Marcy 7, 2022). By that point Judge Bates had already considered the issue in *United States v. McHugh* and held that the January 6 § 1512 charges were legally sound and denied a motion to dismiss that charge. 21-cr-453 (D.D.C. May 2, 2022). Judge Bates denied Mr. Brock's motion as well.

The government called five witnesses against Mr. Brock. They were United States Capitol Policeman Sean Patton, Secret service agent Elizabeth Glavey, Capitol policeman Nairobi Timberlake, Capitol Policewoman Maggie-May Humphrey and FBI Special Agent John Moore.

The government's first witness was Elizabeth Glavey of the secret service. JA 90. The witness testified about Vice President Mike Pence's movements and security on January 6. On cross examination Agent Glavey testified that there had been a significant amount of at times violent protest in Washington DC during 2020. JA 109. The protests involved clashes between protesters of opposing political viewpoints. JA 112. Agent Glavey confirmed that she had studied electoral count act procedures in preparation for January 6 and that she was aware the Senators and Congressmen had announced an intention to object to state certificates. JA 112.

The next witness was Captain Sean Patton of the capitol police. JA 115. Captain Patton described the Capitol and Capitol grounds. He testified to his

observations of the protesters and the initial breach of the building.  JA 134-152.

The government admitted through Captain Patton videos showing Mr. Brock at the

capitol.  JA 153-186.  Mr. Brock had stipulated to his identity in the videos.

On cross Captain Patton confirmed that there had been confrontations

between political protesters earlier in 2020. JA 189.  The government stipulated

that exhibit 412 which had been entered through the witness showed Mr. Brock

picking up a police flex tie from the floor.  JA 203.  The witness agreed that the

video evidence showed Mr. Brock walking by several officers with the flex cuffs

displayed and that he made no attempt to conceal them.  JA 205.  He also agreed

that one of the videos showed Mr. Brock attempting to calm a protester who had

been confronting police and encourage him to leave the building.  JA 206.

The next witness was Officer Nairobi Timberlake of the capitol police, the

first witness that interacted with Mr. Brock on January 6.  JA 209.  Officer

Timberlake testified he was on duty on January 6 stationed near the Senate

chamber.  JA 213.  He was wearing a civilian coat and tie.  JA 231 (cross exam).

He testified to getting into a "shoving match" with protesters outside the Senate

gallery.  JA 225.  He recalled Mr. Brock "telling [an aggressive protester] to calm

down, that's not what we're here for."  JA 227.  He testified that Mr. Brock "had a

command presence about him" and "the gentleman in the black kind of took it

down a notch."  JA 227.

On cross Officer Timberlake testified that he was greatly outnumbered by the crowd and considered it a dangerous situation.  JA 232.  He agreed Mr. Brock helped defuse the situation.  JA 233.

The next witness was Maggie-May Humphrey from the DC Metropolitan Police Department.  JA 235.  Officer Humphrey was stationed at Black Lives Matter Plaza and was called to the Capitol.  JA 237-238.  The government admitted Office Humphrey's body camera footage which showed Mr. Brock in a capitol hallway.  JA 246.

The last witness was the case agent, FBI Special Agent John Moore.  JA 249.  He described the investigation, arrest of Mr. Brock, and search of his devices and residence.  The government admitted exhibits from Mr. Brock's phone and social media. JA 262-82; 291-326.

## II.   Sentencing

The presentence report assessed Mr. Brock three offense levels for substantial interference with the administration of justice under USSG § 2J1.2(b)(2).  JA 621.  Mr. Brock objected to this enhancement on the ground that proceedings before congress did not constitute the "administration of justice."  JA 639-40

The Court applied the 3-level enhancement over Mr. Brock's objection.  JA 668.  The resulting guideline range was 24-30 months.  The Court sentenced Mr. Brock to 24 months, the low end of the guidelines.

## SUMMARY OF THE ARGUMENT

The Department of Justice's use of the Obstruction of an Official Proceeding Statute represents the latest demonstration of the wisdom of the old adage that "hard cases make bad law."  Prior to January 6, 2021, 18 U.S.C. § 1512(c)(2) was an obscure statute designed primarily to prosecute accountants cooking the books at big companies.  The government's post January 6 use of § 1512 has splintered the district court judges and divided the first appellate panel to consider it three ways.  The government's current view of § 1512 creates a serious risk to First Amendment freedoms and could invite political prosecutions.

For the reasons set forth below, the government's view of § 1512 should be reigned in by this Court or by the Supreme Court.  However, even under the government and district court's current view of § 1512, the evidence is insufficient to support Mr. Brock's felony conviction.  While the district court found him guilty of violating a variety of misdemeanor statues, no reasonable view of the evidence could conclude that Mr. Brock acted with feloniously corrupt intent on January 6.

Finally, the Court misapplied a guideline enhancement which likely increased Mr. Brock's sentence by approximately 9 months. If Mr. Brock's § 1512 conviction is not vacated, the Court should remand for resentencing.

## ARGUMENT

I. **Mr. Brock's Conviction for Obstruction of an Official Proceeding is Legally Flawed in Multiple Respects; Various Arguments Preserved for *En Banc* or Supreme Court Review**

As explained below, Appellant submits that the district court misapplied the law of § 1512(c)(2) in multiple respects. Although the district court is in part supported by *Fischer,* Appellant must nonetheless continue to press theses issue with a view to *en banc* or Supreme Court review.

If this Court or the Supreme Court should agree that the district court and/or the *Fischer* court misapplied the law, a remand of this case will not be necessary. This is so because, as explained below, the evidence is insufficient to support Appellant's conviction under the correct view of the law.

Finally, if *Fischer* (or any part thereof) remains the law of this circuit, Mr. Brock's § 1512(c)(2) conviction should still be reversed because it is not supported by the evidence even under the *Fischer* scheme.

For ease of reference (*see*, Federal Rule of Appellate Procedure 28(f) and Circuit Rule 28), the relevant text of § 1512(c) is set forth here:

(c) Whoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

### a. Legal Background: Current State of the Law on 18 U.S.C. § 1512(c)(2)

#### i. *United States v. Fischer* Panel Opinion

In *United States v. Fischer* this Court considered the government's interlocutory appeal of a district judge's pretrial dismissal of several 18 U.S.C. § 1512(c) counts against a January 6 defendants. 64 F.4th 329 (D.C. April 7, 2023). District Judge Nichols' dismissal was based on his interpretation of § 1512 as requiring the defendant to have "taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *Id*. at 334 (hereinafter referred to as the "document destruction" interpretation).

On appeal, the Appellee defendants argued for a slightly broader interpretation than the district court but one which would still have resulted in dismissal of the indictments. They argued that § 1512(c) prohibited obstructive acts which resulted in "evidence impairment." *Id* (hereinafter referred to as the

"evidence impairment" interpretation). This Court rejected proposed interpretations of both the district court and Appellees and held that § 1512 is not limited to acts taken with respect to documents or acts which impair access to evidence.

Although the definitions of "corrupt intent" and "official proceeding" were, in the Court's words, "not the focus of this appeal", the majority opinion nonetheless went on to address them. Without deciding the definition of corrupt, the Court offered three alternatives: 1) intent that is "normally associated with wrongful, immoral, depraved or evil conduct", 2) acting with a "corrupt purpose: through "independently corrupt means" or both, or 3) acting "voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person." *Id*. at 340. The Court held that all Appellees acted corruptly under any of these definitions. *Id*. In the case of *United States v. Robertson*, both the defendant and the government agreed that the *Fischer* majority opinion's analysis of corrupt intent is not the law because it was not joined by any other member of the *Fischer* panel. 22-3063 Doc. 1997887 (Appellant Supplemental brief)("Robertson agrees with the government that [*Fischer*] is not precedential authority with respect to the interpretation of 'corruptly').

As to the definition of "official proceeding", this Court held that electoral college proceedings qualified because they are "proceeding[s] before the Congress" under the definition in 18 U.S.C. § 1515(a)(1)(B).

In a concurring opinion, Judge Walker stated that he believed that (contrary to majority Judge Pan's view discussed above) the case required this Court to decide the interpretation of "corrupt intent." *Id*. at 351. Judge Walker would define corruptly as acting "with an intent to procure an unlawful benefit either for [oneself] or some other person." *Id*. In Judge Walker's view, such an interpretation of corruptly would comport with historical uses of the term and also rationalize an otherwise difficult to interpret statute. *Id*. at 351-62. Judge Walker stated that even under his definition of corruptly it was error for the district court to have dismissed the indictment counts because the government might have proven at trial that the defendants were unlawfully seeking to benefit Donald Trump by helping his reelection. *Id*. at 61.

Judge Katsas dissented from the majority opinion. *Id*. at 363. He agreed with the Appellee's argument that 18 U.S.C. § 1512(c)(2) only applied to acts of evidence impairment. *Id*. at 363-383.[1]

---

[1] Following *Fischer*, this Court allowed supplemental briefing on § 1512 in the *Robertson* January 6 appeal. 22-3062. The Court heard oral argument on May 11. As of July 6, 2023 there is no decision in the case.

### ii.  Further Proceedings in *United States v. Fischer*

On May 23, 2023 this Court denied Appellee's request for panel rehearing in

F*ischer*.  On May 23 the Appellees filed a motion to stay the mandate.  The

government filed its opposition to the motion to stay on June 6.  The Court granted

the motion to stay on June 13 stating that:

> FURTHER ORDERED that the motions to stay be granted.  The
> Clerk is directed to withhold the issuance of the mandate through
> September 11, 2023.  If, within the period of the stay, appellees notify
> the Clerk in writing that a petition for writ of certiorari has been filed,
> the Clerk is directed to withhold issuance of the mandate pending the
> Supreme Court's final disposition.

*Id*. at Doc. 2003281 (citation omitted).

### b.  The District Court Applied an Incorrect Definition of the *Actus Reus* of 18 U.S.C. § 1512(c)(2)

### i.  Standard of Review

A contention that a lower court misapplied the law in a bench trial is

analogous to a question of erroneous jury instructions which this Court has

reviewed *de novo*.  *United States v. Dickerson*, 163 F.3d 639, n.3 (D.C. Cir. 1999).

### ii.  The District Court Did Not Limit 18 U.S.C. § 1512(c)(2) *Actus Reus* to Either Destruction of Documents or Impairment of Evidence

The lead opinion in *Fischer* did not limit the actus reus of § 1512(c)(2) to

either document destruction or evidence impairment.  However, to preserve the

point for possible Supreme Court or *en banc* review, Mr. Brock must nonetheless

advance the argument for an alternative definition of *actus reus*. For the reasons stated in the concurring and dissenting *Fischer* opinion, Mr. Brock contends that either the "evidence impairment" or "destruction of documents" interpretation of § 1512(c)(2) are preferable to the "breathtaking" scope of the *Fischer* majority opinion. 64 F.th. at 360 (Walker, J. concurring). Any other interpretation would create insuperable vagueness, constitutional, First Amendment, and public policy problems, in addition to being inconsistent with the statutory language, context and legislative history.

In reciting the elements of obstruction of § 1512(c)(2), the district court simply stated that it must find Mr. Brock, "attempted to or did obstruct or impede an official proceeding." JA457. It did not add additional qualifications about document destruction or evidence impairment.

In reciting the facts on which its *actus reus* finding was based, the district court did not refer to document destruction or evidence impairment. In finding that Mr. Brock had obstructed an official proceeding, the Court stated as follows:

> [Mr. Brock] was part of the large crowd of demonstrators who breached the Capitol on January 6th…Mr. Brock remained in the building for approximately 37 minutes, during which time his presence, along with the presence of many others, continued to obstruct the proceeding by preventing Congress from reconvening. In fact, Mr. Brock was on the floor of the Senate where proceedings should have been occurring had the crowd not breached and entered the Capitol.

JA 457 (citations omitted).  In other words, the district court found that Mr. Brock

obstructed a Congressional official proceeding simply by being present in the

building.  It is not clear from the district court's explanation whether Mr. Brock's

presence on the Senate floor was essential to its holding or whether he obstructed

the official proceeding when he entered the capitol grounds, crossed the threshold

of the congressional edifice itself, or at some other point.

In summary, the district court did not limit the § 1512(c)(2) *actus reus*

definition to either evidence impairment or document destruction.  This is clear

from the district court's recitation of the element itself and from the facts it focused

on while making its findings.  Should the Supreme Court adopted either of the

alternative *actus reus* definitions from *Fischer*, Mr. Brock's conviction should be

reversed.

### c.  Under the Correct Legal Standard for 18 U.S.C. § 1512(c)(2) *Actus Reus*, the Evidence is Insufficient to Support Mr. Brock's Conviction

#### i.  Standard of Review

A criminal conviction must be reversed where no reasonable person could

find guilt beyond a reasonable doubt.  *United States v. Castellanos*, 731 F.2d 979,

984 (D.C. Cir. 1984).  *See also*, *Jackson v. United States,* 353 F.2d 864 (D.C. Cir.

1965)(same standard applied to review of bench and jury trials.).

### ii.  No Evidence that Mr. Brock Impaired Evidence or Destroyed Documents

As discussed in the preceding section, the *actus reus* of Mr. Brock's §

1512(c)(2) conviction is based entirely on his presence in the United States Capitol

as part of a large group.  Because the presence of a large group of persons in the

U.S. Capitol delayed proceedings by six hours, the district court reasoned, an

official proceeding was obstructed.  There was no evidence that he destroyed

documents, intimidated witnesses, forged paperwork, or did any other act that

would constitute obstruction under the evidence impairment or document

destruction interpretations of § 1512(c)(2).  Therefore, if the Supreme Court should

adopt either the destruction of documents or evidence impairment actus reus

definitions, Mr. Brock's conviction should be reversed for insufficiency of

evidence.

### d.  The District Court Applied the Incorrect Standard for 18 U.S.C. § 1512(c) *Mens Rea*

### i.  Standard of Review

A criminal conviction must be reversed where no reasonable person could

find guilt beyond a reasonable doubt.  *United States v. Castellanos*, 731 F.2d 979,

984 (D.C. Cir. 1984).  *See also*, *Jackson v. United States,* 353 F.2d 864 (D.C. Cir.

1965)(same standard applied to review of bench and jury trials.).

13

### ii. Judge Walker's "Unlawful Benefit" *Mens Rea* Formulation Should be Adopted for § 1512(c)(2)

In defining the "corruptly" *mens rea* of 18 U.S.C. § 1512(c)(2), the district court relied on another January 6 district court decision in *United States v. Puma*. 2022 WL 823079 (D.C. Dist. Ct. 2022).  That decision defined "corruptly" as follows:

> Judges in this district have construed "corruptly" to require a showing of dishonesty or an improper purpose, consciousness of wrongdoing, or conduct that is independently criminal, inherently malign, and committed with intent to obstruct an official proceeding.

*Id*. at 10 (internal quotations and citations omitted); JA 462.

For the reasons stated by Judge Walker in *Fischer,* Appellant disagrees with this formulation of § 1512(c)(2) *mens rea*.  This panel is free to adopt the Judge Walker *mens rea* because, as both parties agreed in *Robertson*, that part of *Fischer* is not binding.  22-3063 Doc. 1997887(Appellant Supplemental brief)("Robertson agrees with the government that [*Fischer*] is not precedential authority with respect to the interpretation of 'corruptly').  Appellant submits that this Court should adopt that definition.

### e. Under the Correct *Mens Rea* Standard the Evidence in Insufficient to Support Mr. Brock's Conviction

### i. Standard of Review

A criminal conviction must be reversed where no reasonable person could find guilt beyond a reasonable doubt.  *United States v. Castellanos*, 731 F.2d 979,

14

984 (D.C. Cir. 1984). *See also*, *Jackson v. United States,* 353 F.2d 864 (D.C. Cir. 1965)(same standard applied to review of bench and jury trials.).

### ii. Insufficient Evidence of Corrupt Intent

Judge Walker's *Fischer* concurrence states that "I would give 'corruptly' its long-standing meaning. It requires a defendant to act 'with an intent to procure an unlawful benefit either for himself or for some other person." 64 F.4th at 352. As stated above, Appellant contends that this Court should adopt that definition.

Appellant did not have the requisite *mens rea* under this standard. The evidence at trial clearly showed that Mr. Brock was motivated by patriotism rather than a desire for unlawful benefit. The government never argued that Mr. Brock's stated motivations were anything other than sincere and the district court made no such findings.

It has been suggested by some that the "unlawful benefit" need not be a tangible material benefit. Some passages of *Fischer* suggest that securing Donald Trump's reelection constitutes an "unlawful benefit" for § 1512(c)(2) *mens rea* purposes. *See*, *e.g*. n.5. Extending "unlawful benefit" to such intangibles creates difficulties on a basic philosophical level. *See*, *e.g*. Thomas Aquinas, *Summa Theologica* 2.1, Question 1, Article 1("[A]ll human actions must be for an end). As Judge Katsas put it in his *Fischer* dissent:

> [T]his case involves the much more diffuse intangible benefit of
> having a preferred candidate remain President. If that is good enough,

15

then anyone acting to achieve a specific purpose would satisfy the
requirement, for the purpose of the action would qualify as the
benefit.

*Id*. at 381.

For these reasons, acting to achieve an idealistic benefit should not qualify

as a "corrupt" act under § 1512(c)(2).  Because the evidence showed that Appellant

acted for idealistic motives the evidence is insufficient to support a finding that he

acted "corruptly."

> **f.  Even Under the District Court's Erroneous *Mens Rea*
> Formulation, the Evidence is Insufficient to Sustain Mr. Brock's §
> 1512(c)(2) Conviction on Appeal**

> **i.  Standard of Review**

A criminal conviction must be reversed where no reasonable person could

find guilt beyond a reasonable doubt.  *United States v. Castellanos*, 731 F.2d 979,

984 (D.C. Cir. 1984).  *See also*, *Jackson v. United States,* 353 F.2d 864 (D.C. Cir.

1965)(same standard applied to review of bench and jury trials.).

> **ii.  Evidence Insufficient**

In finding that Mr. Brock acted corruptly, the district court stated "I find that

Mr. Brock acted corruptly.  Courts in this district have construed 'corruptly' to

require a showing of dishonesty, an improper purpose, or consciousness of

wrongdoing."  JA 462 (internal citations and brackets omitted).  Notably, the case

the district court relied on (*Puma*, cited above) also allows for a finding of

16

corruptness based on "conduct that is independently criminal, inherently malign, and committed with intent to obstruct an official proceeding" but the district court did not rely on that part of the definition.

No reasonable fact finder could conclude that Mr. Brock acted with "dishonesty, an improper purpose, or consciousness of wrongdoing."  First, the evidence showed that Mr. Brock was longtime veteran of the military and flown hundreds of combat missions in the A10.  JA330.  The social media evidence showed a genuine (not feigned) concern over the Presidential election and even the district court admitted that the more overheated portions of Mr. Brock's social media history ought not to be taken literally.  JA 463 ("Now I don't necessarily believe that Mr. Brock intended to do everything that he said in his Facebook posts.  I think it's unlikely that he did.  Indeed, that would be a stretch to believe that he did.")  It was undisputed that Mr. Brock did not confront police or destroy property.  On the contrary, he used his military command bearing to maintain order on several occasions.  While on the Senate floor, Mr. Brock admonished another individual to get out of the Vice President's chair and be respectful.  JA 86.  While on the balcony of the Senate, he told other protesters "nobody breaks anything, we're patriots, be respectful."  JA 35.  When Capitol policeman Nairobi Timberlake and his partner were outnumbered by an aggressive group of protesters, Mr. Brock intervened to protect the officers and defuse the situation.

17

JA 232.  Mr. Brock voluntarily left the building under law enforcement supervision.  On his way out, he intervened to subdue a protester who was confronting police.  JA 206.  Finally, Mr. Brock's social media record shows he was at the capitol not to cause violence or disrupt proceedings, but rather to support objecting congressmen and senators acting pursuant to the Electoral Count Act.  *See*, *e.g.* JA 319 (Brock statement that he is traveling to DC for "[h]opefully Congress doing what is right.").

It is certainly possible to disagree with Mr. Brock's choice of the manner of protest or to disagree with his factual priors about the 2020 election.  However, no fair reading of the evidence supports a conclusion that he acted with dishonesty, improper purpose, or conscious wrongdoing.

## II.    The District Court Miscalculated Mr. Brock's Sentencing Guidelines

### a.  Standard of Review

The Court reviews the district court's interpretation of the Sentencing Guidelines de novo.  *United States v. Turner*, 21 F.4th 862, 865 (D.C. Cir. 2022).

### b.  USSG § 2J1.2(b)(2) Enhancement Incorrectly Assessed

USSG § 2J1.2(b)(2) states that "[i]f the offense resulted in substantial interference with the administration of justice increase by 3 levels."  Comment 1 to this section says that:

> "Substantial interference with the administration of justice" includes a
> premature or improper termination of a felony investigation; an

18

indictment, verdict, or any judicial determination based upon perjury,
false testimony, or other false evidence; or the unnecessary
expenditure of substantial governmental or court resources.

*Id*.

Before the January 6 cases, no federal court had ever considered whether the electoral certification was "administration of justice."  The issue is before the court in *United States v. Robertson*, 22-3062.

The most closely analogous Circuit-level authority is *United States v. Richardson*.  676 F.3d 491 (5th Cir. 2012).  It supports limiting "obstruction of justice" to judicial type proceedings.  The defendant in that case was convicted of two counts of corruptly endeavoring to obstruct the due administration of justice in violation of 18 U.S.C. § 1503.  *Id*. at 496.  The statute makes in a crime to obstruct the "due administration of justice" through various means.  *Id*. at 501.  The court construed the statute to require government proof of "a judicial proceeding.  *Id*.

In the January 6 case of *United States v. Seefried* the district court considered whether certifying a Presidential election counted as "administration of justice" for § 2J1.2(b)(2) purposes.  2022 WL 16528415.  The court held that "administration of justice" refers to "a judicial or related proceeding that determines rights or obligations."  *Id*. at *1.  Because the electoral certification did not meet this definition, the court held, the enhancement did not apply.[2]

---

[2] To be sure, other January 6 district judges in this circuit have reached the opposite conclusion from *Seefried*.  *See*, *United States v. Rubenacker*, 21-cr-193 at

In arriving at this holding, the *Seefried* court began with the Black's Law definition of "administration of justice" which is "[t]he maintenance of right within a political community by means of physical force of the state" and "the state's application of the sanction of force to the rule of right." *Id*. at 2. The Black's Law definition of "due administration of justice", the court went on to observe, is "[t]he proper functioning and integrity of a court or other tribunal and the proceedings before it in accordance with the rights guaranteed to the parties." *Id*.

The court then reviewed the provisions of the Electoral Count Act, 3 U.S.C. § 15 in view of these definitions. The court concluded that proceedings pursuant to the Electoral Count Act were not "administration of justice because, "[t]he certification is thus largely a ceremonial proceeding where Members and staff open, read, list and announce the electoral votes." *Id*.

Arriving at a holding contrary to *Seefried* would be to vest the electoral certification with authority which most contend it does not involve. *Compare*, *United States v. Miller*, 21-cr-75, ECF 73 at 16 (May 23, 2022)(statement by district judge that Congress was "adjudicating in some…limited sense, subject to very substantial constraints, the results of the election."); *See also*, January 6, 2021, Dear Colleague Letter from Vice President Mike Pence ("my role as presiding officer is largely ceremonial").

---

ECF 70(May 26, 2022). However, Appellant submits that *Richardson* and *Seefried* are the better reasoned decisions.

Mr. Brock submit that the *Seefried* analysis represents the better view and this Court should adopt it's definition of "administration of justice" for the § 2J1.2(b)(2) enhancement.  The Court should further find that the district court erred in applying this enhancement to Mr. Brock and remand his case for resentencing in accordance with correctly calculated sentencing guidelines.

## CONCLUSION

For the foregoing reasons, Mr. Brock requests that Court reverse his § 1512(c)(2) conviction and remand with instructions to dismiss that count.  In the alternative, Mr. Brock requests that, if appropriate, this Court reverse his § 1512(c)(2) conviction and remand with instructions to reconsider the case in light of this Court's decision.  *United States v. Snow*, 484 F.2d 811 (D.C. Cir. 1973).

If this Court should affirm Mr. Brock's § 1512(c)(2) conviction but find in his favor on sentencing guidelines, Mr. Brock requests that the Court vacate his sentence and remand for resentencing.

Respectfully submitted,

*/s/ Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1750 K Street, NW, Suite 300
Washington DC 20006
(202) 386-6920
charles@burnhamgorokhov.com

## CERTIFICATE OF LENGTH

I certify that this brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7).  According to Microsoft Word it has approximately 4,831 words.


Respectfully submitted,

*/s/ Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1750 K Street, NW, Suite 300
Washington DC 20006
(202) 386-6920
charles@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I certify that on July 10, 2023 I served a copy of this brief on the government through ECF.

Respectfully submitted,

/s/ *Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1750 K Street, NW, Suite 300
Washington DC 20006
(202) 386-6920
charles@burnhamgorokhov.com